**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS VEGA** | : | **CIVIL ACTION** |
| **and** | : | |
| **JOSEPH WHITEHEAD, JR.** | : | **NO. 19-4039** |
| | : | |
| **Plaintiffs,** | : | **JURY TRIAL DEMANDED** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| **and** | : | |
| **LAWRENCE S. KRASNER** | : | |
| **Defendants.** | : | |

**PLAINTIFFS' PRETRIAL MEMORANDUM**

**I.    NATURE OF ACTION AND BASIS FOR JURISDICTION**

Plaintiffs, Carlos Vega ("Vega") and Joseph Whitehead, Jr. ("Whitehead"), join in

bringing this action alleging age discrimination against their former employer, the City of

Philadelphia ("City"), and Lawrence Krasner ("Krasner"), who currently serves as District

Attorney for the City.  Plaintiffs allege that they were fired by the City and Krasner on

January 5, 2018, because of their age.  The action is brought pursuant to the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq. ("ADEA"), and the

Pennsylvania Human Relations Act, 43 P.S. §951 et seq.  ("PHRA").  The Court has

jurisdiction over Plaintiffs' ADEA claims pursuant to 28 U.S.C. §1331 and 29 U.S.C.

§626(c)(1).  The Court has supplemental jurisdiction over Plaintiffs' PHRA claims

pursuant to 28 U.S.C. §1367(a).

**II.    SUMMARY OF FACTS SUPPORTING PLAINTIFFS' CLAIMS**

Vega and Whitehead had long, successful and distinguished careers with the

City as prosecutors with the District Attorney's Office ("DAO"), which spanned thirty-five

1

(35) years in the case of Vega and twenty-eight (28) years in the case of Whitehead. From 1987 until the time of his firing in January 2018, Vega was assigned to the elite Homicide Unit of the DAO. In that role, Vega did exemplary work on behalf of the public, was highly respected among his colleagues and supervisors as well as members of the criminal defense bar and the judiciary, and successfully handled many of the most complex and difficult homicide cases.  Whitehead was assigned to the Homicide Unit in 2014, and he too was an integral part of that key unit until he was fired in January 2018. Prior to being transferred to the Homicide Unit, Whitehead had worked in a variety of important positions for the City and the DAO, and he had performed the job duties of all of his assignments at a high level, earning the respect and admiration of supervisors, peers, defense lawyers, and judges. Vega and Whitehead, true credits to their profession, were dedicated public servants who devoted their professional careers to serving the public and promoting the administration of justice. At no time during their long tenures with the City was any disciplinary action ever taken against either of them. As of January 2018, Vega was sixty-one (61) years of age, and Whitehead's age was sixty-four (64).

In February of 2017, Krasner announced his candidacy for DA of the City, and in May 2017, he won the Democratic primary. After winning the primary, when it became apparent that he would become the next DA, Krasner made a series of public statements that reflected his bias against and stereotypical views of older prosecutors like Plaintiffs, who had worked in the DAO for a long time, and his strong preference and affinity for young prosecutors.  For example, in one interview, Krasner proclaimed that as DA, he could not "bring about real change and leave people in place who are

going to fight change every step of the way,"  that "[t]he ones who will leave will tend to be my generation, people who started in this business thirty (30) years ago, which means they'll also tend to be white and male,"  and that "the office will be a tremendous magnet for new talent." Plaintiffs, who had worked in the administrations of several DAs, had never manifested any intention or desire to "fight change." In fact, they had adapted seamlessly to the policies of each incoming DA. In another pre-election interview, given in October  2017, Krasner boldly asserted that "there is no question that the old guard in that office [the DAO] is in control and the old guard in that office is not desiring change at all," and that "that crowd needs to go" and should "get out of the way."  In yet another interview given in October 2017, Krasner announced that, if elected, he "expect[ed] to have very broad support among the vast majority of the young prosecutors who are in there," and that it was "more of a generational issue as I see it."

As expected, on November 7, 2017, Krasner won the election for DA, and on Tuesday, January 2, 2018, he was sworn into office.  Thereafter, he wasted little time implementing his plan to fire a group of older prosecutors who had worked in the DAO for many years, based on his preconceived but false notion that they were too set in their ways and would resist change.  On Friday, January 5, 2018, Krasner directed that thirty (30) attorneys at the DAO, including Plaintiffs, be informed that he was demanding their resignations that day, and that they would be fired if they did not resign.  Of the thirty (30) lawyers whose resignations were demanded, twenty (20) were over the age of forty (40), and eleven (11) of the twenty (20) were above the age of fifty (50).  The average age of the thirty (30) attorneys who were forced out was 45.7.

3

Consistent with Krasner's directive, Vega and Whitehead were informed by the City on January 5, 2018 that Krasner wanted their resignations, and that they would be fired if they refused to resign.  When Plaintiffs advised the City that they would not resign, they were instructed to clear out their offices and to leave the building that day. They were given no reason or explanation for Krasner's decision to fire them, and Krasner never contacted or met with them to explain his rationale.  Nor did Krasner document the reasons for his decisions. Furthermore, Krasner never looked at Plaintiffs' performance appraisals – which were excellent – nor did he speak with any of Plaintiffs' supervisors at the DAO – who would have strongly supported Plaintiffs and opposed any attempt to force them out.  In addition, when Defendants ousted Plaintiffs from the DAO, Krasner decided to retain, in the Homicide Unit, a group of substantially younger, less experienced lawyers, many of whom Vega had mentored and trained. Moreover, within days of the firing of Plaintiffs, Defendants transferred five much younger, less experienced prosecutors to the Homicide Unit from other units, where they had not handled homicide cases. Consistent with his favoritism of young prosecutors, from July 2018 to September 2019, Krasner recruited and hired 138 lawyers to work in the DAO, 127 of whom were under the age of forty (40), and eight-eight (88) of whom were between the ages of twenty-five (25) and thirty (30).

In response to Plaintiffs' PHRC Complaints and a request by the PHRC that he set forth the specific reasons for firing Plaintiffs, Krasner provided an identical verified statement for each Plaintiff in which he asserted, generally, that he had performed what amounted to a thirty (30) year job interview of each Plaintiff, during which time he had an opportunity to observe and assess them, and to speak to others about them.

