**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS VEGA and** | : | |
| **JOSEPH WHITEHEAD,** | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| v. | : | |
| | : | **No. 19-4039** |
| **CITY OF PHILADELPHIA and** | : | |
| **LAWRENCE KRASNER,** | : | **FILED UNDER SEAL** |
| *Defendants* | : | |

**MEMORANDUM**

PRATTER, J.                                                                                   SEPTEMBER 17, 2021

Carlos Vega and Joseph Whitehead contend that their employer, the City of Philadelphia's District Attorney's Office, led by District Attorney Lawrence Krasner, unlawfully terminated their employment based on their age. The City and Mr. Krasner filed a motion for summary judgment, claiming that Mr. Vega and Mr. Whitehead cannot show that Mr. Krasner's reasons for terminating their employment were a pretext for discrimination. Because both Mr. Vega and Mr. Whitehead have presented evidence to establish a genuine dispute on this point, summary judgment must be denied.

**Background**

Mr. Vega and Mr. Whitehead worked as prosecutors in the City of Philadelphia's District Attorney's Office for several decades. Mr. Vega began working as a prosecutor in 1982 and was promoted to the Homicide Unit in 1987. Compl. ¶¶ 22, 25. Mr. Whitehead was hired as an Assistant District Attorney in 1989 and assigned to the Homicide Unit in 2014. Compl. ¶¶ 31, 33. Mr. Krasner was elected as the Philadelphia County District Attorney and took office on January 2, 2018. Three days after taking office, Mr. Krasner terminated the employment of 30 attorneys, including Mr. Vega and Mr. Whitehead.

1

The letter informing Mr. Vega and Mr. Whitehead of this decision did not provide a reason for the terminations. Compl. at 2. Mr. Krasner has since endeavored to provide several reasons for each termination. In his response to a complaint filed by Mr. Vega with the Pennsylvania Human Relations Commission, Mr. Krasner stated that he "had been able to conduct what essentially amounted to a thirty-year job interview" of those whose employment was terminated including "extensive opportunities to observe and assess their professional competence, demeanor, and ethics." Doc. No. 40-13 Ex. 22 ¶ 2. Mr. Krasner did not review either Mr. Vega's or Mr. Whitehead's personnel file "because he did not have confidence that the files contained complete, reliable, or helpful information." Doc. No. 34-3 ¶ 7.

In his deposition for this case, two and a half years after the terminations, Mr. Krasner testified that he terminated Mr. Vega's employment based on Mr. Vega's conduct in a 2016 capital homicide trial. Doc. No. 40-1 ¶ 22. This was the only case that Mr. Krasner, as a defense attorney, tried to a verdict opposite Mr. Vega, but it was a "gut-wrenching" case in which Mr. Krasner alleges that Mr. Vega engaged in several forms of unethical behavior. *Id.* ¶¶ 19–20, 22–23. Specifically, Mr. Krasner alleges that Mr. Vega abused pretrial discovery procedures, improperly contacted two witnesses and misrepresented these contacts to the Court, reneged on a prior agreement on witness identification testimony, and provided late disclosure of mitigation evidence in the death penalty phase. *Id.* ¶ 23. In his deposition testimony, Mr. Krasner also stated that he based his decision to terminate Mr. Vega on the fact that he witnessed Mr. Vega sexually harass his colleague's paralegal during the trial. Doc. No. 34-4 Ex. 3, at 303:5–304:16.

In discussing his decision to terminate Mr. Whitehead's employment, Mr. Krasner said that he based his decision on Mr. Whitehead's "extreme" prosecutorial approach, "very cold" demeanor, and "profoundly different philosophy." Doc. No. 34-4 Ex. 3, at 385:23–24, 386:17–

2

20. Mr. Krasner stated that he also relied on the opinion of an advisor, Michael Giampietro, in assessing Mr. Whitehead's reputation and could not recall speaking with anyone else about Mr. Whitehead. Doc. No. 34-4 Ex. 3, at 384:24–385:12.

