**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CARLOS VEGA AND JOSEPH WHITEHEAD, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2:19-cv-04039 |
| | : | |
| CITY OF PHILADELPHIA and LAWRENCE KRASNER, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS CITY OF PHILADELPHIA AND**
**LAWRENCE KRASNER'S PRETRIAL MEMORANDUM**

## I.    NATURE OF THE ACTION

Defendant Lawrence S. Krasner was elected as the Philadelphia County District Attorney on November 7, 2017 and took office on January 2, 2018. Mr. Krasner made a number of personnel changes in the first few weeks of his administration, including the termination of 33 employees in the District Attorney's office ("DAO"). Plaintiffs Carlos Vega and Joseph Whitehead were among those whose employment was terminated and who have asserted age discrimination claims under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"). However, there is no evidence that Defendant Krasner's legitimate non-discriminatory reasons for terminating Plaintiffs were false or a pretext for discrimination.

## II.    COUNTER-STATEMENT OF FACTS

The DAO attorneys are at-will employees who serve at the pleasure of the District Attorney. That gave Mr. Krasner the right to pick his own team. In the first few weeks of

his administration, Mr. Krasner made a number of personnel changes, including the termination 30 attorneys. An additional 13 attorneys were not asked to leave but resigned instead.

In making termination decisions, Mr. Krasner considered his own experiences with and knowledge of individual DAO attorneys and sought input from trusted advisors and colleagues regarding the past conduct, reputations and criminal justice philosophies of many others. Mr. Krasner's overarching goal in making termination and retention decisions (i.e., picking his team) was whether each attorney had the skills, dedication and sense of justice needed to support and promote his progressive vision of criminal justice. Although personnel files were made available, Mr. Krasner did not review them because he did not have confidence that the files contained complete, reliable, or helpful information. Mr. Krasner also did not seek formal input from supervisors in the outgoing administration or talk to those employees he was considering for termination, because he viewed the office as "tribal" and overly "self-protective."

At the time he took office, Mr. Krasner was 56 years old. Nineteen (19) of the 30 attorneys terminated on January 5, 2018 were under the age of 50, including nine (9) attorneys in their thirties and one attorney in her twenties.

| Age Bracket | Attorneys Terminated on January 5, 2018 |
|---|---|
| Under 40 | 10 |
| Between 40 and 49 | 9 |
| Over 50 | 11 |

In his first week in office and over the next 30 days, Mr. Krasner hired fifteen (15) attorneys, including ten (10) attorneys over 40. Four (4) of these new hires were older than

Plaintiffs. In fact, the data shows that the number of attorneys in the office over the age of 40 (not including Mr. Krasner) did not materially change during this period.

| Age Bracket | DAO Attorney Count as of Jan. 1, 2018 | Jan. 5, 2018 DAO Attorney Terminations | Jan. 2018 Voluntary DAO Attorney Departures | DAO Attorney Hires within 30 days of Jan. 5, 2018 | Net Change |
|---|---|---|---|---|---|
| Under 40 | 198 | -10 | -7 | +4 | -13 |
| Over 40 | 98 | -20 | -5 | +10 | -15 |

By the end of July 2018, Mr. Krasner had hired twenty-two (22) attorneys over the age of 40, including the following:

- Nine (9) attorneys that were 64 or older: Hon. Carolyn Temin (83); Richard Glazer (75); Ronald Simon (70); Charles Cunningham (69); Robert Listenbee (69); Paul George (67); Flo Messier (65); Raymond Roberts (64); and Michael Giampietro (64);

- Four (4) attorneys between the ages of 58 and 59: Vincent Corrigan (59); Patricia McKinney (59); Nancy Winkelman (59); Jeffrey Lindy (58); and

- Nine (9) attorneys between the ages of 40 and 54: Anthony Voci (54); Patricia Cummings (51); Crystal Powell (50); Paul Reddel (47); Joseph Green (46); Noel Ann DeSantis (43); Carrie Wood (41); Varghese Kurian (41); and Tracey Tripp (41).

These attorneys took on a variety of roles in the new administration, ranging from policy-level and supervisory roles to staff attorney unit assignments, including the major trial unit, the special investigations unit, the waiver unit, the conviction integrity unit, the pre-trial unit, and the juvenile unit.

**Plaintiff Carlos Vega**

Plaintiff Carlos Vega, an attorney in the Homicide Unit, was one of the 30 DAO attorneys whose employment was terminated on January 5, 2018. At the time of his termination, he was 61 years old (five years older than Mr. Krasner).

Mr. Krasner has known Mr. Vega for over thirty years, and recently had tried the *Scott/Muhammed* case to verdict against him. Mr. Krasner's negative opinions regarding Mr. Vega's ethics and trustworthiness were established during the *Scott/Muhammed* case, and formed the basis for his decision to terminate Mr. Vega.

The *Scott/Muhammed* case was a "gut-wrenching" capital homicide case that went to trial, after five years of litigation, in December 2016. Mr. Krasner represented Ibrahim Muhammed with co-counsel Anthony Voci. Mr. Vega's conduct that Mr. Krasner deemed unacceptable included:

- *Mr. Vega's abusive behavior during pretrial discovery*. Mr. Krasner testified that Mr. Vega behaved in a petty, abusive, and disrespectful way to him and his staff during pretrial discovery and made it very difficult to obtain copies of discovery materials.

- *Mr. Vega's contacts with defense witnesses during trial and his misrepresentations to the Court regarding those witness contacts*. Mr. Krasner testified that Mr. Vega lied to him and the Court about his interviews with defense witnesses Amber Creamer and Jajal Aljuwaie in the corridor outside the courtroom, during which, according to Mr. Vega, they suddenly became able to identify the defendant. In addition, Mr. Vega told those defense witnesses that they could leave before testifying.

- ***Mr. Vega's attempt to renege on a prior agreement regarding witness identification testimony and to "ambush" the defense at trial***. At trial, Mr. Krasner told the court that Mr. Vega's proposed witness identification testimony was the "typical ambush we've had the entire trial" and that Mr. Vega was reneging on his prior agreement not to present identification testimony.

- ***The late disclosure of mitigation evidence in the death penalty phase***. Mr. Krasner testified that the prosecution did not turn over critical mitigation evidence until the very end of trial and "far too late for us to give them to our experts to be adequately prepared to testify."

The transcript of the *Scott/Muhammed* trial confirms Mr. Krasner's testimony and includes his co-counsel Mr. Voci's argument to the Court in the *Scott/Muhammed* case demonstrating the dishonesty of Mr. Vega's representation that detectives were with him when he spoke with two defense witnesses.

Mr. Vega does not deny that the *Scott/Muhammed* trial was contentious. He does not believe that he acted unethically during the litigation. Rather, during his deposition, he criticized Mr. Krasner's performance during the trial, questioning his legal aptitude.  Most importantly,  Mr. Vega admits that Mr. Krasner terminated his employment due to Mr. Vega's conduct during the *Scott/Muhammed* trial.  In an unrelated civil claim brought by Carlos Vega against Mr. Krasner's political campaign, Mr. Vega made sworn factual allegations that Mr. Krasner never got over losing to Mr. Vega in the *Scott/Muhammed* trial, Mr. Krasner swore to get revenge against Mr. Vega, and that Mr. Krasner's long-standing malice and resentment of Mr. Vega caused Mr.