However, no individuals with whom Krasner allegedly spoke were identified in the verified PHRC statements; and Krasner later acknowledged that he did not seek input from any of Plaintiffs' supervisors at the DAO before he made the decision to fire them. Nearly two years after he had submitted the PHRC statements, Krasner shifted course and asserted, in the litigation, specific events he which claimed caused him to get rid of Plaintiffs.  For Vega, Krasner stated in the litigation that he based his decision on Vega's alleged misconduct in connection with a triple homicide case in which Krasner represented one of two defendants, where both defendants were convicted of three counts of first degree murder. The convictions and sentences were affirmed on appeal and the trial judge and the Superior Court of Pennsylvania rejected all claims of prosecutorial misconduct.   For Whitehead, Krasner asserted in the litigation that his decision was based primarily on Whitehead's alleged unduly harsh sentencing recommendations for juveniles who had committed murders and whose life sentences had to be reviewed under a decision of the Supreme Court of the United States. Whitehead's recommendations had to be reviewed and approved by a committee that included his supervisors, and most were accepted by defense counsel and the courts. Plaintiffs strongly dispute the veracity and credibility of the after-the-fact, litigation-based explanations proffered by Krasner, which were never mentioned when Plaintiffs were fired or to the PHRC in Krasner's verified statements. Furthermore, Krasner's recently asserted reasons for firing Whitehead are based largely upon information he was unaware of in January 2018.

III.   **SUMMARY OF PLAINTIFFS' MONETARY DAMAGES**

    A.   **Plaintiff Vega**

Vega's economic losses, past and future, have been calculated by his damages expert to be **$609,682.**  This figure includes lost wages from January 2018 through November 2021; loss of the value of benefits under the City's DROP program; and loss of the value of employer-provided health benefits.

By way of background, on November 21, 2017, Vega enrolled in the City's DROP program.  In doing that, he agreed unconditionally to voluntarily retire from his employment with the City in four years, in November of 2021, in exchange for receiving a lump sum payment at the time of his retirement in the amount of approximately $485,000.  When a City employee enters the DROP program, their pension is frozen and monthly pension benefits are paid into a DROP account, so that a lump sum, including interest, is paid at the time of the agreed upon retirement date. In Vega's case, he expected the monthly benefits to paid into the account from November 2017 until November 2021, at which time he would receive the lucrative lump sum.

Vega was sixty-one (61) years of age at the time he was fired in January 2018, only two months after he had entered to DROP program. At that time, he was earning an annual salary from the City of $143,000.  Notwithstanding his reasonable efforts to mitigate and to find comparable or substantially equivalent employment, Vega has been unemployed with no employment-related income January 2018 to the present.  In addition, it is not expected that Vega will be able to obtain comparable or substantially equivalent employment between now and November 2021.  Vega's damages expert has determined, based upon Vega's annual earnings from the City, that from January

2018 through September 2020 (when the expert's report was completed), Vega had suffered a loss of income (back pay) in the amount of $387,387.  The expert further determined that from September 2020 to November 2021, Vega will suffer an additional loss of income (front pay) of $157,795 (after reduction to present value).  This yields a total wage loss from January 2018 to November 2021 of $545,182, calculated as of September 2020.

When Vega was fired in January 2018, only $16,628 had accumulated in his DROP account, and he was paid that amount because he was forced to retire from the City at that time.  In lieu of receiving his expected large lump sum DROP payment of approximately $485,000 in November 2021, Vega has received monthly pension benefits from the City of $9,394 from February 2018 to the present as a result of his forced early retirement from the City, and these benefits are expected to continue until November 2021.  Because the monthly pension benefits do not include interest and for other reasons, when they are subtracted from the lump sum DROP payment that Vega would have received had he been allowed to retire in November 2021, there is an additional economic loss of $47,523, prior to reduction to present value. ($485,000 less the aggregate of monthly pension benefits).

In addition, Vega would have been eligible to receive health insurance benefits from the City for five years commencing in November 2021 (his expected retirement date prior to his termination). As a result of the termination of his employment in January 2018, and to protect his and his family's health benefits, Vega was forced to elect this five-year benefit in February 2018, and these health benefits will be exhausted in February 2023, rather than in November 2026, had he been allowed to work for the

City until November 2021.  This has resulted in a loss to Vega of 3.8 years' worth of health benefits, which according to Vega's expert, has a value of $27,314.

Because Vega is claiming that Defendants' violations of the ADEA were willful, he seeks liquidated damages under the ADEA in an amount equal to his actual economic losses.

Vega also seeks compensatory damages under the PHRA, in an amount to be determined by the trier of fact, for pain and suffering, mental anguish, emotional distress, depression, loss of self-esteem and self-confidence, embarrassment, humiliation, and harm to his reputation resulting from the termination of his employment.

## B.    Plaintiff Whitehead

Whitehead's economic losses, past and future, have been calculated by his damages expert to be **$358,610**.  This figure includes lost wages from January 2018 through May of 2020; loss of the value of benefits under the City's DROP program; and loss of the value of employer-provided health benefits through May of 2025.

On May 9, 2016, Whitehead enrolled in the City's DROP program.  In doing that, he agreed unconditionally to voluntarily retire from his employment with the City in four years, in May of 2020, in exchange for receiving a lump sum payment at the time of his retirement in the amount of approximately $292,959.  As noted above, when a City employee enters the DROP program, their pension is frozen and monthly pension benefits are paid into a DROP account, so that a lump sum, including interest, is paid at the time of the agreed upon retirement date.  In Whitehead's case, he expected the monthly benefits to be paid into the account from May of 2016 until May of 2020, when he would have received the large lump sum payment.

8

Whitehead was sixty-four (64) years of age at the time he was fired in January 2018.  At that time, he was earning an annual salary from the City of $133,310. Notwithstanding his reasonable efforts to mitigate and to find comparable or substantially equivalent employment, Whitehead has been unemployed with no employment-related income from January 2018 to the present.  In addition, it is not expected that Whitehead will be able to obtain comparable or substantially equivalent employment in the future.  Whitehead's damages expert has determined, based upon Whitehead's annual earnings from the City, that from January 2018 through May of 2020, Whitehead had suffered a loss of income (back pay) in the amount of $342,078.