During Mr. Krasner's political campaign for District Attorney, he reportedly made several comments in media interviews about his approach to personnel decisions if elected District Attorney. Mr. Krasner stated that "people who are going to be made to leave . . . will tend to be my generation, people who started in this business 30 years ago." Doc. No. 34-5, at 121. Mr. Krasner also stated that the "old guard . . . needs to go", Doc. No. 34-5, at 128, and that "what we are going to see is broad support among a lot of younger ADA's, but we are going to see that there are some people in there whose vision for a DA's Office is so entrenched that they are unwilling to embrace a new one" who "will be better served working somewhere else", Doc. No. 34-5, at 130–31.

When Mr. Krasner requested their resignations on January 5, 2018, Mr. Vega and Mr. Whitehead were 61 and 64 years old, respectively. Compl. ¶¶ 25, 31. Mr. Vega and Mr. Whitehead brought age discrimination claims against the City of Philadelphia under the Age Discrimination in Employment Act ("ADEA") and the Philadelphia Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA").[1] The City of Philadelphia and Mr. Krasner then moved for summary judgment on all claims.

---

[1] The City of Philadelphia and Mr. Krasner moved to consolidate this case with other cases involving age discrimination claims based on terminations shortly after Mr. Krasner took office as District Attorney. The Court denied the motion to consolidate.

3

## LEGAL STANDARDS

### I. Summary Judgment

A court can grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* "Under Rule 56, the Court must view the facts and all reasonable inferences in the light most favorable to the non-moving party." *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 384 (E.D. Pa. 2013). But "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Power v. Lockheed Martin Corp.*, 419 F. Supp. 3d 878, 888–889 (E.D. Pa. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### II. Age Discrimination

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA also prohibits an employer from discriminating on the basis of age. 43 Pa. Stat. § 955(a). A plaintiff bringing an age discrimination claim "must prove

4

by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

Courts in the Third Circuit analyze claims brought under the ADEA and PHRA using the same burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (stating that "the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA"); *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (approving "continued application of the *McDonnell Douglas* paradigm in age discrimination cases"). The *McDonnell Douglas* framework proceeds in three steps. The plaintiff faces the initial burden to establish a prima facie case of discrimination. Then, if a prima facie case is established, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If such a reason is offered, the plaintiff must then prove by a preponderance of the evidence that the proffered reasons were "not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

At the summary judgment stage, the Court must draw factual inferences in the non-moving parties' favor. *See Doe v. CARS Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). Summary judgment should "be used sparingly in employment discrimination cases," particularly "when . . . intent is at issue." *Id.* at 369; *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). To survive at the summary judgment stage, a non-movant need only show that "sufficient evidence support[s] the claimed factual dispute" and a judge or jury must resolve "the parties'

differing versions of the truth" at trial. *Oakley v. Orthopaedic Assocs. of Allentown, Ltd.*, 742 F. Supp. 2d 601, 604 (E.D. Pa. 2010) (quoting *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 233 (3d Cir. 1987)).

## DISCUSSION

The City and Mr. Krasner do not dispute, for the purposes of summary judgment, that both Mr. Vega and Mr. Whitehead have established a prima facie case of age discrimination. However, the City and Mr. Krasner assert purportedly non-discriminatory motives for Mr. Krasner's termination of each attorney. Mr. Vega and Mr. Whitehead, responding to different alleged motives, each contend that Mr. Krasner's proffered justifications are mere pretext and raise disputed issues of fact. In order to defeat summary judgment when an employer asserts a non-discriminatory reason for its action, the burden shifts back to the plaintiff to identify "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The Court finds that material factual disputes at issue do preclude the Court from granting summary judgment on both sets of claims.

A plaintiff can defeat a summary judgment motion by introducing sufficient evidence to establish a genuine dispute of material fact as to whether "the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons." *Id.* at 764. A plaintiff can demonstrate pretext by introducing evidence showing that the proffered reason "was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* However, "the plaintiff cannot simply show that the employer's decision was wrong

6

or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765.

Evidence of pretext can include "inconsistencies and implausibilities in the employer's proffered reasons for [the termination] which *could* support an inference that the employer did not act for nondiscriminatory reasons." *Sorba v. Pa. Drilling Co.*, 821 F.2d 200, 205 (3d Cir. 1987). When a plaintiff shows that the reasons given for termination were not consistent throughout the proceedings, "this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 284 (3d Cir. 2001). In considering the broader context, the Court must determine whether such "evidence contradict[s] the *core facts* put forward by the employer as the legitimate reason for its decision" such that a reasonable jury could infer that the employer did not act for the non-discriminatory reason provided. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006).