Krasner to terminate Mr. Vega's employment in the first week after Mr. Krasner became District Attorney.[1]

Mr. Voci has also testified regarding Mr. Vega's conduct during the *Scott/Muhammed* trial and stated his view that Mr. Vega's conduct was unacceptable and unethical.[2] "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. And Mr. Vega's conduct throughout the course of the Commonwealth versus Ibrahim Muhammad and Scott violated the spirit and the letter of Rule 3.8 in a very significant way. It was the antithesis of what Rule 3.8 requires of a prosecutor."

Jack McMahon, who represented the co-defendant Nalik Scott, also testified that he was outraged by Mr. Vega' "disgraceful" conduct in the *Scott/Muhammed* trial. He stated that "all the way through the trial" he believed that Mr. Vega was "playing fast and loose with the rules" and that Mr. Vega's conduct was particularly disturbing in a death penalty case. Notably, when Mr. McMahon read in the newspaper that Mr. Vega had sued Mr. Krasner and the City of Philadelphia for age discrimination in 2019, Mr. McMahon sent Mr. Krasner a text which read: "What he did

---

[1]     On May 14, 2021, Mr. Vega filed a Complaint against Shaun King, Real Justice PAC, and Lawrence Krasner for DA, a political campaign organization, alleging false light and civil conspiracy claims.  Discovery in that case is ongoing, and defendants deny liability on all claims. *See Vega v. King, et al.*, Philadelphia Court of Common Pleas, Case No. 210500305.

[2]     Mr. Vega's counsel objected to Mr. Voci's testimony regarding Mr. Vega's conduct during the *Scott-Muhammed* trial at Mr. Voci's October 30, 2020 deposition on the grounds of "surprise." The facts relating to Mr. Vega's conduct at the *Scott/Muhammed* trial were covered extensively in Mr. Krasner's September 16, 2020 deposition, Mr. Vega's October 15, 2020 deposition and Mr. McMahon's October 22, 2020 deposition. Indeed, Mr. Voci's statements to Judge Bronson in the *Scott/Muhammed* had already been covered in detail at Mr. McMahon's October 22, 2020 deposition during which Mr. Vega's counsel specifically acknowledged that "Mr. Voci made the statements." Although Defendants' Rule 701 Disclosures had inadvertently omitted Mr. Voci from the list of lay opinion witnesses regarding Mr. Vega (which was immediately corrected), Mr. Vega's counsel was well aware of Mr. Voci's role in the *Scott/Muhammed* trial and had a full and fair opportunity to question Mr. Voci at the October 30, 2020 deposition.

to us in Scott / Mohammad was a disgrace. Plus, he lied directly to the court. Knowing directly the methods of Carlos it would have been a dereliction of duty to keep him."

Michael Giampietro is a Philadelphia attorney whose opinion is valued by Mr. Krasner. Mr. Krasner consulted with him regarding individual DAO attorneys prior to the January 5, 2018 terminations. Mr. Giampietro testified during his deposition that he was aware that Mr. Krasner had had "a very negative experience with Carlos in a case involving him and Jack McMahon."

### Plaintiff Joseph Whitehead

Plaintiff Joseph Whitehead was one of the 30 DAO attorneys terminated on January 5, 2018. At the time of his termination, he was 64 years old. He had numerous assignments over the course of his tenure in the DAO. He joined the Homicide Unit in November 2014, but by 2016 was assigned to devote most of his time to the resentencing of juvenile lifers under the terms of *Miller v. Alabama*.

Over the years, Mr. Krasner formed a negative view of Mr. Whitehead's prosecutorial judgment based on his own experiences and Mr. Whitehead's reputation in the criminal justice community. "I [] kn[e]w him to be extreme in his approach to prosecution. And what I mean by that is extreme in wanting the highest charge, extreme in wanting the longest sentence, extreme in trying to make sure that no one ever got a break. Kind of an incapacity to separate the wheat from the chaff." From Mr. Krasner's perspective, Mr. Whitehead had a "profoundly different philosophy" that was entirely inconsistent with what Mr. Krasner was trying to do in the office.

Mr. Giampietro testified that he discussed Mr. Whitehead with Mr. Krasner prior to the January 5, 2018 employment terminations and that he told Mr. Krasner: "I wouldn't keep him." Mr. Giampietro also described several personal experiences with Mr. Whitehead's which, in his opinion, demonstrated rigidity and lack of judgment.

In addition, Brian Zarallo, Mr. Whitehead's supervisor and a member of the juvenile resentencing committee in 2017 freely acknowledged that Mr. Whitehead had a reputation for seeking "heavier" sentences under that prior administration's sentencing standards.

Mr. Whitehead's extreme mindset is demonstrated in juvenile resentencing memoranda he prepared in October/November 2017. Although Mr. Krasner did not have access to these memoranda when he made the decision to terminate Mr. Whitehead, Mr. Whitehead's sentencing recommendations confirm Mr. Whitehead's reputation for seeking heavy sentences and validate Mr. Krasner's opinions regarding Mr. Whitehead's prosecutorial judgment.

- Mr. Giampietro, who participates in the juvenile resentencing committee in the Krasner administration, testified that he observed further evidence of Mr. Whitehead's rigidity and lack of judgment in his juvenile resentencing work, commenting that Mr. Whitehead's sentencing recommendations were "just obscene."

- Mr. Whitehead's juvenile resentencing recommendations were not only materially longer than the Krasner administration ultimately recommended, but also materially longer than even the prior administration was willing to accept. By way of example, in October 2017, Mr. Whitehead prepared a resentencing memorandum for a juvenile lifer (age 14 when charged), recommending a sentence of 60 years to life. The sentencing recommendation approved in the prior administration was *20 years lower* (40 years to life). The sentencing recommendation approved in the Krasner administration *was 38 years lower* (22 years to life).

- Robert Listenbee, one of Mr. Krasner's First Assistants and a nationally-recognized juvenile justice attorney, is a member of the juvenile resentencing committee in Mr. Krasner's administration. Mr. Listenbee testified that he reviewed sentencing memoranda prepared by Mr. Whitehead and that some of Mr. Whitehead's recommendations were "harsh" and "cruel" and did not properly take into account the factors mandated by the United States Supreme Court such as adolescent development.

**Mr. Krasner's Public Statements Regarding Institutional Change**

In the absence of any actual evidence of age bias, Plaintiffs rely on certain public statements by Mr. Krasner to demonstrate that he "has a strong bias against and stereotypical views of older Prosecutors" and an "unwavering preference and affinity for young Prosecutors." Plaintiffs identified articles and interviews which they assert support their sweeping and unsupported conclusions about Mr. Krasner.