When Whitehead was fired in January 2018, a total of $111,835 had accumulated in his DROP account, and he was paid that amount because he was forced to retire from the City at that time.  In lieu of receiving his expected large lump sum DROP payment in May 2020, Whitehead received monthly pension benefits from the City in the amount of $5,521 from February 2018 to May 2020 due to his forced early retirement.  Because these monthly pension benefits do not include interest and for other reasons, when they are subtracted from the lump sum DROP payment Whitehead would have received had he retired from the City in May 2020, there is an additional economic loss of $34,265 ($292,959 less the aggregate of monthly pension benefits).

In addition, Whitehead would have been eligible to receive health insurance benefits from the City for five years commencing in May 2020 (his expected retirement date prior to his termination).  As a result of the termination of his employment in January 2018, and to protect his and his family's health benefits, Whitehead was forced

to elect this five-year benefit in February 2018, and these health benefits will be exhausted in February 2023, rather than in May 2025, had he been allowed to work for the City until May 2020.  This has resulted in a loss to Whitehead of 2.3 years' worth of health benefits, which according to Whitehead's expert, has a value of $16,532.

Whitehead seeks liquidated damages under the ADEA equal to the amount of his actual economic losses, as well as compensatory damages under the PHRA, in an amount to be determined by the trier of fact, for pain and suffering, mental anguish, emotional distress, depression, loss of self-esteem and self-confidence, embarrassment, humiliation, and harm to his reputation resulting from the termination of his employment.

## IV.   **PLAINTIFFS' WITNESS LIST**

### A.   **Witnesses for Both Plaintiffs**

| Name | Present or last known address | Subject(s) |
|---|---|---|
| Carlos Vega | 2216 S. Bancroft St., Philadelphia, PA 19145 | Liability and damages |
| Joseph Whitehead, Jr. | 3237 W. Queen Lane Philadelphia, PA 19129 | Liability and damages |
| Mark Gilson | 629 Charette Road Philadelphia, PA 19115 | Liability |
| E. Marc Costanzo | 8001 Colfax Street Philadelphia, PA 19136 | Liability |
| Michelle Seidner | 515 Gates Street Philadelphia, PA 19128 | Liability |
| John P. Delaney, Jr. | Archdiocese of Philadelphia 222 N. 17th Street Philadelphia, PA 19103 | Liability |

| Name | Present or last known address | Subject(s) |
|---|---|---|
| Louis F. Tumolo | The Beasley Firm<br>1125 Walnut Street<br>Philadelphia, PA 19107 | Liability |
| Brian M. Zarallo | Pennsylvania Office of Attorney General<br>1000 Madison Avenue<br>3rd Floor<br>Norristown, PA  19403 | Liability |
| Jennifer Selber | Pennsylvania Office of Attorney General<br>16th Floor<br>Strawberry Square<br>Harrisburg, PA 17120 | Liability |
| Charles Joseph (Joey) Grant | Philadelphia Gas Works (PGW)<br>Philadelphia, PA | Liability |
| Brian J. McMonagle | 1845 Walnut Street<br>19th Floor<br>Philadelphia, PA 19103 | Liability |
| Fortunato N. Perri, Jr. | 1845 Walnut St<br>19th Floor<br>Philadelphia, PA 19103 | Liability |
| Robert Gamburg | 1500 JFK Boulevard<br>Suite 203<br>Philadelphia, PA 19102 | Liability |
| Peter C. Bowers | 441 N. 5th Street<br>1st Floor<br>Philadelphia, PA 19123 | Liability |
| Andrew C. Verzilli (expert) | 411 North Broad Street<br>Lansdale, PA 19447 | Damages |
| Rachel Mitchell | Philadelphia District Attorney's Office (DAO)<br>3 S. Penn Square | Liability and damages |

| Name | Present or last known address | Subject(s) |
|------|-------------------------------|------------|
|  | Philadelphia, PA 19107 |  |
| Arun Prabhakaran | Urban Affairs Coalition Philadelphia, PA | Liability |
| Lawrence Krasner | 3 S. Penn Square Philadelphia, PA 19107 | Liability |

**B.    Additional Witnesses for Plaintiff Vega**

| Name | Present or last known address | Subject(s) |
|------|-------------------------------|------------|
| Ann Ponterio | 8412 Shawnee Street Philadelphia, PA 19118 | Liability |
| Edward F. McCann, Jr. | Montgomery County District Attorney's Office Norristown, PA 19403 | Liability |
| Hon. Lynne Abraham (Ret.) | Archer Law Three Logan Square 1717 Arch Street Philadelphia, PA  19103 | Liability |
| Barbara L. Christie | Commonwealth of Pennsylvania, Mechanicsburg, PA or 1800 Elmerton Avenue Harrisburg, PA 17110 | Liability |
| David B. Webb | U.S. Attorney's Office 615 Chestnut Street Suite 1250 Philadelphia, PA 19106 | Liability |
| Charles F. Gallagher, III | 610 Hendren Street Philadelphia, PA 19128 | Liability |
| Michael Giampietro | 3 S. Penn Square Philadelphia, PA 19107 | Liability |

| Name | Present or last known address | Subject(s) |
|---|---|---|
| Joseph A. Canuso | 100 S. Broad Street<br>Suite 1523<br>Philadelphia, PA 19110 | Liability |
| Tariq El-Shabazz | 100 S. Broad Street<br>Suite 1525<br>Philadelphia, PA 19110 | Liability |
| W. Fred Harrison, Jr. | 924 Cherry Street<br>Philadelphia, PA 19107 | Liability |
| Lee Mandell | 2 Penn Center Plaza, Suite 405<br>1500 John F Kennedy Blvd.<br>Philadelphia, PA 19102 | Liability |
| Thomas L. McGill, Jr. | 1500 John F. Kennedy Blvd.,<br>Suite 520<br>Philadelphia, PA 19102 | Liability |
| F. Michael Medway | 3 Logan Square<br>1717 Arch Street, Suite 3640<br>Philadelphia, PA 19103 | Liability |
| Gregory J. Pagano | 1315 Walnut Street, 12th Floor<br>Philadelphia, PA 19107 | Liability |
| A. Charles Peruto, Jr. | 2101 Pine Street<br>Philadelphia, PA 19103 | Liability |
| Gary S. Server | 4843 Rising Sun Avenue<br>Philadelphia, PA 19120 | Liability |
| Samuel Stretton | 103 S. High St<br> West Chester, PA 19382 | Liability |
| Nino V. Tinari | 1528 Walnut Street<br>Suite 1212<br>Philadelphia, PA 19102 | Liability |
| Michael E. Wallace | 222 S. 15th Street<br>Suite 1635<br>Philadelphia, PA 19109 | Liability |