I. **Mr. Vega's Claims**

Mr. Vega argues that inconsistencies in explanations proffered by Mr. Krasner support an inference that the purported non-discriminatory reasons are pretext. Mr. Krasner and the City argue that Mr. Krasner's reasons have been consistent and simply provide additional detail to support the same rationale as required by subsequent proceedings. *See* Doc. No. 43, at 8. To the extent that there are any inconsistencies, Mr. Krasner and the City argue that these inconsistencies would relate to tangential points rather than "core facts." Doc. No. 43, at 3 n.2.

At the time he received Mr. Krasner's resignation request, Mr. Vega was not given any reason for his termination. Then, in Mr. Krasner's response to Mr. Vega's Pennsylvania Human Relations Commission complaint, Mr. Krasner stated that he fired Mr. Vega after he was able to observe and assess his behavior during a "thirty-year job interview." Doc. No. 40-13 Ex. 22 ¶ 2.

7

In his deposition over two years later, Mr. Krasner testified that he litigated only one case that went to trial involving Mr. Vega, in 2016. Doc. No. 34-4 Ex. 3, at 362:23-363:9. Mr. Krasner stated that he based his decision on Mr. Vega's allegedly unethical and abusive behavior as opposing counsel and sexual harassment of a paralegal during the 2016 trial. Doc. No. 40-1 ¶ 23; Doc. No. 34-4 Ex. 3, at 303:5–304:16.

However, Mr. Vega emphasizes that after the paralegal in question submitted a declaration refuting Mr. Krasner's allegations of Mr. Vega's harassment, *see* Doc. No. 40-15 Ex. 24, the City and Mr. Krasner did not raise the sexual harassment allegation as a basis for Mr. Krasner's decision in their summary judgment briefing, Doc. No. 40-1 Resp. ¶ 23(b)(2). Instead, the City and Mr. Krasner argue that whether Mr. Krasner in fact witnessed Mr. Vega sexually harass a paralegal is not a material fact for summary judgment. Doc. No. 43, at 3 n.2. They also argue that testimony by colleagues including Mr. Giampietro supports Mr. Krasner's genuinely held opinion of Mr. Vega following the 2016 trial. *Id.* at 2. Mr. Vega challenges this evidence by noting that Mr. Giampietro recommended that Mr. Krasner retain Mr. Vega. Doc. No. 40, at 12. Mr. Vega also argues that the court did not sanction him in the 2016 trial for any misconduct and that the subsequent convictions were affirmed on appeal. *Id.* at 11–12.

"When the defendant's intent has been called into question, the matter is within the sole province of the factfinder." *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989). In such an instance, the jury must "assess the employer's credibility with respect to its proffered reason[s]." *Sorba*, 821 F.2d at 205. The "honesty or legitimacy" of the employer's narrative is a "core fact[]" in determining whether a plaintiff has asserted sufficient evidence of pretext to survive summary judgment. *West v. Northampton Clinic Co., LLC*, 783 F. App'x 118, 123 (3d Cir. 2019). While Mr. Krasner is permitted to terminate an at-will employee based on a mistaken non-discriminatory

belief, "inconsistencies and implausibilities in the employer's proffered reasons for discharge" can preclude summary judgment for the employer. *Sorba*, 821 F.2d at 205. The City and Mr. Krasner attempt to distinguish the cases cited by Mr. Vega and Mr. Whitehead as cases involving a "wholesale change in the primary rationale for the employer's decision." Doc. No. 43, at 8. Mr. Krasner, however, has "wholesale" abandoned an allegation of sexual harassment as a basis for his decision to terminate Mr. Vega's employment. Because Mr. Krasner has provided shifting reasons for his decision, the issue of Mr. Krasner's intent in terminating Mr. Vega's employment is a factual dispute for the jury.