In their Complaint, Plaintiffs quote snippets from an interview of Mr. Krasner, which was conducted before he won the primary and published in the Intercept on May 16, 2017, highlighting certain language. The language quoted in the Complaint omits a more extended discussion that includes Mr. Krasner's statement that the office **"*already contains the dissent, meaning people who have been there for years but might have been frustrated for years. I know some of these folks because some of them would call me and tell me what they knew about corrupt cops, but couldn't do anything about it from the inside. Those people need to stay, and in supervisor positions, because they represent the kind of change that should come*."** Mr. Krasner's full answer, with the language omitted by Plaintiffs reads:

If you have a truly progressive DA, there's going to be a certain portion of the DA's office who can't stand the idea of change. They're going to leave. There are other people who are going to be made to leave because you cannot bring about real change and leave people in place who are going to fight change every step of the way. The ones who will leave will tend to be my generation, people who started in this business 30 years ago, which means they'll also tend to be white and male. That results in more openings, opportunities for greater diversity, and if we are to judge by what's happened in other jurisdictions, the office will become a tremendous magnet for new talent, because there are a ton of people who are either coming out of law school or who are mid-career who would love to work in a truly progressive DA's office but haven't been able to find any.

***That means you have really committed, dedicated, talented people who are coming into an organization that already contains the dissent, meaning people who have been there for years but might have been frustrated for years. I know some of these folks because some of them would call me and tell me what they knew about corrupt cops, but couldn't do anything about it from the inside. Those people need to stay, and in supervisor positions, because they represent the kind of change that should come***. And there are a lot of just malleable, mostly younger attorneys who did what they were told, and always wanted to do the right thing, and with proper training will do the right thing. I think real cultural change is possible.

Mr. Krasner testified he was discussing the challenges of effecting institutional change in his public statements and that he wanted the office to be a "destination for all talent," regardless of chronological age, who wanted to see reforms in the criminal justice system. Specifically, he stated:

The reality is that what you have had in the Philadelphia DA's office for my entire career is you have had a particular philosophy. And when you have that particular philosophy, which is the same philosophy that has made this country the most incarcerated county in the world, and in many ways has torn apart all of the different things that we try to do to prevent crime, when you have that philosophy it hires people who share that philosophy. It trains people to follow that. It advances people who follow it. It turns into supervisors who follow it. And unfortunately it is a recipe for things to become more and more tribal. That is what happened in that office.

Mr. Krasner further testified that his desire to disrupt the DAO's institutional culture did not reflect a preference for younger attorneys, and that he sought out and hired mid- to late-career and retirement-age attorneys who shared his criminal justice philosophy including Judge Carolyn Engle Temin (83 years old) and Bob Listenbee (69 years old) who serve as his First Assistants and many others, including: Richard Glazer (75); Ronald Simon (70); Charles Cunningham (69); Robert Listenbee (69); Paul George (67); Flo Messier (65); Raymond Roberts (64); Michael Giampietro (64); Vincent Corrigan (59); Patricia McKinney (59); Nancy Winkelman (59); Jeffrey Lindy (58); Anthony Voci (54); Patricia Cummings (51); Crystal Powell (50); Paul Reddel (47); Joseph Green (46); Noel Ann DeSantis (43); Carrie Wood (41); Varghese Kurian (41); and Tracey Tripp (41). Mr. Krasner further explained:

> When I hired Carolyn [Engel] Temin who was well past a mandatory retirement age as a judge after having been a prosecutor, a public defender, a judge, an international human rights judge, I was hiring someone at 83 years of age who very clearly is not brand new and who is progressive. Same thing when I hired Bob Listenbee, Barack Obama's head of juvenile justice for the United States of America at an age that was close to 70. The same is true when I asked Chip Junod, who had been [in] this office, the DA's office for many years, to come back to the DA's office from other employment. And he was considerably older than me and has now retired. The same thing when I asked Guy Garant, who was in the office for many years, [and] had already retired. And I asked Mr. Garant who is around my age or a bit older, I asked him to come back. He didn't do it only because basically his, he would be working for free giv[en] the situation with his pension. I have repeatedly, repeatedly asked people who are not, quote, young, unquote, to come into this office. I have attracted many of them. Our Chief of the Conviction Integrity Unit was hired from Austin, Texas at about 50 years of age, one of many, many, many examples. Giampietro is a senior person. You know, it is not typical that senior people in prosecution, because of the culture, because of the legislation that was passed, it is not typical that they have progressive views. But it is a fact that there are many senior people who have exactly what we are looking for. And it's not just that we say we would hire them, we have hired them.

Plaintiffs also present out-of-context portions of their own transcriptions of an October 7, 2017 radio interview in which Mr. Krasner used the term "old guard":

> [T]here is no question that the old guard in that [DA's] office is in control and the old guard in that office is not desiring change at all. In fact, one of them went out of his way to say that 'there is nothing wrong with this ship, the ship does not need to be righted and we do not need an outsider telling us what to do.' Well that crowd needs to go.
>
> They need to get out of the way and let people who are ex-Prosecutors have been on the other side, let people who have a real moral compass about justice and, you know, let people who are sophisticated and modern and understanding of the mistakes that have been made in the last fifty years. Let them run the show. And if we can really do that, then I think there are those Prosecutors who are open to those ideas and that vision then there are new Prosecutors who are going to be coming mid-career or straight out of law school.
>
> There is an old guard there [in the DA's Office] who actually thinks Lynne Abraham for 19 years was doing the right thing when frankly, she almost never did the right thing at all. You know, there's that crew, they're very loyal to a particular way of doing things. Which is very authoritarian, very unscientific, very political and they are not only going to resist, they are you might say in the throes of trying to resist even now. Those folks got to go. I mean some of them are leaving already which is a good choice and some of them are going to go.
>
> So, yes, there will be turnover . . . and people whose vision is incompatible with the progressive vision of the next District Attorney in Philadelphia, and I hope that person will be me . . . I mean they will be well-served to find another place to work.

The language misleadingly quoted in the Complaint omits the context in which the comments were made:

> ***There are a lot of prosecutors, especially these days, who I think are really fair minded people who absolutely want to do the right thing and have always wanted that in a way that is, you know, directed towards justice and equality and sees the bigger picture***, but there is

> no question that the old guard in that office is in control and the old
> guard in that office is not desiring change at all.
>
> . . .
>
> Well that crowd needs to go. They need to get out of the way ***and let people
> who are ex prosecutors who have been on the other side, let people who
> have a real moral compass about justice*** and, you know, let people who are
> sophisticated and modern and understanding of the mistakes that have been
> made in the last fifty years. Let them run the show. And if we can really do
> that, then ***I think there are those prosecutors who are open to those ideas***
> and that vision, then there are new prosecutors who are going to be coming
> mid-career or straight out of law school who have heard the phrase "mass
> incarceration" who take seriously the idea of crime prevent as opposed to the
> DA's office being a political springboard.
>
> . . .
>
> As I said, I think there is an old guard, ***it certainly isn't [] everyone
> above a certain age, that's not the case [],*** but [there] is an old guard there.

Moreover, Mr. Krasner testified that his use of the term "old guard" in this and other

interviews has nothing to do with chronological age.

> Q: When you said the old guard needs to go, what did you mean?
>
> A: The reference [is] to the French revolution. Are you not aware of it? Have
> you looked up what old guard means? It means entrenched . . . It means the
> entrenched people who have been in control and who are resistant to change.
> The old guard, Napoleon's guard, were not necessarily old, they were
> soldiers. In fact, they were rather vigorous soldiers and had to be of a fairly
> reasonable age in order to fight. That is what old guard refers to. It refers to
> the people who come from an older philosophy who are in control. They
> might be senior. They might be young. But either way they are [adherents] to
> a philosophy and they are unwilling to change.
>
> [W]hen you have any organization that has taken power and that entrenches
> that power over a period of time there will be some people among them who
> are older. But it is a question of philosophy. It's not in and of itself just a
> question of age. As you see cultural shift, as you see a move, for example,
> from racial segregation in the south to the beginnings of racial integration in
> the south to more general integration in the south to new attitudes about race,
> what you are seeing are generational shifts. There are young white
> supremacists right now who want to go back and refight the Civil War.