| Name | Present or last known address | Subject(s) |
|---|---|---|
| | | |
| Joseph P. Zawrotny | 123 S. Broad Street<br>Suite 1812<br>Philadelphia, PA 19109 | Liability |
| Hon. Jane Cutler Greenspan (Ret.) | JAMS<br>1717 Arch Street, Suite 3810<br>Philadelphia, PA 19103 | Liability |
| Hon. Amanda Cooperman (Ret.) | 1500 Walnut Street<br>Philadelphia, PA 19102 | Liability |
| Hon. Renee Cardwell Hughes (Ret.) | Philadelphia OIC<br>1231 N. Broad Street<br>Philadelphia, PA | Liability |
| Hon. Peter Rogers (Ret.) | unknown | Liability |
| Hon.  M. Teresa Sarmina (Ret.) | unknown | Liability |
| Kirk Handrich | U.S. Department of Justice<br>145 N. Street NE<br>Washington, DC | Liability |
| Victoria Power | 1037 S. Church Street<br>Mt. Laurel, NJ 08054 | Liability |
| Olivia Ann Caccoma | 1502 Patrician Court<br>Peekskill, NY 10566 | Liability |

### C.    Additional Witnesses for Plaintiff Whitehead

| Name | Present or last known address | Subject(s) |
|---|---|---|
| Cathie Abookire | 8576 Glen Campbell Road<br>Philadelphia, PA 19128 | Liability |
| Michael Barry, Esq. | Chester County DA's Office<br>201 W. Market St.<br>West Chester, PA 19382 | Liability |

| Name | Present or last known address | Subject(s) |
|---|---|---|
| | | |
| Trevan Borum, Esq. | Borum, Burke, DiDonato, LLC 1500 JFK Blvd., Suite 900 Philadelphia, PA 19102 | Liability |
| Amanda Bee | unknown | Liability |
| Erin Boyle, Esq. | Weitz & Lutzenberg 220 Lake Drive East, Suite 210 Cherry Hill, NJ 08002 | Liability |
| Michael Cleary, Esq. | 2727 N. 46th Street Philadelphia, PA 19131 | Liability |
| Elliot Cohen, Esq. | Louis T. Savino, P.C. 1500 JFK Blvd., Ste. 1516 Philadelphia, PA 19102 | Liability |
| Hilary S. Cornell | 3237 West Queen Lane Philadelphia, PA 19129 | Liability and Damages |
| Jerry Daley | Police Headquarters 750 Race Street Philadelphia, PA 19106 | Liability |
| James Dunlap | Police Headquarters 750 Race Street Philadelphia, PA 19106 | Liability |
| Ronald Eisenberg, Esq. | PA Office of Attorney General 1600 Arch Street Philadelphia, PA 19103 | Liability |
| Leon Goodman, Esq. | 1515 Market Street Suite 1200 Philadelphia, PA 19102 | Liability |
| Peter Grenier, Esq. | Zarwin, Baum 1818 Market Street, 13th Floor Philadelphia, PA 19103 | Liability |
| Eric Henson, Esq. | United States Attorney's Office EDPA | Liability |

| Name | Present or last known address | Subject(s) |
|---|---|---|
| | 615 Chestnut St., Suite 1250 Philadelphia, PA 19106 | |
| Deborah Hoffman, Esq. | Philadelphia DA's Office 3 South Penn Square Philadelphia, PA 19107 | Liability |
| Stacy Hughes, Esq. | Law Department City of Philadelphia 1515 Arch Street Philadelphia, PA 19102 | Liability |
| Eileen Hurley, Esq. | Eileen J. Hurley, LLC 1518 Walnut St. Suite 905 Philadelphia, PA 19102 | Liability |
| Hon. Sheldon Jelin | Phila. Parking Authority 2415 S. Swanson Street Philadelphia, PA 191 | Liability |
| Shaka Johnson, Esq. | Shaka Johnson, LLC 1333 Christian St. Philadelphia, PA 19147 | Liability |
| Joseph McGettigan, Esq. | McAndrews Law Office, P.C. 30 Cassatt Avenue Berwyn, PA 19312 | Liability |
| Michael McGovern, Esq. | 21 N. 15th Street Del Haven, New Jersey 08251 | Liability |
| George Mosee, Esq. | 130 Beth Drive Philadelphia, PA 19115 | Liability |
| Brendan O'Malley | PA Office of Attorney General 1000 Madison Ave., 3rd Floor Norristown, PA 19403 | Liability |
| Hon. Paul P. Panepinto | 806 Callowhill Street Philadelphia, PA 19130 | Liability |
| Hon. Louis K. Presenza | Two Penn Center 1500 JFK Blvd., Suite 1205 | Liability |

| Name | Present or last known address | Subject(s) |
|---|---|---|
| | Philadelphia, PA 19102 | |
| Dino Privitera, Esq. | The Privitera Law Firm, LLC<br>123 S. Broad Street, Suite 2170<br>Philadelphia, PA 19109 | Liability |
| Erlande Quinde | 1316 Rice Hill Circle<br>Antioch, TN 37013 | Liability |
| Namratha Ravikant, Esq. | 333 Mount Elliot Street<br>Detroit, Michigan 48207 | Liability |
| Tanner Rouse, Esq. | Delaware County DA's office<br>Delaware County Courthouse<br>201 W. Front St.<br>Media, PA 19063 | Liability |
| Louis Savino, Esq. | Louis T. Savino, P.C.<br>1500 JFK Blvd., Suite 1516<br>Philadelphia, PA 19102 | Liability |
| Richard Sax, Esq. | 240 E. Highland Ave.<br>Philadelphia, PA 19118 | Liability |
| Kathy Stark, Esq. | U.S. Attorney's Office<br>EDPA<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106 | Liability |
| Edward Tolliver, Esq. | Police Headquarters<br>750 Race Street<br>Philadelphia, PA 19106 | Liability |
| Gary White | Police Headquarters<br>750 Race Street<br>Philadelphia, PA 19106 | Liability |
| Thomas Wixted, Esq. | Police Headquarters<br>750 Race Street<br>Philadelphia, PA 19106 | Liability |

| Name | Present or last known address | Subject(s) |
|---|---|---|
| Anthony Wzorek, Esq. | U.S. Attorney's Office EDPA 615 Chestnut Street, Suite 1250 Philadelphia, PA 19106 | Liability |
| Thomas Zaleski, Esq. | PA Office of Attorney General 1000 Madison Ave., 3rd Floor Norristown, PA 19403 | Liability |