## II.  Mr. Whitehead's Claims

Mr. Whitehead argues that Mr. Krasner's non-discriminatory justifications are a *post hoc* justification rather than his true motivation at the time of his decision. As with Mr. Vega, Mr. Whitehead was not given any reason for his termination on January 5, 2018.[2] Then, in Mr. Krasner's communications with the Pennsylvania Human Relations Commission, Mr. Krasner stated that he fired Mr. Whitehead after he was able to observe and assess his behavior during a "thirty-year job interview." Doc. No. 40-26 Ex. 35 ¶ 2.

At his deposition, Mr. Krasner stated that he had "some matters in juvenile court many years ago" with Mr. Whitehead, Doc. No. 34-4 Ex. 3, at 387:7-12, and discussed one case from the 1980s or 1990s in which he recalled Mr. Whitehead pursuing an "extreme" approach to sentencing for a juvenile robbery, *id.* at 388:21-389:12, 391:10-22. Mr. Krasner testified that he spoke with Mr. Giampietro about Mr. Whitehead before terminating Mr. Whitehead's employment and was unable to identify any other discussions regarding Mr. Whitehead before the termination.

---

[2] At oral argument, Mr. Whitehead argued that while "there is no legal obligation to proffer a reason at the time of termination," H'rng Tr. at 27:25-28:6, a lack of documentation concerning the termination can serve as evidence of pretext, citing *Johnson v. Verizon Servs. Corp.*, No. CV 16-1023, 2017 WL 1397240 (E.D. Pa. Apr. 18, 2017).

9

Doc. No. 34-4 Ex. 3, at 385:5–12. Mr. Giampietro, in turn, testified that "[t]here was no discussion about Joe Whitehead" before the terminations and that his testimony covered only what he would have told Mr. Krasner had he been asked. Doc. No. 34-4 Ex. 4, at 57:11–16. Similarly, the City and Mr. Krasner cite Robert Listenbee's testimony about Mr. Whitehead's reputation for seeking long juvenile sentences, but Mr. Whitehead argues that this is a *post hoc* rationalization because Mr. Listenbee was not hired until February 2018—after the terminations—and did not discuss Mr. Whitehead with Mr. Krasner before that point. Doc. No. 40, at 13–14; Doc. No. 40-1 Resp. ¶ 53(c); Doc. No. 40-22 Ex. 31, at 14:18–22.[3]

In addition, the City and Mr. Krasner assert that former Chief of Staff Arun Prabakaran "specifically recalls a discussion about Mr. Whitehead's excessive sentencing recommendations and Mr. Krasner's sentencing philosophy before the January 5, 2018 terminations." Doc. No. 34-2, at 12. However, Mr. Prabakaran testified that he could not recall Mr. Whitehead's sentencing philosophy being discussed at a *particular* meeting, Doc. No. 34-4 Ex. 5, at 237:5–11, and that Mr. Krasner did not have conversations with him specifically about the decision regarding whether to keep Mr. Whitehead, *id.* at 236:2–11. Mr. Krasner himself could not recall speaking with anyone besides Mr. Giampietro about Mr. Whitehead. Doc. No. 34-4 Ex. 3, at 385:5–12.

Mr. Krasner also cites Mr. Whitehead's juvenile sentencing recommendations to corroborate his opinion of Mr. Whitehead's extreme prosecutorial strategy. Doc. No. 34-2, at 13 n.4. However, as the City and Mr. Krasner concede, "Mr. Krasner did not have access to these memoranda when he made the decision to terminate Mr. Whitehead." *Id.* A jury could certainly

---

[3] The City and Mr. Krasner also cite the testimony of Mr. Whitehead's prior supervisor, Brian Zarallo, that Mr. Whitehead's sentencing recommendations tended to be "on the heavier end." Doc. No. 34-2, at 13. Mr. Whitehead refutes this characterization by citing other portions of Mr. Zarallo's testimony, including a statement that Mr. Whitehead "had excellent prosecutorial judgment." Doc. No. 40-1 Resp. ¶ (51)(e). Regardless, Mr. Krasner did not assert that he relied on Mr. Zarallo's opinion in deciding to terminate Mr. Whitehead's employment. Doc. No. 34-4, at 331:21–22.

draw inferences about the validity of Mr. Krasner's claim that he was motivated by Mr. Whitehead's juvenile sentencing philosophy rather than his age from any of the evidence cited by the City and Mr. Krasner. However, Mr. Whitehead has introduced a genuine dispute of fact regarding whether his sentencing approach was the true motivation or a *post hoc* rationalization for a discriminatory termination.