> They're called the Boogaloo Boys. They are old guard. They might be 16 years old but they are old guard.

Mr. Krasner testified that he is committed to retaining and recruiting attorneys, regardless of age, who are committed to criminal justice reform. He has hired numerous people who are older from the outside and fired people who are younger. Mr. Krasner testified that he wants the office "to be a destination for all talent." He further explained that "if you are going to try to change culture then what you have to do is you have to bring in people who have different life experiences who have different perspectives."

## III.    MONETARY DAMAGES

See Plaintiffs' Memorandum.  Defendants dispute that punitive damages are available.

## IV.    WITNESSES

1. District Attorney Lawrence Krasner
   3 S. Penn Square, Philadelphia, PA
   Liability

2. Cecilia Madden[3]
   3 S. Penn Square, Philadelphia, PA
   Liability

3. Rachel Mitchell
   Address to be supplied
   Liability

4. Arun Prabhakaran
   1207 Chestnut Street, Philadelphia, PA
   Liability

5. Shamika Taliaferro, BBA, MPA (or other Board of Pensions representative)
   2 Penn Plaza, 16th Floor, Philadelphia, PA
   Damages

6. Jack McMahon, Esquire
   139 N. Crosky Street, Philadelphia, PA
   Liability

---

[3]    Rachel Mitchell retired from the District Attorney's office.  Cecelia Madden can testify to the statistics and demographics of the Office.

7.  Michael Giampietro, Esquire
    3 S. Penn Square, Philadelphia, PA
    Liability

8.  Chief Deputy Attorney General Brian Zarallo
    1600 Arch Street, #300, Philadelphia, PA
    Liability

9.  Assistant District Attorney Chesley Lightsey
    3 Penn Square, Philadelphia, PA
    Liability

10. Assistant District Attorney Anthony Voci
    3 Penn Square, Philadelphia, PA
    Liability

11. Jody Dodd
    3 Penn Square, Philadelphia, PA
    Liability

12. First Deputy District Attorney Robert Listenbee
    3 Penn Square, Philadelphia, PA
    Liability

13. Dustin Slaughter
    Philadelphia, PA
    Liability

Defendants reserve the right to call any witness identified by Plaintiffs and any rebuttal witnesses that may become necessary at trial.

## V.    EXHIBITS

See Defendant's exhibit list attached as Exhibit A.  The list below does not include exhibits or documents that the City of Philadelphia may use for cross-examination, impeachment, rebuttal, or as demonstrative exhibits. The City of Philadelphia reserves the right to identify documents and exhibits for those purposes at a later time. The City of Philadelphia also reserves the right to use as an exhibit any document listed on Plaintiff's exhibit list. Additionally, for purposes of cross-examination and rebuttal, the City of Philadelphia reserves

the right to use any document submitted to plaintiffs' expert witnesses, and any document produced in this case.

## VI.   ESTIMATED TIME OF TRIAL

5-7 Days.

## VII.   STIPULATIONS OF COUNSEL

None at this time.

## VIII.   OBJECTIONS TO EXHIBITS AND EVIDENCE

See Defendant's objections to Plaintiff's exhibit list at **Exhibit B.**  Pursuant to the Court's policies and procedures, Defendant has not identified its objections on the basis of relevance pursuant to F.R. E. 401.

Defendants also assert the following objections to the admissibility of evidence expected to be offered:

• Defendant objects to the introduction of transcripts or partial transcripts of interviews or prepared by unknown individuals. (Authenticity, F.R.E. 901, 106)

• Defendant objects to the introduction of the bar passage rates of any DAO new hires as they may be viewed as prejudicial and are not probative of any matter at issue in this case. (F.R.E. 403)

• Defendant objects to the introduction of evidence about alleged incidents that occurred after Mr. Krasner's January 2018 personnel decisions, including those involving Dana Bazelon, Anthony Voci, and Movita Johnson-Harrell as they are highly prejudicial and not probative of any matter at issue in this case. (F.R.E. 403)

• Defendant objects to the introduction of evidence, by documents or third party testimony, regarding commendations for Plaintiffs' on-the-job performance.  (F.R.E. 403)

16

- Defendant objects to Plaintiffs' unrealistic witness list, which does not provide Defendant with sufficient notice as to the witnesses Plaintiffs genuinely intend to call to testify at trial. For any witness who has not testified at a deposition for this case, Defendants request that Plaintiff provide an offer of proof as to each witness's relevant and admissible testimony.

- Defendant objects to plaintiff's designation of the following witnesses to testify to liability: Carlos Vega (to the extent he is testifying to liability on Mr. Whitehead's claims), Joseph Whitehead (to the extent he is testifying to liability on Mr. Vega's claims), Mark Gilson, E. Marc Costanzo, Michelle Seidner (F.R.E. 403)

1. **Deposition testimony (including videotaped depositions) to be offered during a party's case-in-chief (with citations to the page and line number), including the opposing party's counter-designations.**

The parties are not presently aware of any witnesses who will be unavailable to testify at trial, necessitating the offering of deposition testimony. If a witness is unavailable to testify, or if the parties want to offer any deposition testimony into evidence, Defendants join in Plaintiffs proposal that the parties either take a trial deposition or work together to prepare the necessary deposition transcript designations.

## IX.   OTHER MATTERS

None at this time.

Respectfully submitted,

*/s/ Lisa Swiatek*
Lisa A. Swiatek, Esquire
City of Philadelphia Law Department
Labor and Employment Unit
1515 Arch Street, 16th Floor
Philadelphia, PA 19102

Counsel for City of Philadelphia

and

*/s/ David Smith*
David Smith, Esquire
Anne Kane, Esquire
Samantha Banks, Esquire
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 191013

Counsel for Lawrence Krasner

January 25, 2022

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CARLOS VEGA | : | |
| and | : | |
| JOSEPH WHITEHEAD, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No. 2:19-cv-04039 |
| | : | |
| CITY OF PHILADELPHIA AND | : | |
| LAWRENCE KRASNER, | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS, THE CITY OF PHILADEPHIA AND LAWRENCE KRASNER'S JOINT EXHIBIT LIST

Defendants, the City of Philadelphia and Lawrence Krasner, hereby exchange their joint exhibit list pursuant to the Court's October 13, 2021 Amended Scheduling Order.  The list below does not include exhibits or documents that Defendants may use for cross-examination, impeachment, rebuttal, or as demonstrative exhibits.  Defendants reserve the right to identify documents and exhibits for those purposes at a later time.  Defendants also reserve the right to use as an exhibit any document listed on Plaintiffs' exhibit list(s).  Additionally, for purposes of cross-examination and rebuttal, Defendants reserve the right to use any document submitted to plaintiffs' expert witnesses, and any document produced in this case.

| Trial Ex# | Bates Range | Ex. # | Description |
|---|---|---|---|
| D1 | | | Complaint |
| D2 | | | Answer |
| D3 | | | Plaintiff Vega's Response to Defendants' Interrogatories |
| D4 | | | Plaintiff Vega's Supplemental Response to Defendants' Interrogatories |

| Trial Ex# | Bates Range | Ex. # | Description |
|---|---|---|---|
| D5 | | | Plaintiff Vega's Second Supplemental Response to Defendants' Interrogatories |
| D6 | | | Plaintiff Vega's Production Pursuant to the Pilot Program |
| D7 | | | Plaintiff Vega's Response to Defendants' Request for Production of Documents |
| D8 | | | Plaintiff Whitehead's Response to Defendants' Interrogatories |
| D9 | | | Plaintiff Whitehead's Response to Defendants' Request for Production of Documents |
| D10 | | | Plaintiff Whitehead's Production Pursuant to the Pilot Program Initial Discovery Protocols for Employment Cases Alleging Adverse Action |
| D11 | | | Plaintiff Whitehead's Amended Responses to his Production Pursuant to the Pilot Program Initial Discovery Protocols for Employment Cases Alleging Adverse Action |
| D12 | | | Plaintiff's Supplemental Responses to Interrogatories and Supplemental Disclosure of Potential Lay Witness Opinion Testimony |
| D13 | | | Defendants Lawrence Krasner and City of Philadelphia's Response to Plaintiff Vega's Interrogatories |
| D14 | | | Defendants Lawrence Krasner and City of Philadelphia's Responses to Plaintiff Vega's Interrogatories |
| D15 | | | Defendants Lawrence Krasner and City of Philadelphia's Responses to Plaintiff Vega's Request for Production of Documents |
| D16 | | | Defendant Lawrence Krasner and City of Philadelphia's Response to Plaintiff Vega's Second Interrogatories |
| D17 | | | Defendants Lawrence Krasner and City of Philadelphia's Production and Amended Production Pursuant to the Pilot Program Initial Discovery Protocols for Employment Cases Alleging Adverse Action |

| Trial Ex# | Bates Range | Ex. # | Description |
|---|---|---|---|
| D18 | | | Defendants' First Production Pursuant to Court's Feb. 20, 2020 Order show Homicide Staff in 2018 |
| D19 | CITY0001-36 | | Whitehead personnel file |
| D20 | CITY0037-152 | | Vega personnel file |
| D21 | CITY0153-172 | | Vega: Respondents' Answer to PHRC Complaint, Position Statement, and Krasner Verified Statement |
| D22 | CITY0173-191 | | Whitehead: Respondents' Answer to PHRC Complaint, Position Statement, and Krasner Verified Statement |
| D23 | CITY0192-376 | | Policy Manual |
| D24 | CITY0378-398 | Whitehead- 5, 6, 9 | Whitehead: pension docs |
| D25 | CITY0399-412 | | Vega: pension docs |
| D26 | CITY0413-414 | Mitchell-3; Prabhakaran-2 | Jan. 5, 2018 Memo re separations |
| D27 | CITY0415-416 | | Chart of separated employees |
| D28 | CITY0417-419 | | Vega: employment and salary history |
| D29 | CITY0420-422 | | Whitehead: employment and salary history |
| D30 | CITY0423-447 | | Draft letter and spreadsheets identifying separated employees (redacted) |
| D31 | CITY0448-462 | | Spreadsheet summarizing attorney positions and salaries |
| D32 | CITY0463-521 | | Spreadsheet summarizing attorney positions and salaries |
| D33 | CITY0568-569 | | Email from A. Prabhakaran to J. Rush dated 12/14/17 |
| D34 | CITY0570-571 | | Email from A. Prabhakaran to J. Dodd and K. Rosenthal dated 12/14/17 |
| D35 | CITY0572-574 | | Email from J. Dodd to K. Rosenthal dated 12/15/17 |

| Trial Ex# | Bates Range | Ex. # | Description |
|---|---|---|---|
| D36 | CITY0575-577 | | Email from J. Dodd to K. Rosenthal dated 12/15/17 |
| D37 | CITY0578-700 | | Vega Internal Files |
| D38 | CITY0701 | | Whitehead Internal File |
| D39 | CITY_LK_0001-2 | | Emails between Krasner and A. Prabhakaran (Redacted) |
| D40 | City_LK_0006 | McMahon-1 | Text messages with Krasner |
| D41 | Whitehead001-10 | Mitchell-9; Vega-20 | Article "Meet Philadelphia's Progressive Candidate for DA:  An interview with Larry Krasner" |
| D42 | Whitehead011-20 | | Article "Philadelphia DA wants to Dismantle Mass Incarceration from the Inside Out" |
| D43 | Whitehead025-26 | | R. Mitchell letter dated 1/10/2018 |
| D44 | Whitehead027 | | Paycheck dated 2/2/2018 |
| D45 | Whitehead028-29 | | Pension and DROP docs |
| D46 | Whitehead030-31 | Whitehead-7 | Nov. 9, 2017 Krasner letter to DAO staff |
| D47 | Whitehead032-39 | | 2015 Payroll and pension records |
| D48 | Whitehead040-82 | | Whitehead PHRC Complaint, completed questionnaire and attorney's transmittal letters |
| D49 | Whitehead080-137 | Mitchell-11 (in part); Whitehead-4 (in part) | Whitehead's Rebuttal to Defendants' Answer to Whitehead's PHRC Complaint with exhibits dated 4/5/2019 |
| D50 | Whitehead138-154 | | Plan 87 pamphlet |
| D51 | Whitehead155-174 | | Pensions 101 presentation materials dated 12/14/2017 |
| D52 | Whitehead175-176 | Whitehead-3 | Joseph Whitehead, Jr. Resume |
| D53 | Whitehead177 | | Email from Whitehead to Tulante dated 1/18/2018 |
| D54 | Whitehead178 | | Email from Whitehead to Ross dated 1/8/2018 |

| Trial Ex# | Bates Range | Ex. # | Description |
|---|---|---|---|
| D55 | Whitehead181-195 | | Whitehead letter dated 12/18/2019 and 12/19/2019 |
| D56 | Whitehead196-200 | MSJ Ex. 10 (in part) | Performance Appraisals of Whitehead dated 5/14/2009 and 5/11/2017 |
| D57 | P-Whitehead 210-288 | | Records re. juvenile lifers records |
| D58 | P-Whitehead-000356-357 | Vega-19 | Article - DA announces shakeup |
| D59 | P-Whitehead-000369-371 | | Article - Krasner Unveils New DA's Office Leadership  Structure |
| D60 | PV000001 | | Emails between Vega and R. Mitchell dated 1/15/2016 |
| D61 | PV000002-5 | | Vega's DROP application and acceptance |
| D62 | PV000006-8 | | R. Mitchell email to Vega dated 1/9/2018 |
| D63 | PV000009-13 | | Pension materials and paystub |
| D64 | PV000014-33 | | Vega PHRC Complaint, completed questionnaire and attorney's transmittal letters |
| D65 | PV000034-86 | Vega-21 (in part) | Vega Rebuttal to Defendants' Answer to Whitehead's PHRC Complaint with exhibits dated 4/5/2019 |
| D66 | PV000089-90 | Vega-2 | Vega resumes |
| D67 | PV000091-107 | Vega-4, 5, 7, 8, 9, 10, 11, 13, 14, 15, 17 | Vega's letters and emails and responses |
| D68 | PV-000141-145 | Vega-6, 12, 16, 18 | Vega's letter dated 1/17/2020 |
| D69 | PV-000237-238 | | Announcement from A. Prabhakaran issued in January 2018 |
| D70 | | Whitehead-1 and -2 | Andrerson resentencing materials |
| D71 | | Vega – 1; McMahon -2 and 3 | Commonwealth v. Muhammed and Commonwealth v. Scott trial transcripts |
| D72 | | P Krasner-1 | Defendant Lawrence Krasner's Responses to Plaintiff's Interrogatories (Set One) |
| D73 | PM-00073-79 | Mitchell-4 | Chart prepared by R. Mitchell; discovery disclosures |

| Trial Ex# | Bates Range | Ex. # | Description |
|---|---|---|---|
| D74 | City0116-123 | Mitchell-7 | Philadelphia District Attorney's Office Anti-Harassment Policy 2018 |
| D75 | City0334-338 | Mitchell-8 | List of 2016 Holidays and Anti-Harassment Policy |
| D76 | | MSJ Ex. 4 | Michael Giampietro deposition transcript |
| D77 | | MSJ Ex. 2 and 3 | Lawrence Krasner deposition transcripts |
| D78 | | | Robert Listenbee deposition transcript |
| D79 | | MSJ Ex. 7 | Jack McMahon deposition transcript |
| D80 | | MSJ Ex. 6 | Rachel Mitchell deposition transcript |
| D81 | | MSJ Ex. 5 | Arun Prabhakaran deposition transcript |
| D82 | | | Carlos Vega deposition transcript |
| D83 | | | Anthony Voci deposition transcript |
| D84 | | | Joseph Whitehead deposition transcript |
| D85 | | | Jennifer Silber deposition transcript |
| D86 | | MSJ Ex. 9 | Brian Zarallo deposition transcript |
| D87 | | MSJ Ex. 1 | R. Mitchell declaration with exhibits |
| D88 | | MSJ Ex. 11 | C. Lightsey declaration with exhibits |
| D89 | | MSJ Ex. 8 | Jan. 13, 2018 Article, "*DA Krasner Promised Change. His First Full Week Showed He meant it.*" |
| D90 | | | Krasner Campaign Platform as of May 16, 2017, created using the Wayback Machine |
| D91 | | | Krasner Campaign Platform as of Oct. 13, 2017, created using the Wayback Machine |
| D92 | | | Krasner Campaign Platform as of Dec. 12, 2017, created using the Wayback Machine |
| D93 | | | Feb. 29, 2016 Inquirer Article: "*D.A. Takes Another Shot at Overturned Murder Conviction from 1993*" |
| D94 | | | March 2, 2015 Rolling Stone Article (with update): "*The Trials of Tony Wright: How DNA Exonerated Convicted Murerer*" |
| D95 | | | Aug. 12, 2016 Inquirer Article: "Witness Recants in Nicetown Retrial" |

| Trial Ex# | Bates Range | Ex. # | Description |
|---|---|---|---|
| D96 | | | August 23, 2016: Inquirer Article "*25 Years Later, Freed by DNA Evidence: it's the Greated Day of My Life*" |
| D97 | | | August 29, 2016 Rolling Stone Article: "*Finally Free: Inside Tony Wright's Murder Exoneration*" |
| D98 | | | Complaint, *Vega v. King,* Philadelphia Court of Common Pleas Case No. 210500305 |

# EXHIBIT B

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-1 | Article published in The Intercept: "Meet Philadelphia's Progressive Candidate for DA: An Interview with Larry Krasner" | 5/16/2017 | LEVIN 161-170 (Mitchell-9) | Authenticity<br><br>F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the article.<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time.<br><br>Hearsay |
| P-2 | Transcription of excerpts of interview given by Defendant Krasner to Jacobin Radio | 10/7/2017 | WHITEHEAD 110-111 (Mitchell-11) | Authenticity: Defendants objects to the introduction of transcripts or partial transcripts of interviews prepared by unknown individuals.<br><br>F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| P-3 | Link to audio recording of interview given by Defendant Krasner to Jacobin Radio | 10/7/2017 | | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview. Hearsay F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-4 | Transcription of excerpts of interview given by Defendant Krasner to WHYY radio | 10/24/2017 | WHITEHEAD 113-114 (Mitchell-11) | Authenticity: Defendants object to the introduction of transcripts or partial transcripts of interviews prepared by unknown individuals. F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview. Hearsay F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-5 | Link to audio recording of interview given by Defendant Krasner to WHYY radio | 10/24/2017 | | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | | |
|---|---|---|---|---|
| | | | | only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-6 | Link to audio recording of interview given by Defendant Krasner to WURD radio | 10/24/2017 | | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-7 | Article published by WBUR "Here & Now": "Philadelphia DA Wants to Dismantle Mass Incarceration from the Inside Out" | 4/18/2018 | WHITEHEAD<br><br>011-020 | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the article<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-8 | Link to audio recording of interview given by Defendant Krasner to WBUR radio | 4/18/2018 | | Authenticity and F.R.E 106, to the extent Plaintiffs |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | | |
|---|---|---|---|---|
| | | | | seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-9 | Link to recording of roundtable discussion in which Defendant Krasner participated | 5/4/2018 | | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-10 | Link to podcast interview given by Defendant Krasner to The Voice of San Diego | 5/25/2018 | | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| P-11 | Transcript of podcast interview of Defendant Krasner published by Center for Court Innovation: "Prosecutor Power No. 6: Larry Krasner, The Antagonist" | 12/2018 | PV-000146-000166 (Mitchell-10) | Authenticity: Defendants objects to the introduction of transcripts or partial transcripts of interviews prepared by unknown individuals.<br><br>F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-12 | Clips from audio recordings of interviews given by Defendant Krasner to Jacobin Radio, WHYY, WURD, WBUR and The Voice of San Diego | 10/7/2017<br>10/24/2017<br>10/24/2017<br>4/18/2018<br>5/25/2018 | PV-000131<br><br>(disk and e-mail with clips have been produced) | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-13 | Memorandum from Kelley Hodge to Members of the DAO, with attached letter from | 11/9/2017 | WHITEHEAD 030-031 | Authentication: the document includes handwritten |

Defendants' Objections to Plaintiffs' Exhibit List

|  |  |  |  |  |
|---|---|---|---|---|
|  | Defendant Krasner to Attorneys and Staff of the DAO |  |  | notations from an unknown source.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-14 | E-mail from Anna Adams to Arun Prabhakaran et al re: Personnel data | 12/7/2017 | CITY-LK-001-002 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time Hearsay |
| P-15 | Memo from Arun Prabhakaran to Rachel Mitchell re: Separations | 1/5/2018 | CITY 0413-414 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-16 | Memo from Arun Prabhakaran to Rachel Mitchell re: Separations with handwritten notes | 1/5/2018 | PV-00087- 00088 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-18 | List of employee separations | 1/12/2018 | CITY 621 | Defendants object because the description does not match the document identified as bates number City 621. |

Defendants' Objections to Plaintiffs' Exhibit List

|  |  |  |  | Defendants do not know what document is intended to be at P-18 |
|---|---|---|---|---|
| P-19 | List of retirees | 1/12/2018 | CITY 623 | Defendants object because the description does not match the document identified as bates number City 623. Defendants do not know what document is intended to be at P-18 |
| P-20 | Charts produced by Defendant City in response to Court Order dated 3/2/2020, verified by Rachel Mitchell | 3/11/2020 3/16/2020, with verification of Rachel Mitchell dated 3/17/2020 | PK-00073- 00079 | Defendants object because this bates number does not correspond with any production in this case and Plaintiff did not exchange this document with Defendants.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time, needlessly presenting cumulative evidence |
| P-22 | Declaration of John P. Delaney, Jr. | 10/21/2020 | PV-000227- 000233 | Hearsay |

Defendants' Objections to Plaintiffs' Exhibit List

| P-24a | Report of Appointment of Defendant Krasner | 1/8/2018 | CITY006 | Defendants object because the description does not match the document identified as bates number City 006.<br><br>Defendants will provide substantive objections if Plaintiffs identify the appropriate exhibit they intend to mark. |
|---|---|---|---|---|
| P-25 | Performance Appraisal of Vega | 7/8/1993 | CITY 0130 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-26 | Performance Appraisal of Vega | 6/24/1994 | CITY 0129 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-27 | Performance Appraisal of Vega | 7/31/1997 | CITY 0126-0127 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-28 | Performance Appraisal of Vega | 10/1/1998 | CITY 0119-0125 | Hearsay |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | | |
|---|---|---|---|---|
| | | | | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-29 | Performance Appraisal of Vega | 3/31/2000 | CITY 0113-0118 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-30 | Performance Appraisal of Vega | 6/17/2002 | CITY 0109-0112 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-31 | Performance Appraisal of Vega | 6/2/2003 | CITY 0107-0108 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-32 | Performance Appraisal of Vega | 6/28/2004 | CITY 0608-0610 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-33 | Performance Appraisal of Vega | 6/30/2005 | CITY 0606-0607 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | | issues, misleading the jury, wasting time |
|---|---|---|---|---|
| P-34 | Performance Appraisal of Vega | 6/1/2006 | CITY 0604-0605 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-35 | Performance Appraisal of Vega | 6/8/2007 | CITY 0602-0603 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-36 | Performance Appraisal of Vega | 6/16/2008 | CITY 0599-0601 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-37 | Performance Appraisal of Vega | 6/1/2009 | CITY 0596-0598 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-38 | Performance Appraisal of Vega | 5/24/2012 | CITY 0593-0595 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | | the jury, wasting time |
|---|---|---|---|---|
| P-39 | Performance Appraisal of Vega | 6/14/2013 | CITY 0103-0104 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-40 | Performance Appraisal of Vega | 6/5/2014 | CITY 0099-0102 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-41 | Performance Appraisal of Vega | 5/26/2015 | CITY 0096-0098 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-42 | Performance Appraisal of Vega | 5/26/2016 | CITY 0093-0095 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-43 | Performance Appraisal of Vega | 5/17/2017 | CITY 0090-0092 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| P-44 | Letter from District Attorney ("DA") Lynne Abraham to Vega re: merit raise | 12/19/1997 | CITY 0072 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
|---|---|---|---|---|
| P-45 | Letter from DA Lynne Abraham to Vega re: merit increase | 6/6/2000 | CITY 0070 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-46 | Memorandum from DA Lynne Abraham to Vega re: merit raise | 11/5/2007 | CITY 0068 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-47 | Memorandum from DA Lynne Abraham to Vega re: merit raise | 9/15/2008 | CITY 0066 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-50 | Letter from Rachel Mitchell to Vega re: Separation information | 1/9/2018 | PV-000007-<br><br>000008 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-64 | Resumés of Vega | undated | PV-000089- | Hearsay |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | 000090 | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
|---|---|---|---|---|
| P-65 | E-mail exchange between Vega, Melissa Piccoli and Brooke Lynn Johnson re: open opportunities, with resumé of Vega | 1/10/2018<br><br>1/11/2018 | PV-000091-<br><br>000094 | Hearsay |
| P-66 | Letter from Vega to Attorney General ("AG") Joseph Shapiro | 2/21/2018 | PV-000095 | Hearsay |
| P-67 | Letter from Vega to DA Kevin Steele | 7/1/2018 | PV-000096 | Hearsay |
| P-68 | Letter from Vega to DA Thomas Hogan | 7/1/2018 | PV-000097 | Hearsay |
| P-69 | Letter from Vega to DA Katayoun Copeland | 7/1/2018 | PV-000098 | Hearsay |
| P-70 | Letter from Vega to AG Josh Shapiro | 1/8/2019 | PV-000099 | Hearsay |
| P-71 | Letter from Vega to DA Kevin Steele | 1/10/2019 | PV-000100 | Hearsay |
| P-72 | Letter from Vega to DA Thomas Hogan | 1/10/2019 | PV-000101 | Hearsay |
| P-73 | Letter from Vega to DA Katayoun Copeland | 1/10/2019 | PV-000102 | Hearsay |
| P-74 | Letter from Vega to AG Josh Shapiro | 12/4/2019 | PV-000103 | Hearsay |
| P-75 | Letter from Vega to DA Kevin Steele | 12/4/2019 | PV-000104 | Hearsay |
| P-76 | Letter from Vega to DA Thomas Hogan | 12/4/2019 | PV-000105 | Hearsay |

Defendants' Objections to Plaintiffs' Exhibit List

| P-77 | Letter from Vega to DA Katayoun Copeland | 12/4/2019 | PV-000106 | Hearsay |
|---|---|---|---|---|
| P-78 | Letter from Vega to DA Matthew Weintraub | 12/4/2019 | PV-000107 | Hearsay |
| P-79 | Letter from Vega to AG Josh Shapiro | 7/17/2020 | PV-000142 | Hearsay |
| P-80 | Letter from Vega to DA Kevin Steele | 7/17/2020 | PV-000143 | Hearsay |
| P-81 | Letter from Vega to DA Deb Ryan | 7/17/2020 | PV-000144 | Hearsay |
| P-82 | Letter from Vega to DA Jack Stollsteimer | 7/17/2020 | PV-000145 | Hearsay |
| P-83 | Letter from Vega to DA Matthew Weintraub | 7/17/2020 | PV-000141 | Hearsay |
| P-84 | E-mail from John Delaney to Vega re: Thank you! | 1/29/2018 | PV-000132-000133 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-85 | Declaration of Ann Ponterio | 9/1/2020 | PV-000167-000171 | Hearsay |
| P-86 | Declaration of Victoria Power | 9/30/2020 | PV-000172-000173 | Hearsay |
| P-87 | Transcript of trial of Commonwealth v. Ibrahim Muhammed and Nalik Scott | 12/13/2016 | | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| P-88 | Transcript of trial of Commonwealth v. Muhammed and Scott | 12/22/2016 | | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
|---|---|---|---|---|
| P-89 | Transcript of trial of Commonwealth v. Muhammed and Scott | 12/23/2016 | | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-90 | Opinion of Superior Court of Pennsylvania in Commonwealth v. Scott, 212 A.3d 1094, 2019 PA Super 185 | 6/11/2019 | PV-000174-000192 | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-91 | Opinion of Superior Court of Pennsylvania in Commonwealth v. Muhammed, 2019 WL 2432100, with attached Opinion of Honorable Glenn Bronson | 6/11/2019 (Superior Court Opinion) 6/12/2017 (Opinion of Judge Bronson) | PV-000193-000221 | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-92 | Order of Supreme Court of Pennsylvania in Commonwealth v. Scott, 222 A.2d 383 | 12/24/2019 | PV-000222 | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-93 | PHRC Complaint of Vega | 6/26/2018 | PV-000014-000020 | Hearsay |
| P-101 | Expert report of Andrew C. Verzilli with Tables 1 and 2 | 9/17/2020 | | Hearsay |

Defendants' Objections to Plaintiffs' Exhibit List

| P-102 | Supplemental expert report of Andrew C. Verzilli with Table 1A | 12/16/2021 | | Hearsay |
|---|---|---|---|---|
| P-103 | Curriculum vitae of Andrew C. Verzilli | undated | | Hearsay |
| P-104 | Performance Appraisal of Whitehead | 5/14/2009 | WHITEHEAD 0196-0197 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-105 | Performance Appraisal of Whitehead | 5/26/2015 | WHITEHEAD 000334-000336 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-106 | Performance Appraisal of Whitehead | 5/26/2016 | WHITEHEAD 000331-000333 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-107 | Performance Appraisal of Whitehead | 5/11/2017 | WHITEHEAD 0198-0200 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-108 | Letter from DA Lynne Abraham to Whitehead re: merit promotion and salary increase | 8/8/1994 | WHITEHEAD 0209 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | | |
|---|---|---|---|---|
| | | | | issues, misleading the jury, wasting time |
| P-109 | Letter from DA Lynne Abraham to Whitehead re: perfect attendance | 3/29/1995 | CITY0021 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-110 | Letter from DA Lynne Abraham to Whitehead re: increase in salary | 6/9/1995 | WHITEHEAD 0208 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-111 | Letter from DA Lynne Abraham to Whitehead re: perfect attendance | 6/7/1996 | CITY0022 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-112 | Letter from DA Lynne Abraham to Whitehead re: merit promotion and salary increase | 10/8/1996 | WHITEHEAD 0207 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-113 | Letter from DA Lynne Abraham to Whitehead re: promotion and salary increase | 12/19/1997 | WHITEHEAD 0206 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | | the jury, wasting time |
|---|---|---|---|---|
| P-114 | Letter from DA Lynne Abraham to Whitehead re: merit promotion and salary increase | 3/31/1999 | WHITEHEAD 0205 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-115 | Letter from DA Lynne Abraham to Whitehead re: promotion and merit salary increase | 6/6/2000 | CITY0018 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-116 | Letter from DA Lynne Abraham to Whitehead re: merit increase | 8/8/2002 | WHITEHEAD 0204 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-117 | Memorandum from DA Lynne Abraham to Whitehead re: raise in salary | 9/6/2002 | WHITEHEAD 0203 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-118 | Memorandum from DA Lynne Abraham to Whitehead re: Perfect Attendance Commendation | 4/17/2003 | CITY 0023 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| P-119 | Memorandum from DA Lynne Abraham to Whitehead re: merit increase | 8/11/2003 | WHITEHEAD 0202 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
|---|---|---|---|---|
| P-120 | Memorandum from DA Lynne Abraham to Whitehead re: Perfect Attendance Commendation | 5/17/2004 | CITY 0024 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-121 | Memorandum from DA Lynne Abraham to Whitehead re: merit increase | 10/21/2005 | WHITEHEAD 0201 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-122 | Memorandum from DA Lynne Abraham to Whitehead re: Perfect Attendance Commendation | 1/10/2008 | CITY 0025 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-123 | Memorandum from DA Lynne Abraham to Whitehead re: Perfect Attendance Commendation | 6/6/2009 | CITY 0026 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-134 | Letter from Whitehead to Defendant Krasner | 1/2/2018 | WHITEHEAD 180 | Hearsay |

Defendants' Objections to Plaintiffs' Exhibit List

| P-135 | Payroll Master Record for Whitehead | 1/8/2018 | WHITEHEAD 0008 | |
|---|---|---|---|---|
| P-136 | Leave Balance for Whitehead | 1/8/2018 | CITY 0009 | |
| P-137 | Letter from Rachel Mitchell to Whitehead | 1/10/2018 | WHITEHEAD 025-026 | Hearsay |
| P-138 | E-mails from Deborah Hoffman to Whitehead and Whitehead to Rachel Mitchell | 1/10/2018 1/11/2018 | CITY 0010 | Hearsay |
| P-145 | Resumé of Whitehead | undated | WHITEHEAD 175-176 | Hearsay F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-146 | E-mail exchange between Whitehead and Sozi Tulante | 1/8/2018 and 1/18/2018 | WHITEHEAD 177 | Hearsay |
| P-147 | E-mail exchange between Whitehead and Richard Ross | 1/8/2018 | WHITEHEAD 178 | Hearsay |
| P-150 | Letter from Whitehead to Delaware County District Attorney's Office with attached resumé | 12/18/2019 | WHITEHEAD 181-183 | Hearsay |
| P-151 | Letter from Whitehead to Pennsylvania Office of Attorney General with attached resumé | 12/18/2019 | WHITEHEAD 184-186 | Hearsay |
| P-152 | Letter from Whitehead to Montgomery County District Attorney's Office with attached resumé | 12/18/2019 | WHITEHEAD 187-189 | Hearsay |
| P-153 | Letter from Whitehead to Bucks County District | 12/18/2019 | WHITEHEAD | Hearsay |

Defendants' Objections to Plaintiffs' Exhibit List

| | | | | |
|---|---|---|---|---|
| | Attorney's Office with attached resumé | | 0190-0192 | |
| P-154 | Letter from Whitehead to William McSwain, United States Attorney, with attached resumé | 12/19/2019 | WHITEHEAD<br><br>0193-0195 | Hearsay |
| P-155 | Graduation ceremony videos | Undated | | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-156 | PHRC Complaint of Whitehead | 6/26/2018 | WHITEHEAD<br><br>055-062 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-163 | Expert report of Andrew C. Verzilli with Table 1 | 9/17/2020 | | Hearsay |
| P-164 | Curriculum vitae of Andrew C. Verzilli | undated | | Hearsay |
| P-165 | Deposition transcript of Lawrence Krasner | 9/16/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32 |
| P-166 | Deposition transcript of Brian Zarallo | 6/25/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32 |
| P-167 | Deposition transcript of Jennifer Selber | 7/9/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32 |
| P-168 | Deposition transcript of Michael Giampietro | 9/8/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32. |

Defendants' Objections to Plaintiffs' Exhibit List

| P-169 | Deposition transcript of Rachel Mitchell | 8/28/2020 | | Hearsay Fed. R. Civ. P. 32 |
| P-170 | Deposition transcript of Arun Prabhakaran | 9/1/2020 | | Hearsay Fed. R. Civ. P. 32. |
| P-171 | Deposition transcript of Carlos Vega | 10/15/2020 | | Hearsay |
| P-172 | Deposition transcript of Joseph Whitehead, Jr. | 10/19/2020 | | Hearsay |