## V.   PLAINTIFFS' SCHEDULE OF EXHIBITS

### A.   Documents Pertinent to Both Plaintiffs

| No. | Description | Date | Bates |
|---|---|---|---|
| P-1 | Article published by The Intercept titled "Meet Philadelphia's Progressive Candidate for DA: An Interview with Larry Krasner" | 5/17/2017 | LEVIN 161-170 (Mitchell-9) |
| P-2 | Transcript of excerpts of interview given by Defendant Krasner to Jacobin Radio | 10/7/2017 | WHITEHEAD 110-111 (Mitchell-11) |
| P-3 | Transcript of excerpts of interview given by Defendant Krasner to WHYY radio | 10/24/2017 | WHITEHEAD 113-114 (Mitchell -11) |
| P-4 | Article published by WBUR "Here & Now" titled "Philadelphia DA Wants to Dismantle Mass Incarceration from the Inside Out" | 4/18/2018 | WHITEHEAD 011-020 |
| P-5 | Audio recordings of interviews given by Defendant Krasner to Jacobin Radio, WHYY, WURD, WBUR, and "The Voice of San Diego" | 10/7/2017 10/24/2017 10/24/2017 4/18/2018 5/25/2018 | PV-000131 (disk) |
| P-6 | Memorandum from Kelley Hodge to members of the District Attorney (DAO) with attached letter from Defendant | 11/9/2017 | WHITEHEAD 030-031 |

| No. | Description | Date | Bates |
|---|---|---|---|
|  | Krasner to Attorneys and Staff of the DAO |  |  |
| P-7 | E-mail from Anna Adams to Arun Prabhakaran et al re: Personnel data | 12/7/2017 | CITY LK 001-002; CITY0551-0552 |
| P-8 | Memo to Rachel Mitchell from Arun Prabhakaran re: Separations | 1/5/2018 | CITY 0413-0414 |
| P-9 | Memo to Rachel Mitchell from Arun Prabhakaran re: Separations with handwritten notes | 1/5/2018 | PV-000087-000088 |
| P-10 | List of employee separations | 1/12/2018 | CITY621 |
| P-11 | List of retirees | 1/12/2018 | CITY623 |
| P-12 | Announcement from Arun Prabhakaran to Staff of the DAO | 1/12/2018 | PV-000237-000238 |
| P-13 | Chart reflecting names, dates of birth, and positions of employees terminated in 1/2018 | 1/12/2018 | CITY 0415-0416 |
| P-14 | Charts produced by Defendant City in response to court order dated 3/2/2020, verified by Rachel Mitchell | 3/11/2020 and 3/16/2020, with verification dated 3/17/2020 | PK-00073-00079 |
| P-15 | Press Release issued by DAO | 9/9/2019 | PV-000137-000140 |
| P-16 | Defendant City's Response to Vega's Interrogatories | 1/3/2020 | PM-00021-00028 |
| P-17 | Defendant City's Response to Whitehead's Interrogatories | 1/3/2020 | PM-00045-00052 |
| P-18 | Defendant City's Response to Vega's Request for Production of Documents | 1/3/2020 | PM-00029-00044 |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-19 | Defendant City's Response to Whitehead's Request for Production of Documents | 1/3/2020 | PM-00053-00068 |
| P-20 | Defendant Krasner's Response to Vega's Interrogatories | 1/3/2020 | PK-00021-00029 |
| P-21 | Defendant Krasner's Response to Whitehead's Interrogatories | 1/3/2020 | PK-00040-00048 |
| P-22 | Defendant Krasner's Response to Vega's Request for Production of Documents | 1/3/2020 | PK-00030-00039 |
| P-23 | Defendant Krasner's Response to Whitehead's Request for Production of Documents | 1/3/2020 | PK-00049-00059 |
| P-24 | Defendant City's Responses to Plaintiffs' First Set of Requests for Admission | 7/22/2020 | N/A |
| P-25 | PHRC Complaint of Vega | 6/26/2018 | PV-000014-000020 |
| P-26 | Answer of Defendants to PHRC Complaint of Vega | 12/21/2018 | CITY 0153-0164 |
| P-27 | PHRC Complaint of Whitehead | 6/25/2018 | WHITEHEAD 045-062 |
| P-28 | Answer of Defendants to PHRC Complaint of Whitehead | 12/21/2018 | CITY 0173-0183 |
| P-29 | Verified Statement of Defendant Krasner re: Vega | 12/12/2018 | CITY0170-0172 |
| P-30 | Verified Statement of Defendant Krasner re: Whitehead | 12/12/2018 | CITY0189-0191 |
| P-31 | Declaration of John P. Delaney, Jr. | 10/21/2020 | PV-00227-00233 |
| P-32 | Declaration of Louis F. Tumolo | 10/4/2020 | PV-00023-00026 |

**B.    Additional Documents Pertinent to Plaintiff Vega**

| No. | Description | Date | Bates |
|-----|-------------|------|-------|
| P-33 | Performance Appraisal of Vega | 7/8/1993 | CITY0130 |
| P-34 | Performance Appraisal of Vega | 6/24/1994 | CITY0129 |
| P-35 | Performance Appraisal of Vega | 7/31/1997 | CITY0126-0127 |
| P-36 | Performance Appraisal of Vega | 10/1/1998 | CITY0119-0125 |
| P-37 | Performance Appraisal of Vega | 3/31/2000 | CITY0113-0118 |
| P-38 | Performance Appraisal of Vega | 6/17/2002 | CITY0109-0112 |
| P-39 | Performance Appraisal of Vega | 6/2/2003 | CITY0107-0108 |
| P-40 | Performance Appraisal of Vega | 6/28/2004 | CITY0105-0106 |
| P-41 | Performance Appraisal of Vega | 6/14/2013 | CITY0103-0104 |
| P-42 | Performance Appraisal of Vega | 6/5/2014 | CITY0099-0102 |
| P-43 | Performance Appraisal of Vega | 5/26/2015 | CITY0096-0098 |
| P-44 | Performance Appraisal of Vega | 5/26/2016 | CITY0093-0095 |
| P-45 | Performance Appraisal of Vega | 5/17/2017 | CITY0090-0092 |
| P-46 | Letter from DA Lynne Abraham to Vega re: merit raise | 12/19/1997 | CITY0072 |
| P-47 | Letter from DA Lynne Abraham to Vega re: merit increase | 6/6/2000 | CITY0070 |
| P-48 | Memorandum from DA Lynne Abraham to Vega re: merit increase | 11/5/2007 | CITY0068 |
| P-49 | Memo from DA Lynne Abraham to Vega re: merit increase | 9/15/2018 | CITY0066 |
| P-50 | Vega's DROP Application with attached printout | 2/1/2016 and 2/5/2016 | PV-000002-000003 |

| No. | Description | Date | Bates |
|-----|-------------|------|-------|
| P-51 | Letter from City Board of Pensions & Retirement to Vega re: DROP with attached spreadsheet | 2/9/2016 | PV-000004-000005 |
| P-52 | Letter from Rachel Mitchell to Vega re: separation information | 1/9/2018 | PV-000007-000008 |
| P-53 | E-mail form Stephen Martin to Vega re: Pension Application | 1/12/2018 | PV-000009 |
| P-54 | E-mail exchange between Stephen Martin, Vega and Michele Ford | 1/12/2018 | PV-000010-000011 |
| P-55 | Letter from Michele Ford to Vega | 1/12/2018 | PV-000012 |
| P-56 | Statement of Earnings and Deductions of Vega | 1/19/2018 | PV-000013 |
| P-57 | Employment record of Vega reflecting job titles, salary adjustments and promotions as employee of the City | 1/12/2018 | CITY0417-0419 |
| P-58 | Employee Service History Record for Vega | 1/12/2018 | CITY0064 |
| P-59 | Report of Separation of Vega | 1/12/2018 | CITY0046 |
| P-60 | Terminal Leave Audit Worksheet for Separating Employee with attachment re: Vega | 1/12/2018 | CITY0047-0048 |
| P-61 | DROP Distribution Selection Form for Vega with attached printout | 1/19/2018 and 2/11/2018 | CITY0399-0400 |
| P-62 | Computation of Pension Payable, Municipal Retiree Election Application, Computational Worksheet, and Final Compensation and Pension Contribution Review re: Vega | 2/1/2018 | CITY0401-0404 |
| P-63 | Benefit Application of Vega with attached Employee Service History Record | 1/19/2018 | CITY0405-0406 |
| P-64 | Survivor Option Election Form of Vega | 1/19/2018 | CITY0407-0408 |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-65 | Printouts re: Pension and DROP payment history of Vega | 12/12/2019 | CITY0410-0412 |
| P-66 | Philadelphia Board of Pensions and Retirement Summary Plan Description | 5/2013 | N/A |
| P-67 | Letter from City Board of Pensions and Retirement to Vega re: DROP lump sum benefit | N/A – not yet received | N/A |
| P-68 | Resumés of Vega | 1/2018 | PV-000089-000090 |
| P-69 | E-mail exchange between Vega, Melissa Piccoli, and Brooke Lynn Johnson re: open opportunities with resumé of Vega | 1/10/2018 and 1/11/2018 | PV-000091-000094 |
| P-70 | Letter from Vega to Attorney General Josh Shapiro | 2/21/2018 | PV-000095 |
| P-71 | Letter from Vega to District Attorney Kevin Steele | 7/1/2018 | PV-000096 |
| P-72 | Letter from Vega to DA Thomas Hogan | 7/1/2018 | PV-000097 |
| P-73 | Letter from Vega to DA Katayoun Copeland | 7/1/2018 | PV-000098 |
| P-74 | Letter from Vega to AG Josh Shapiro | 1/8/2019 | PV-000099 |
| P-75 | Letter form Vega to DA Kevin Steele | 1/10/2019 | PV-000100 |
| P-76 | Letter from Vega to DA Thomas Hogan | 1/10/2019 | PV-000101 |
| P-77 | Letter from Vega to DA Katayoun Copeland | 1/10/2019 | PV-000102 |
| P-78 | Letter from Vega to AG Josh Shapiro | 12/4/2019 | PV-000103 |
| P-79 | Letter from Vega to DA Kevin Steele | 12/4/2019 | PV-000104 |
| P-80 | Letter from Vega to DA Thomas Hogan | 12/4/2019 | PV-000105 |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-81 | Letter from Vega to DA Katayoun Copeland | 12/4/2019 | PV-000106 |
| P-82 | Letter from Vega to DA Matthew Weintraub | 12/4/2019 | PV-000107 |
| P-83 | Letter from Vega to AG Josh Shaprio | 7/17/2020 | PV-000142 |
| P-84 | Letter from Vega to DA Kevin Steele | 7/17/2020 | PV-000143 |
| P-85 | Letter from Vega to DA Deb Ryan | 7/17/2020 | PV-000144 |
| P-86 | Letter from Vega to DA Jack Stollsteimer | 7/17/2020 | PV-000145 |
| P-87 | Letter from Vega to DA Matthew Weintraub | 7/17/2020 | PV-000141 |
| P-88 | E-mail from John Delaney to Vega | 1/29/2018 | PV-000132-000133 |
| P-89 | E-mail exchange between Mary Maran, Edgar Jaramillo and Edward Cameron re: Commonwealth v. Pitts | 3/29/2018 and 3/30/2018 | PV-000134-000136 |
| P-90 | E-mail exchange between Rivera family and Defendant Krasner re: Vega | 1/2018 | CITY LK 0003-0005 |
| P-91 | Declaration of Ann Ponterio | 9/1/2020 | PV-000167-000171 |
| P-92 | Declaration of Victoria Power | 8/30/2020 | PV-000172-000173 |
| P-93 | Transcript of trial of Commonwealth v. Scott and Muhammed | Various dates from 11/2016 to 12/2016 | N/A |
| P-94 | Opinion of Superior Court of Pennsylvania in Commonwealth v. Scott, 212 A.3d 1094, 2019 PA Super 185 (June 11, 2019) | 6/11/2019 | PV-000174-000192 |
| P-95 | Opinion of Superior Court of Pennsylvania in Commonwealth v. Muhammed, 2009 WL 2432100 (June 11, 2019), with attached Opinion of Honorable Glen Bronson dated 6/12/2017 | 6/11/2019 | PV-000193-000222 |

| No. | Description | Date | Bates |
|-----|-------------|------|-------|
|     |             |      |       |
| P-96 | Order of Supreme Court of Pennsylvania in <u>Commonwealth v. Scott</u> | 12/24/2019 | PV-000223 |
| P-97 | Expert report of Andrew C. Verzilli with attached Tables 1 and 2 | 9/17/2020 | N/A |
| P-98 | Curriculum vitae of Andrew C. Verzilli, MBA | undated | N/A |

### C.    Additional Documents Pertinent to Plaintiff Whitehead

| No. | Description | Date | Bates |
|-----|-------------|------|-------|
| P-99 | Report of Separation of Whitehead | 1/12/2018 | WHITEHEAD 024 |
| P-100 | Letter to Whitehead from Mitchell | 1/10/2018 | WHITEHEAD 025-026 |
| P-101 | Email to Mitchell from Whitehead | 1/11/2018 | CITY0010 |
| P-102 | Payroll Master Record | 1/8/2018 | CITY0008 |
| P-103 | Payroll Leave Balance | 1/8/2018 | CITY0009 |
| P-104 | Payroll Leave Balance | 1/11/2018 | CITY0012 |
| P-105 | Employee Service History Record for Whitehead | 1/12/2018 | CITY0016 |
| P-106 | Employment Record of Whitehead reflecting job titles, salary adjustments and promotions as employee of the City | 1/12/2018 | CITY0420-0422 |
| P-107 | Earnings and Deductions Statement | 2/2/2018 | WHITEHEAD 027 |
| P-108 | Whitehead's DROP Application with attached printout | 1/28/2016 | CITY0379-0382 |
| P-109 | Letter to Whitehead from Board of Pensions and Retirement | Undated | WHITEHEAD 028 |
| P-110 | Letter to Whitehead from Board of Pensions and Retirement | 2/2/2016 | WHITEHEAD 029 |

| No. | Description | Date | Bates |
|-----|-------------|------|-------|
| P-111 | DROP Distribution Selection Form | 1/19/2018 | CITY0386-0392 |
| P-112 | Board of Pensions Payment History | 12/12/2019 | CITY0396-0397 |
| P-113 | Board of Pensions DROP Payment History | 12/12/2019 | CITY0398 |
| P-114 | Email from Hodge to Members of DAO enclosing Letter from DA-Elect Lawrence Krasner | 11/9/2017 | WHITEHEAD 030-031 |
| P-115 | Payroll Master Record | 9/4/2015 | WHITEHEAD 032 |
| P-116 | Board of Pensions Active Employee Pension Estimates | 9/4/2015 | WHITEHEAD 033 |
| P-117 | Board of Pensions Active Employee Pension Estimates | 1/25/2016 | WHITEHEAD 034 |
| P-118 | Whitehead Pension Estimate | 3/20/2015 | WHITEHEAD 035 |
| P-119 | Whitehead DROP Application | 1/28/2016 | WHITEHEAD 036-038 |
| P-120 | Retirement Benefits Plan 87 | | WHITEHEAD 138-154 |
| P-121 | Pensions 101 | 12/14/2017 | WHITEHEAD 155-174 |
| P-122 | Resume of Whitehead | 1/2018 | WHITEHEAD 175-176 |
| P-123 | Emails between Whitehead and Sozi Tulante | 1/8/2018-1/18/2018 | WHITEHEAD 177 |
| P-124 | Emails between Whitehead and Richard Ross | 1/8/2018 | WHITEHEAD 178 |
| P-125 | Letter from Whitehead to Krasner | 1/2/2018 | WHITEHEAD 180 |
| P-126 | Letter from Whitehead to Delaware County District Attorney's Office | 12/18/2019 | WHITEHEAD 181-183 |
| P-127 | Letter from Whitehead to PA Office of Attorney General | 12/18/2019 | WHITEHEAD 184-186 |

| No. | Description | Date | Bates |
|-----|-------------|------|-------|
| P-128 | Letter from Whitehead to Montgomery County District Attorney's Office | 12/18/2019 | WHITEHEAD 187-189 |
| P-129 | Letter from Whitehead to Bucks County District Attorney's Office | 12/18/2019 | WHITEHEAD 190-192 |
| P-130 | Letter from Whitehead to William McSwain | 12/19/2019 | WHITEHEAD 193-195 |
| P-131 | Performance Appraisal of Whitehead | 5/14/2009 | WHITEHEAD 196-197 |
| P-132 | Performance Appraisal of Whitehead | 5/26/2016 | WHITEHEAD 334-336 |
| P-133 | Performance Appraisal of Whitehead | 5/26/2016 | WHITEHEAD 331-333 |
| P-134 | Performance Appraisal of Whitehead | 5/11/2017 | WHITEHEAD 198-200 |
| P-135 | Letter from DA Lynne Abraham to Whitehead re: merit promotion | 8/8/1994 | WHITEHEAD 209 |
| P-136 | Letter from DA Lynne Abraham to Whitehead re: perfect attendance | 3/29/1995 | CITY0021 |
| P-137 | Letter from DA Lynne Abraham to Whitehead re: increase in salary | 6/9/1995 | WHITEHEAD 208 |
| P-138 | Letter from DA Lynne Abraham to Whitehead re: perfect attendance | 6/7/1996 | CITY0022 |
| P-139 | Letter from DA Lynne Abraham to Whitehead re: merit promotion | 10/8/1996 | WHITEHEAD 207 |
| P-140 | Letter from DA Lynne Abraham to Whitehead re: merit promotion | 12/19/1997 | WHITEHEAD 206 |
| P-141 | Letter from DA Lynne Abraham to Whitehead re: merit promotion | 3/31/1999 | WHITEHEAD 205 |
| P-142 | Letter from DA Lynne Abraham to Whitehead re: merit increase | 6/6/2000 | CITY0018 |
| P-143 | Letter from DA Lynne Abraham to Whitehead re: merit increase | 8/8/2002 | WHITEHEAD 204 |

| No. | Description | Date | Bates |
|-----|-------------|------|-------|
| P-144 | Letter from DA Lynne Abraham to Whitehead re: promotion | 9/6/2002 | WHITEHEAD 203 |
| P-145 | Letter from DA Lynne Abraham to Whitehead re: perfect attendance | 4/17/03 | CITY0023 |
| P-146 | Letter from DA Lynne Abraham to Whitehead re: merit increase | 8/11/2003 | WHITEHEAD 202 |
| P-147 | Letter from DA Lynne Abraham to Whitehead re: perfect attendance | 5/17/2004 | CITY0024 |
| P-148 | Letter from DA Lynne Abraham to Whitehead re: merit increase | 10/21/2005 | WHITEHEAD 201 |
| P-149 | Letter from DA Lynne Abraham to Whitehead re: perfect attendance | 1/10/2008 | CITY0025 |
| P-150 | Letter from DA Lynne Abraham to Whitehead re: perfect attendance | 1/6/2009 | CITY0026 |
| P-151 | Chart re: Juvenile Lifers Record of Offers | 1/2/2018 | WHITEHEAD 210-215 |
| P-152 | Proposed Resentencing Offers | Miscellaneous dates 2016, 2017 | WHITEHEAD 216-288 |
| P-153 | Graduation Ceremony Videos | 1/26/2005 | N/A |
| P-154 | Expert Report of Andrew C. Verzilli with attached Table 1 and List of Documents Reviewed | 9/17/2020 | N/A |

## D.    Deposition Transcripts

| No. | Description | Date | Bates |
|-----|-------------|------|-------|
| P-155 | Deposition Transcript of Lawrence Krasner with exhibits (and video) | 9/16/2020 | N/A |
| P-156 | Deposition Transcript of Rachel Mitchell with exhibits | 8/28/2020 | N/A |

| P-157 | Deposition Transcript of Arun Prabhakaran with exhibits | 9/1/2020 | N/A |
| P-158 | Deposition Transcript of Brian Zarallo with exhibits | 6/25/2020 | N/A |
| P-159 | Deposition Transcript of Jennifer Selber with exhibits | 7/9/2020 | N/A |
| P-160 | Deposition Transcript of Michael Giampietro with exhibits | 9/8/2020 | N/A |

In addition, Plaintiffs reserve the right to use exhibits for impeachment purposes and for purposes of rebuttal, as well as admissible documents identified by Defendants in their Schedule of Exhibits.

## VI.   ESTIMATE OF TRIAL TIME

8 to 10 days for the entire case.

## VII.   OTHER MATTERS

1.      The parties have agreed, subject to the Court's approval, to defer the formal exchange of their trial exhibits until a later date, following a ruling on Defendants' pending motions for summary judgment.  Plaintiffs have identified and numbered their exhibits in this Pretrial Memorandum, and these exhibits have been exchanged in discovery, and are in the possession of Defendants.

2.      Plaintiffs are unable at this time to object to the admissibility of any of Defendants' trial exhibits since Defendants' Pretrial Memorandum is not due to be filed until November 23, 2020.  Plaintiffs request that the Court set a date for Plaintiffs to assert any objections to Defendants' exhibits.

3.      Plaintiffs request that the parties be allowed additional time beyond December 7, 2020, to submit the stipulation of uncontested facts, proposed jury voir dire questions, proposed jury instructions, motions in limine, trial memoranda, and a joint statement of the case.  Paragraph 12 of the Third Amended Scheduling Order states that these submissions are due seven days after the Final Pretrial Conference "[u]nless otherwise ordered."

4.      The parties are not presently aware of any witnesses who will be unavailable to testify at trial, necessitating the offering of deposition testimony.  If a witness is unavailable to testify, or if Plaintiffs want to offer any deposition testimony into evidence, Plaintiffs propose that the parties either take a trial deposition or work together to prepare the necessary deposition transcript designations.

5.      Plaintiff Whitehead objects to the admissibility of opinion testimony from lay witness Robert Listenbee.  Listenbee's lay opinion testimony, as stated in his deposition, relates to matters not known to or considered by Krasner when he made the decision to terminate Plaintiff Whitehead's employment.

6.      Plaintiff Vega objects to the admissibility of opinion testimony of lay witness Anthony Voci. Prior to Voci's deposition, Defendants had stated that with respect to Plaintiff Vega, Voci "may offer opinion testimony about the qualifications of the attorneys in the [DAO] during DA Krasner's tenure."  However, at Voci's deposition, counsel for Defendants questioned him regarding Plaintiff Vega's ethics, integrity, and conduct in the trial that Plaintiff Vega had against Krasner.  Based on the previous FRE 701 disclosures, Plaintiff Vega's counsel was unfairly surprised and unprepared to examine Voci on these issues.  As a remedy, Plaintiffs propose that if Defendants' motions for

summary judgment are denied, Plaintiff Vega be allowed to take Voci's deposition again prior to trial.

/s/ Robert A. Davitch
Robert A. Davitch, Esq.
**Sidkoff, Pincus & Green, P.C.**
1101 Market Street, Suite 2700
Philadelphia, PA 19107
(215) 574-0600 – Office
(215) 574-0310 – Fax
rad@sidkoffpincusgreen.com

Attorney for Plaintiff Carlos Vega


/s/ Sidney L. Gold
Sidney L. Gold, Esq.
**Sidney L. Gold & Associates, P.C.**
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999 – Office
SGold@DiscrimLaw.net

Attorney for Plaintiff Joseph Whitehead, Jr.


Date: _____November 16, 2020_____

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CARLOS VEGA** : | **CIVIL ACTION** |
| **and** : | |
| **JOSEPH WHITEHEAD, JR.** : | **NO. 19-4039** |
| : | |
| **Plaintiffs,** : | **JURY TRIAL DEMANDED** |
| **v.** : | |
| : | |
| **CITY OF PHILADELPHIA** : | |
| **and** : | |
| **LAWRENCE S. KRASNER** : | |
| **Defendants.** : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Sidney L. Gold, hereby certify that Plaintiffs' Pretrial Memorandum has been

served via electronic mail and electronic service of the Court, and is available for

viewing and downloading on the Court's ECF system, upon the following counsel of

record:

Lisa Swiatek, Esq.
Benjamin Patchen, Esq.
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA  19102

David Smith, Esq.
Anne Kane, Esq.
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286


/s/Sidney L. Gold



Date:  November 16, 2020