### III. Mr. Krasner's Comments

Mr. Vega and Mr. Whitehead have called Mr. Krasner's non-discriminatory explanations into question by introducing interview statements regarding his approach to personnel decisions as part of their prima facie case of age discrimination. "[I]f a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 427 (3d Cir. 2013). This evidence includes Mr. Krasner's statements that "people who are going to be made to leave . . . will tend to be my generation, people who started in this business 30 years ago", Doc. No. 34-5, at 121, and that, in contrast to new prosecutors "coming mid-career or straight out of law school", the "old guard . . . needs to go", Doc. No. 34-5, at 128.

The City and Mr. Krasner argue that Mr. Krasner's interview comments are "cherry-picked" "stray remarks" that require full context. Doc. No. 34-2, at 6; Doc. No. 43, at 6. Mr. Krasner testified that he intended the "old guard" comments to refer to Napoleon's soldiers who were entrenched and resistant to change. Doc. No. 34-3 Ex. 3, at 563:6–12. In support of this argument, the City and Mr. Krasner emphasize additional language surrounding Mr. Krasner's "old guard" comments that "distinguishes prosecutors based on philosophy not age." Doc. No. 43, at 10–11 ("As I said, I think there is an old guard, *it certainly isn't [] everyone above a certain*

11

*age, that's not the case [], but [there] is an old guard there.*") (emphasis in original).[4] Even this language, however, could be interpreted by a reasonable jury as invoking age-based stereotypes, particularly when read in conjunction with other comments made by Mr. Krasner. *See, e.g.*, Doc. No. 34-5, at 121 ("The ones who will leave will tend to be my generation, people who started in this business 30 years ago . . . ."). Mr. Krasner may very well be a student of French history, but he and the City are the movants, which means that inferences are drawn in Mr. Vega's and Mr. Whitehead's favor. A reasonable jury could credit Mr. Krasner's interview statements as evidence of discriminatory intent in terminating Mr. Vega's and Mr. Whitehead's employment.[5]

When a court "only has before it dueling narratives" as to the reason for termination of a plaintiff's employment, "a genuine dispute of material fact remains as to pretext." *Johnson v. Verizon Servs. Corp.*, No. 16-1023, 2017 WL 1397240, at *4 (E.D. Pa. Apr. 18, 2017). The issue of whether Mr. Krasner's proffered reasons for termination of Mr. Vega's and Mr. Whitehead's employment are mere pretext is a genuine dispute of material fact that precludes summary judgment.

---

[4] The City and Mr. Krasner also cite a Seventh Circuit case, *Turbergen v. St. Vincent Hosp. & Health Care Cent.*, 517 F.3d 470, 474 (7th Cir. 2008). Doc. No. 34-2, at 6. However, the Seventh Circuit in *Turbergen* stated that "the context in which the comment was made makes it even more unlikely that [the employer] was thinking about Tubergen at all, much less his age" because the "old guard" comment was made about a hospital area in which Tubergen did not work. *Id.* at 474. Mr. Whitehead and Mr. Vega, in contrast, were in fact attorneys in the District Attorney's Office and the City and Mr. Krasner do not dispute that Mr. Krasner made these comments about this office.

[5] Mr. Krasner also argues that his January 5, 2018 terminations included 10 employees under the age of 40, out of a total of 30 terminations, which "nullifies any conceivable inference of age bias based on Mr. Krasner's public statements." Doc. No. 43, at 10. Mr. Vega and Mr. Whitehead counter that between July 2018 and September 2019, Mr. Krasner hired 138 new attorneys, 127 of whom were under the age of 40. These competing statistics also create an issue of "dueling narratives." *Johnson v. Verizon Servs. Corp.*, No. 16-1023, 2017 WL 1397240, at *4 (E.D. Pa. Apr. 18, 2017).

## CONCLUSION

For the foregoing reasons, the Court denies the City and Mr. Krasner's motion for summary judgment with respect to the ADEA and PHRA claims. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE