## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARLOS VEGA** <br> **and** <br> **JOSEPH WHITEHEAD, JR.** | : <br> : <br> : <br> : | **CIVIL ACTION** <br><br> **NO. 19-4039** |
| **Plaintiffs,** | : | **JURY TRIAL DEMANDED** |
| **v.** | : <br> : | |
| **CITY OF PHILADELPHIA** <br> **and** <br> **LAWRENCE S. KRASNER** | : <br> : <br> : | |
| **Defendants.** | : | |

### [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2022, upon

consideration of *Plaintiffs' Motion in Limine to Preclude Defendants From Presenting or*

*Eliciting Testimony or Evidence Pertaining to Plaintiff Vega's Participation, Involvement*

*or Conduct As a Prosecutor In Any Specific Case Other Than* <u>*Scott/Muhammed*</u> *as a*

*Reason for Plaintiff Vega's Termination*, and the responses and replies thereto, it is

hereby **ORDERED** that the Motion is **GRANTED**.  Defendants are precluded from

presenting or eliciting testimony or evidence pertaining to Plaintiff Vega's participation,

involvement or conduct as a prosecutor in any specific case other than the

<u>Scott/Muhammed</u> case, as a reason for terminating Plaintiff Vega's employment.

BY THE COURT:

_____
GENE E.K. PRATTER
United States District Judge

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS VEGA | : | CIVIL ACTION |
| and | : | |
| JOSEPH WHITEHEAD, JR. | : | NO. 19-4039 |
| | : | |
| Plaintiffs, | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| and | : | |
| LAWRENCE S. KRASNER | : | |
| Defendants. | : | |

### PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM PRESENTING OR ELICITING TESTIMONY OR EVIDENCE PERTAINING TO PLAINTIFF VEGA'S PARTICIPATION, INVOLVEMENT, OR CONDUCT AS A PROSECUTOR IN ANY SPECIFIC CASE OTHER THAN *SCOTT/MUHAMMED* AS A REASON FOR PLAINTIFF VEGA'S TERMINATION

For the reasons set forth in the accompanying Memorandum of Law, Plaintiffs respectfully request that this Court enter the proposed form of Order submitted herewith, precluding the Defendants from presenting or eliciting testimony or evidence pertaining to Plaintiff Vega's participation, involvement or conduct as a prosecutor in any specific case other than the Scott/Muhammed case, as a reason for terminating Plaintiff Vega's employment.


/s/ Robert A. Davitch
Samantha F. Green, Esq.
**Sidkoff, Pincus & Green, P.C.**
1101 Market Street, Suite 2700
Philadelphia, PA 19107
(215) 574-0600 – Office
(215) 574-0310 – Fax
rad@sidkoffpincusgreen.com

Attorneys for Plaintiffs

Date: July 1, 2022


/s/ Sidney L. Gold
Sidney L. Gold, Esq.
Traci M. Greenberg, Esq.
**Sidney L. Gold & Associates, P.C.**
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999 – Office
SGold@DiscrimLaw.net

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS VEGA | : | CIVIL ACTION |
| and | : | |
| JOSEPH WHITEHEAD, JR. | : | NO. 19-4039 |
| | : | |
| Plaintiffs, | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| and | : | |
| LAWRENCE S. KRASNER | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM PRESENTING OR ELICITING TESTIMONY OR EVIDENCE PERTAINING TO PLAINTIFF VEGA'S PARTICIPATION, INVOLVEMENT, OR CONDUCT AS A PROSECUTOR IN ANY SPECIFIC CASE OTHER THAN *SCOTT/MUHAMMED* AS A REASON FOR PLAINTIFF VEGA'S TERMINATION**

I.   **INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiffs, Carlos Vega and Joseph Whitehead, Jr., join in bringing this age discrimination in employment action against their former employer, the City of Philadelphia ("City"), and the City's District Attorney ("DA"), Lawrence Krasner. Plaintiffs were career prosecutors who were hired by the City in the 1980s to work in the District Attorney's Office ("DAO").  Doc. Nos. 56-58: Memorandum and Order of Judge Pratter re: Def. Motion for Summary Judgment, 9/17/2021 ("SJ Mem.") at p. 1, Ex. A attached hereto.[1]

In 2017, when Mr. Krasner announced his candidacy for DA, Mr. Vega and Mr. Whitehead were 61 and 64 years old, respectively, and were still employed at the DAO,

---

[1]  Mr. Vega began his career at the DAO in 1982, and was promoted to the Homicide Unit in 1987.  SJ Mem. at 1.  Mr. Whitehead was hired by the DAO as a prosecutor in 1989, and was assigned to the Homicide Unit in 2014. Id.

as homicide prosecutors.  SJ Mem. at 1, 3.  When he was running for DA, Mr. Krasner made a series of public comments in media interviews which Plaintiffs contend reflected his bias against and stereotypical views of older career prosecutors.  By way of example, Mr. Krasner proclaimed in a May 2017 interview that "people who are going to made to leave [the DAO] . . . will tend to be my generation, people who started in this business 30 years ago[.]" SJ Mem. at 3; Doc. No. 34-5 at 121.  In another pre-election interview, Mr. Krasner declared that "the old guard [in the DAO] . . . needs to go."  SJ Mem. at 3; Doc. No. 34-5 at 128.

In November 2017, Mr. Krasner won the election for DA, and he was sworn into office on January 2, 2018.  SJ Mem. at p. 1.  Three days later, on January 5, 2018, he terminated the employment of 30 attorneys at the DAO, including Plaintiffs, 20 of whom were over the age of 40.  Id. at 1 and 12 n.5.  It is undisputed that Mr. Krasner was the sole decisionmaker.

After being forced out of their jobs with the City, Plaintiffs filed separate complaints of age discrimination with the Pennsylvania Human Relations Commission ("PHRC").  In response to each complaint, Mr. Krasner submitted a verified statement to the PHRC explaining the basis for his decisions, in which he asserted that he "had been able to conduct what essentially amounted to a thirty-year job interview" of each Plaintiff, which included "extensive opportunities to observe and assess their professional competence, demeanor, and ethics."  SJ Mem. at 2; Doc. No. 40-13 Ex. 22 ¶2.  These verified statements did not identify any particular assignment or case handled by either Plaintiff that caused Mr. Krasner to terminate their employment.  SJ Mem. at 2.

In his deposition taken on September 16, 2020, Mr. Krasner provided more specific information regarding the reasons for his decision to terminate Mr. Vega's employment.  Mr. Krasner testified that his decision was motivated by Mr. Vega's alleged misconduct in a triple capital homicide case captioned <u>Commonwealth v. Scott and Muhammed</u>, which was tried to verdict in 2016, and was the only case that Mr. Krasner, as a defense attorney, ever tried against Mr. Vega where Mr. Vega was a prosecutor.  SJ Mem. at 2.  As Mr. Krasner testified:

> [T]here was just a huge critical mass of things that Mr. Vega did and things that he supervised during that [Scott/Muhammed] trial that I just couldn't get over honestly. There was just no way I was [going to] have someone who would do those things in my office.

Krasner Tr. 9/16/2020 NT 302:24-303:4, Ex. B attached hereto.

Pretrial discovery concluded without Mr. Krasner articulating any new or additional reason for discharging Mr. Vega.  On November 2, 2020, after the close of discovery, Defendants moved for summary judgment.  In their statement of material facts submitted in support of the summary judgment motion ("SOMF"), Defendants adopted Mr. Krasner's deposition testimony that Mr. Vega's actions during the <u>Scott/Muhammed</u> case provided the sole basis for Mr. Krasner's decision.  As Defendants asserted in that filing:

> 19. Mr. Krasner has known Mr. Vega for over thirty years but has tried only one case to verdict against him: the <u>Scott/Muhammed</u> case.  Krasner Tr. at 362:23-363:9.
>
> \*\*\*\*\*
>
> 22. Mr. Krasner's negative opinions regarding Mr. Vega's ethics and trustworthiness were established during the <u>Scott/Muhammed</u> case, and formed the basis for his decision to terminate Mr. Vega . . . Krasner Tr. at 302:24-303:4.

3

See Def. SOMF re: Mot. Sum. Judg. 11/2/2020 at ¶¶19, 22.  In their memorandum of

law filed in support of their summary judgment motion, Defendants reiterated that it was

Mr. Vega's purported wrongdoing in the Scott/Muhammed case, and nothing else, that

prompted Mr. Krasner to terminate Mr. Vega's employment.  As Defendants stated in

that memorandum:

> The record on summary judgment establishes that Mr.
> Krasner terminated Mr. Vega's employment because he
> considered Mr. Vega's conduct as a prosecutor in the
> Scott/Muhammed trial to be unacceptable.

See Def. Mem. of Law re: Mot. Sum. Judg., 11/2/2020 at 8.

Defendants then articulated this same defense in their Pretrial Memorandum filed

on November 23, 2020, wherein they asserted:

> Mr. Krasner's negative opinions regarding Mr. Vega's
> ethics and trustworthiness were established during the
> Scott/Muhammed case, and formed the basis for his
> decision to terminate Mr. Vega.

See Doc. No. 41, Def. Pretrial Mem. at 4.[2]

When it ruled on Defendants' motion for summary judgment, the Court

summarized and quoted from Mr. Krasner's deposition testimony, noting that Mr.

Krasner's defense to Mr. Vega's age discrimination claims was based entirely on his

assessment of Mr. Vega's conduct in the Scott/Muhammed case.  SJ Mem. at 2, 8.  As

the Court stated in its summary judgment opinion:

> Mr. Krasner testified that he terminated Mr. Vega's
> employment based on Mr. Vega's conduct in a 2016 capital
> homicide trial.  Doc. No. 40-1 ¶22.  This was the only case
> that Mr. Krasner, as a defense attorney, tried opposite Mr.

---

[2] This statement was repeated again in Defendants' second pretrial memorandum, filed
on January 25, 2022.  Doc. No. 61 at p. 4.

4

> Vega, but it was a "gut-wrenching" case in which Mr. Krasner
> alleges that Mr. Vega engaged in several forms of unethical
> behavior. Id. ¶¶19, 20, 22-23.

SJ Mem. at 2; see also id. at 8 ( "Mr. Krasner stated that he based his decision on Mr.
Vega's allegedly unethical and abusive behavior as opposition counsel and sexual
harassment of a paralegal during the 2016 [Scott/Muhammed] trial.").

    With the basis of Mr. Krasner's defense to Mr. Vega's claims of age
discrimination firmly established, Mr. Vega's response to Defendants' summary
judgment motion included a factual defense of his behavior in the Scott/Muhammed
case. SJ Mem. at 8, 11-12. Mr. Vega's opposition proof included a declaration from the
paralegal, who denied she was sexually harassed by Mr. Vega; testimony from Mr.
Krasner's senior advisor, Michael Giampietro, who recommended to Mr. Krasner that
Mr. Vega be retained; the fact that the trial court in Scott/Muhammed did not sanction
Mr. Vega; the fact that the convictions were affirmed on appeal; and the public age-
related statements made by Mr. Krasner from which a discriminatory motive can be
inferred. Id. at 8, 11-12. Mr. Vega also provided evidence from his supervisors at the
DAO, who testified that his performance, skills, ethics, and integrity were exemplary,
thus creating a strong inference that Mr. Krasner's articulated reasons are a pretext.
Wright v. Northampton Cmty. Coll., No. 18-2976, 2020 U.S. Dist. LEXIS 99726, at *26
(E.D.Pa. June 8, 2020); Kelly v. United States Steel Corp., No. 2:11-cv-00193, 2012
U.S. Dist. LEXIS 16797, at *5-6 (W.D. Pa. Nov. 9, 2012). The Court found that Mr.
Vega's factual presentation was adequate to create genuine issues of material fact on
the question of pretext. SJ Mem. at 8-9, 11-12.

    Against this background, Defendants, in their second pretrial memorandum,

identified as trial exhibits a series of articles from the <u>Philadelphia Inquirer</u> and <u>Rolling Stone</u>, published in 2015 and 2016, which focused on the case of <u>Commonwealth v. Anthony Wright</u> ("<u>Wright</u>"), in which Mr. Vega participated in the 2016 retrial as a co-prosecutor. Doc. No. 61: Def. Exhibit List at pp. 6-7 at D93-D97.  Defendants' identification of these exhibits leads Plaintiffs to believe that Defendants will seek to amplify their defense at trial by presenting or eliciting evidence regarding Mr. Vega's role or conduct in the <u>Wright</u> case, and perhaps, in other particular cases.  Plaintiffs anticipate that such evidence will be offered in an effort to cast aspersions on Mr. Vega's performance and conduct as a prosecutor that extends beyond the <u>Scott/Muhammed</u> case.  However, because Mr. Krasner testified and Defendants have repeatedly asserted that Mr. Vega's behavior in <u>Scott/Muhammed</u> was the <u>sole</u> reason that motivated Mr. Krasner to discharge Mr. Vega, the presentation or elicitation by Defendants of evidence of Mr. Vega's conduct in other specific cases as a basis for the termination would be irrelevant, not to mention prejudicial.[3]

## II.    ARGUMENT

### A.    Standards Governing *In Limine* Motions

Courts have the inherent power to exclude evidence in order to "manage the course of trials." <u>Luce v. United States</u>, 469 U.S. 38, 41 n.4 (1994); <u>see also id.</u> at 40 n.2 (noting that purpose of a motion *in limine* is "to exclude anticipated prejudicial

---

[3]  Plaintiffs cannot predict if Defendants plan to offer or elicit evidence regarding Mr. Vega's conduct in any specific cases other than <u>Scott/Muhammed</u> and <u>Wright</u> to further support Mr. Krasner's termination decision, but if evidence regarding the <u>Wright</u> case is allowed, it would open the door for Defendants to expand their defense even further by presenting evidence related to other matters which are beyond the scope of Mr. Krasner's articulated reasons.

evidence before the evidence is actually offered"); Bradley v. Pittsburgh Bd. of Educ.,

913 F.2d 1064, 1068 (3d Cir. 1990) ("[A] motion *in limine* is designed to narrow the

evidentiary issues for trial and to eliminate unnecessary trial interruptions.").  It is well-

settled that the admission or exclusion of evidence at a trial falls within the sound

discretion of the district court.  Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.,

2010 U.S. App. LEXIS 13827, at *8 (3d Cir. 2010) (quoting United States v. Abel, 469

U.S. 45, 54 (1984)).

    **B.**    **Any Testimony or Evidence Offered or Elicited by Defendants Pertaining to Mr. Vega's Participation, Involvement or Conduct as a Prosecutor In Any Specific Case Other Than *Scott/Muhammed* as a Reason for Mr. Vega's Termination Should be Excluded as Irrelevant**

"In determining whether to admit evidence, a court must make the threshold

determination that the proffered evidence is relevant."  N. Am. Roofing & Sheet Metal

Co., Inc. v. Bldg. Constr. Trades Council of Phila. and Vicinity, 2005 U.S. Dist. LEXIS

241, at *6 (E.D.Pa. Jan. 10, 2005).  Fed.R.Evid. 401 provides that "[e]vidence is

relevant if: it has any tendency to make a fact more or less probable than it would be

without the evidence; and the fact is of consequence in determining the action"

(emphasis added).  Fed.R.Evid. 402 states that "[i]rrelevant evidence is not admissible."

Thus, if evidence offered by a party has no bearing on a material element of the case, it

should be excluded.  Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187-189 (3d

Cir. 1990); see also Inline Connection Corp. v. AOL Time Warner Inc., 470 F.Supp 2d

424, 433 (D. Del. 2007) ("[F]or a fact to be relevant it must be of consequence to the

issue under determination"); Forrest v. Beloit Corp., 424 F.3d 344, 355 (3d Cir. 2005).

Mr. Krasner testified in his deposition that his assessment and observations of

Mr. Vega's performance, ethics and trustworthiness, as exhibited in the

7

Scott/Muhammed case, caused him to terminate Mr. Vega's employment.[4]  Defendants

adopted and relied on Mr. Krasner's testimony in their summary judgment motion and in

their pretrial memoranda.  When the Court denied summary judgment, it discussed Mr.

Krasner's defense, noting that "Mr. Krasner testified that he terminated Mr. Vega's

employment in light of Mr. Vega's conduct in [Scott/Muhammed]" and that "Mr. Krasner

stated [in his deposition] that he based his decision on Mr. Vega's allegedly unethical

and abusive behavior as opposing counsel and sexual harassment of a paralegal during

the 2016 [Scott/Muhammed] trial."  SJ Mem. at 2, 8.

Based on Mr. Krasner's testimony and Defendants' court filings, the Court should

exclude, on relevancy grounds, any evidence that Defendants may attempt to offer or

elicit at trial regarding Mr. Vega's participation, role, or conduct in any specific case

other than Scott/Muhammed, as a reason for Mr. Vega's termination.  Mr. Krasner's

own testimony establishes the lack of relevancy of such evidence to Defendants'

articulated nondiscriminatory reason.

---

[4] Mr. Krasner has asserted that Mr. Vega's conduct in the Scott/Muhammed case was
consistent with his reputation.  For that reason, Mr. Vega's opposition to Defendants'
summary judgment motion included evidence that his actions in Scott/Muhammed were
not inappropriate as well as testimony from his supervisors that his performance, ethics
and integrity were always of high caliber.  Furthermore, courts have found that
disciplinary action that follows a good overall performance record can give rise to an
inference of a discriminatory motive.  Wright v. Northampton Cmty. Coll., No. 18-2976,
2020 U.S. Dist. LEXIS 99726, at * 26 (E.D.Pa. June 20, 2022); Kelly v. United States
Steel Corp., No. 2:11-cv-00193, 16797, at *5-6 (W.D. Pa. Nov. 9, 2012).

**C.** **Alternatively, Any Testimony or Evidence Pertaining to Mr. Vega's Participation, Involvement or Conduct as a Prosecutor in Any Specific Case Other Than *Scott/Muhammed* as a Reason for Mr. Vega's Termination Should Be Excluded Because Its Probative Value, If Any, Is Substantially Outweighed by Dangers of Unfair Prejudice, Confusion, Waste of Time, and Undue Delay**

Fed.R.Evid. 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit the evidence." Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343 (3d Cir. 2002). In determining whether to admit or exclude evidence under Rule 403, "the proper equation places on one side the maximum reasonable probative force for the offered evidence, while the other side of the equation should include the likely prejudicial impact of the evidence." Id. at 1344 (quotation omitted). Furthermore, "evidence may be excluded [under Rule 403] if its probative value is not worth the problems that its admission may cause." Id. at 1343.

Even if the evidence sought to be excluded had minimal relevance, the jury should not be allowed to hear it based on the provisions of Rule 403. Mr. Krasner's deposition testimony and Defendants' court filings establish that Mr. Krasner's decision to terminate Mr. Vega's employment was made solely as a result of Mr. Vega's allegedly improper conduct in the Scott/Muhammed case. There is a clear danger that Mr. Vega would suffer prejudice if Defendants were allowed to present or elicit evidence at trial relating to Mr. Vega's actions in other specific cases as additional reasons for Mr. Vega's discharge. This risk would be heightened by the fact that Defendants' previously

9

articulated reason caused Mr. Vega to refrain from requesting or obtaining discovery regarding any case other than Scott/Muhammed in which Defendants may now claim Mr. Vega acted inappropriately, as an additional reason for the termination.  The danger of unfair prejudice is reason enough to exclude the evidence.  Ansell v. Green Acres Constr. Co., 347 F.3d 515, 525 (3d Cir. 2003) (quoting Wagenmann v. Adams, 829 F.3d 196, 217 (1st Cir. 1987)).

In addition, allowing Defendants to present evidence relating to Mr. Vega's conduct in other specific cases as added reasons for the termination, even if marginally relevant, would unnecessarily delay the proceedings, waste time, and inevitably lead to a collateral mini-trial on each other case about which Defendants may try to criticize Mr. Vega's behavior at trial to bolster the termination decision.  Blancha v. Raymark Indus., 972 F.2d 507, 516 (3d Cir. 1992) (evidence can be excluded when its admission would lead to litigation of collateral issues which might distract the jury from the main issues); Snodgrass v. Ford Motor Co., Civ. A. No. 96-1814 (JBS), 2002 WL 485688, at *12 (D.N.J. Mar. 28, 2002) (citing Blancha); Martinelli v. Penn Millers Ins. Co., No. 3:CV-02-2292, 2007 U.S. Dist. LEXIS 118159, at *20-21 (M.D. Pa. Mar. 19, 2007).  Furthermore, allowing the Defendants to offer proof of Mr. Vega's conduct in other specific cases might appear to the jury to legitimize Mr. Krasner's termination decision, even if Mr. Vega is able to convince the jury that his performance in the Scott/Muhammed case did not warrant his termination.  Accordingly, assuming there is any probative value to the evidence sought to be excluded, it should be barred by Rule 403.

III.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the

proposed form of Order submitted herewith, precluding the Defendants from presenting

or eliciting testimony or evidence pertaining to Mr. Vega's participation, involvement

or conduct as a prosecutor in any specific case other than the Scott/Muhammed case,

as a reason for the termination of Mr. Vega's employment.


/s/ Robert A. Davitch
Samantha F. Green, Esq.
**Sidkoff, Pincus & Green, P.C.**
1101 Market Street, Suite 2700
Philadelphia, PA 19107
(215) 574-0600 – Office
(215) 574-0310 – Fax
rad@sidkoffpincusgreen.com

Attorneys for Plaintiffs


/s/ Sidney L. Gold
Sidney L. Gold, Esq.
Traci M. Greenberg, Esq.
**Sidney L. Gold & Associates, P.C.**
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999 – Office
SGold@DiscrimLaw.net

Attorneys for Plaintiffs


Date: July 1, 2022

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **CARLOS VEGA and** | : | |
| **JOSEPH WHITEHEAD,** | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| v. | : | |
|  | : | **No. 19-4039** |
| **CITY OF PHILADELPHIA and** | : | |
| **LAWRENCE KRASNER,** | : | **FILED UNDER SEAL** |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                          SEPTEMBER /7, 2021

Carlos Vega and Joseph Whitehead contend that their employer, the City of Philadelphia's

District Attorney's Office, led by District Attorney Lawrence Krasner, unlawfully terminated their

employment based on their age. The City and Mr. Krasner filed a motion for summary judgment,

claiming that Mr. Vega and Mr. Whitehead cannot show that Mr. Krasner's reasons for terminating

their employment were a pretext for discrimination. Because both Mr. Vega and Mr. Whitehead

have presented evidence to establish a genuine dispute on this point, summary judgment must be

denied.

### Background

Mr. Vega and Mr. Whitehead worked as prosecutors in the City of Philadelphia's District

Attorney's Office for several decades. Mr. Vega began working as a prosecutor in 1982 and was

promoted to the Homicide Unit in 1987. Compl. ¶¶ 22, 25. Mr. Whitehead was hired as an

Assistant District Attorney in 1989 and assigned to the Homicide Unit in 2014. Compl. ¶¶ 31, 33.

Mr. Krasner was elected as the Philadelphia County District Attorney and took office on January

2, 2018. Three days after taking office, Mr. Krasner terminated the employment of 30 attorneys,

including Mr. Vega and Mr. Whitehead.

1

The letter informing Mr. Vega and Mr. Whitehead of this decision did not provide a reason for the terminations. Compl. at 2. Mr. Krasner has since endeavored to provide several reasons for each termination. In his response to a complaint filed by Mr. Vega with the Pennsylvania Human Relations Commission, Mr. Krasner stated that he "had been able to conduct what essentially amounted to a thirty-year job interview" of those whose employment was terminated including "extensive opportunities to observe and assess their professional competence, demeanor, and ethics." Doc. No. 40-13 Ex. 22 ¶ 2. Mr. Krasner did not review either Mr. Vega's or Mr. Whitehead's personnel file "because he did not have confidence that the files contained complete, reliable, or helpful information." Doc. No. 34-3 ¶ 7.

In his deposition for this case, two and a half years after the terminations, Mr. Krasner testified that he terminated Mr. Vega's employment based on Mr. Vega's conduct in a 2016 capital homicide trial. Doc. No. 40-1 ¶ 22. This was the only case that Mr. Krasner, as a defense attorney, tried to a verdict opposite Mr. Vega, but it was a "gut-wrenching" case in which Mr. Krasner alleges that Mr. Vega engaged in several forms of unethical behavior. *Id.* ¶¶ 19–20, 22–23. Specifically, Mr. Krasner alleges that Mr. Vega abused pretrial discovery procedures, improperly contacted two witnesses and misrepresented these contacts to the Court, reneged on a prior agreement on witness identification testimony, and provided late disclosure of mitigation evidence in the death penalty phase. *Id.* ¶ 23. In his deposition testimony, Mr. Krasner also stated that he based his decision to terminate Mr. Vega on the fact that he witnessed Mr. Vega sexually harass his colleague's paralegal during the trial. Doc. No. 34-4 Ex. 3, at 303:5–304:16.

In discussing his decision to terminate Mr. Whitehead's employment, Mr. Krasner said that he based his decision on Mr. Whitehead's "extreme" prosecutorial approach, "very cold" demeanor, and "profoundly different philosophy." Doc. No. 34-4 Ex. 3, at 385:23–24, 386:17–

2

20. Mr. Krasner stated that he also relied on the opinion of an advisor, Michael Giampietro, in assessing Mr. Whitehead's reputation and could not recall speaking with anyone else about Mr. Whitehead. Doc. No. 34-4 Ex. 3, at 384:24–385:12.

During Mr. Krasner's political campaign for District Attorney, he reportedly made several comments in media interviews about his approach to personnel decisions if elected District Attorney. Mr. Krasner stated that "people who are going to be made to leave . . . will tend to be my generation, people who started in this business 30 years ago." Doc. No. 34-5, at 121. Mr. Krasner also stated that the "old guard . . . needs to go", Doc. No. 34-5, at 128, and that "what we are going to see is broad support among a lot of younger ADA's, but we are going to see that there are some people in there whose vision for a DA's Office is so entrenched that they are unwilling to embrace a new one" who "will be better served working somewhere else", Doc. No. 34-5, at 130–31.

When Mr. Krasner requested their resignations on January 5, 2018, Mr. Vega and Mr. Whitehead were 61 and 64 years old, respectively. Compl. ¶¶ 25, 31. Mr. Vega and Mr. Whitehead brought age discrimination claims against the City of Philadelphia under the Age Discrimination in Employment Act ("ADEA") and the Philadelphia Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA").[1]  The City of Philadelphia and Mr. Krasner then moved for summary judgment on all claims.

---

[1]  The City of Philadelphia and Mr. Krasner moved to consolidate this case with other cases involving age discrimination claims based on terminations shortly after Mr. Krasner took office as District Attorney. The Court denied the motion to consolidate.

## LEGAL STANDARDS

### I.      Summary Judgment

A court can grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* "Under Rule 56, the Court must view the facts and all reasonable inferences in the light most favorable to the non-moving party." *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 384 (E.D. Pa. 2013). But "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Power v. Lockheed Martin Corp.*, 419 F. Supp. 3d 878, 888–889 (E.D. Pa. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### II.     Age Discrimination

The ADEA prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA also prohibits an employer from discriminating on the basis of age. 43 Pa. Stat. § 955(a). A plaintiff bringing an age discrimination claim "must prove

4

by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

Courts in the Third Circuit analyze claims brought under the ADEA and PHRA using the same burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (stating that "the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA"); *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (approving "continued application of the *McDonnell Douglas* paradigm in age discrimination cases"). The *McDonnell Douglas* framework proceeds in three steps. The plaintiff faces the initial burden to establish a prima facie case of discrimination. Then, if a prima facie case is established, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If such a reason is offered, the plaintiff must then prove by a preponderance of the evidence that the proffered reasons were "not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

At the summary judgment stage, the Court must draw factual inferences in the non-moving parties' favor. *See Doe v. CARS Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). Summary judgment should "be used sparingly in employment discrimination cases," particularly "when . . . intent is at issue." *Id.* at 369; *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). To survive at the summary judgment stage, a non-movant need only show that "sufficient evidence support[s] the claimed factual dispute" and a judge or jury must resolve "the parties'

differing versions of the truth" at trial. *Oakley v. Orthopaedic Assocs. of Allentown, Ltd.*, 742 F.

Supp. 2d 601, 604 (E.D. Pa. 2010) (quoting *Jackson v. Univ. of Pittsburgh*, 826 F.2d 230, 233 (3d

Cir. 1987)).

DISCUSSION

The City and Mr. Krasner do not dispute, for the purposes of summary judgment, that both

Mr. Vega and Mr. Whitehead have established a prima facie case of age discrimination. However,

the City and Mr. Krasner assert purportedly non-discriminatory motives for Mr. Krasner's

termination of each attorney. Mr. Vega and Mr. Whitehead, responding to different alleged

motives, each contend that Mr. Krasner's proffered justifications are mere pretext and raise

disputed issues of fact. In order to defeat summary judgment when an employer asserts a non-

discriminatory reason for its action, the burden shifts back to the plaintiff to identify "some

evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve

the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason

was more likely than not a motivating or determinative cause of the employer's action." *Fuentes

v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The Court finds that material factual disputes at issue

do preclude the Court from granting summary judgment on both sets of claims.

A plaintiff can defeat a summary judgment motion by introducing sufficient evidence to

establish a genuine dispute of material fact as to whether "the employer unlawfully discriminated

against the plaintiff and was merely trying to conceal its illegal act with the articulated reasons."

*Id*. at 764. A plaintiff can demonstrate pretext by introducing evidence showing that the proffered

reason "was either a *post hoc* fabrication or otherwise did not actually motivate the employment

action." *Id*. However, "the plaintiff cannot simply show that the employer's decision was wrong

6

or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765.

Evidence of pretext can include "inconsistencies and implausibilities in the employer's proffered reasons for [the termination] which *could* support an inference that the employer did not act for nondiscriminatory reasons." *Sorba v. Pa. Drilling Co.*, 821 F.2d 200, 205 (3d Cir. 1987). When a plaintiff shows that the reasons given for termination were not consistent throughout the proceedings, "this may be viewed as evidence tending to show pretext, though of course it should be considered in light of the entire record." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 284 (3d Cir. 2001). In considering the broader context, the Court must determine whether such "evidence contradict[s] the *core facts* put forward by the employer as the legitimate reason for its decision" such that a reasonable jury could infer that the employer did not act for the non-discriminatory reason provided. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006).

## I.     Mr. Vega's Claims

Mr. Vega argues that inconsistencies in explanations proffered by Mr. Krasner support an inference that the purported non-discriminatory reasons are pretext. Mr. Krasner and the City argue that Mr. Krasner's reasons have been consistent and simply provide additional detail to support the same rationale as required by subsequent proceedings. *See* Doc. No. 43, at 8. To the extent that there are any inconsistencies, Mr. Krasner and the City argue that these inconsistencies would relate to tangential points rather than "core facts." Doc. No. 43, at 3 n.2.

At the time he received Mr. Krasner's resignation request, Mr. Vega was not given any reason for his termination. Then, in Mr. Krasner's response to Mr. Vega's Pennsylvania Human Relations Commission complaint, Mr. Krasner stated that he fired Mr. Vega after he was able to observe and assess his behavior during a "thirty-year job interview." Doc. No. 40-13 Ex. 22 ¶ 2.

In his deposition over two years later, Mr. Krasner testified that he litigated only one case that went to trial involving Mr. Vega, in 2016. Doc. No. 34-4 Ex. 3, at 362:23-363:9. Mr. Krasner stated that he based his decision on Mr. Vega's allegedly unethical and abusive behavior as opposing counsel and sexual harassment of a paralegal during the 2016 trial. Doc. No. 40-1 ¶ 23; Doc. No. 34-4 Ex. 3, at 303:5–304:16.

However, Mr. Vega emphasizes that after the paralegal in question submitted a declaration refuting Mr. Krasner's allegations of Mr. Vega's harassment, *see* Doc. No. 40-15 Ex. 24, the City and Mr. Krasner did not raise the sexual harassment allegation as a basis for Mr. Krasner's decision in their summary judgment briefing, Doc. No. 40-1 Resp. ¶ 23(b)(2). Instead, the City and Mr. Krasner argue that whether Mr. Krasner in fact witnessed Mr. Vega sexually harass a paralegal is not a material fact for summary judgment. Doc. No. 43, at 3 n.2. They also argue that testimony by colleagues including Mr. Giampietro supports Mr. Krasner's genuinely held opinion of Mr. Vega following the 2016 trial. *Id.* at 2. Mr. Vega challenges this evidence by noting that Mr. Giampietro recommended that Mr. Krasner retain Mr. Vega. Doc. No. 40, at 12. Mr. Vega also argues that the court did not sanction him in the 2016 trial for any misconduct and that the subsequent convictions were affirmed on appeal. *Id.* at 11–12.

"When the defendant's intent has been called into question, the matter is within the sole province of the factfinder." *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989). In such an instance, the jury must "assess the employer's credibility with respect to its proffered reason[s]." *Sorba*, 821 F.2d at 205. The "honesty or legitimacy" of the employer's narrative is a "core fact[]" in determining whether a plaintiff has asserted sufficient evidence of pretext to survive summary judgment. *West v. Northampton Clinic Co., LLC*, 783 F. App'x 118, 123 (3d Cir. 2019). While Mr. Krasner is permitted to terminate an at-will employee based on a mistaken non-discriminatory

8

belief, "inconsistencies and implausibilities in the employer's proffered reasons for discharge" can preclude summary judgment for the employer. *Sorba*, 821 F.2d at 205. The City and Mr. Krasner attempt to distinguish the cases cited by Mr. Vega and Mr. Whitehead as cases involving a "wholesale change in the primary rationale for the employer's decision." Doc. No. 43, at 8. Mr. Krasner, however, has "wholesale" abandoned an allegation of sexual harassment as a basis for his decision to terminate Mr. Vega's employment. Because Mr. Krasner has provided shifting reasons for his decision, the issue of Mr. Krasner's intent in terminating Mr. Vega's employment is a factual dispute for the jury.

## II.  Mr. Whitehead's Claims

Mr. Whitehead argues that Mr. Krasner's non-discriminatory justifications are a *post hoc* justification rather than his true motivation at the time of his decision. As with Mr. Vega, Mr. Whitehead was not given any reason for his termination on January 5, 2018.[2] Then, in Mr. Krasner's communications with the Pennsylvania Human Relations Commission, Mr. Krasner stated that he fired Mr. Whitehead after he was able to observe and assess his behavior during a "thirty-year job interview." Doc. No. 40-26 Ex. 35 ¶ 2.

At his deposition, Mr. Krasner stated that he had "some matters in juvenile court many years ago" with Mr. Whitehead, Doc. No. 34-4 Ex. 3, at 387:7-12, and discussed one case from the 1980s or 1990s in which he recalled Mr. Whitehead pursuing an "extreme" approach to sentencing for a juvenile robbery, *id.* at 388:21-389:12, 391:10-22. Mr. Krasner testified that he spoke with Mr. Giampietro about Mr. Whitehead before terminating Mr. Whitehead's employment and was unable to identify any other discussions regarding Mr. Whitehead before the termination.

---

[2] At oral argument, Mr. Whitehead argued that while "there is no legal obligation to proffer a reason at the time of termination," H'rng Tr. at 27:25-28:6, a lack of documentation concerning the termination can serve as evidence of pretext, citing *Johnson v. Verizon Servs. Corp.*, No. CV 16-1023, 2017 WL 1397240 (E.D. Pa. Apr. 18, 2017).

Doc. No. 34-4 Ex. 3, at 385:5–12. Mr. Giampietro, in turn, testified that "[t]here was no discussion about Joe Whitehead" before the terminations and that his testimony covered only what he would have told Mr. Krasner had he been asked. Doc. No. 34-4 Ex. 4, at 57:11–16. Similarly, the City and Mr. Krasner cite Robert Listenbee's testimony about Mr. Whitehead's reputation for seeking long juvenile sentences, but Mr. Whitehead argues that this is a *post hoc* rationalization because Mr. Listenbee was not hired until February 2018—after the terminations—and did not discuss Mr. Whitehead with Mr. Krasner before that point. Doc. No. 40, at 13–14; Doc. No. 40-1 Resp. ¶ 53(c); Doc. No. 40-22 Ex. 31, at 14:18–22.[3]

In addition, the City and Mr. Krasner assert that former Chief of Staff Arun Prabakaran "specifically recalls a discussion about Mr. Whitehead's excessive sentencing recommendations and Mr. Krasner's sentencing philosophy before the January 5, 2018 terminations." Doc. No. 34-2, at 12. However, Mr. Prabakaran testified that he could not recall Mr. Whitehead's sentencing philosophy being discussed at a *particular* meeting, Doc. No. 34-4 Ex. 5, at 237:5–11, and that Mr. Krasner did not have conversations with him specifically about the decision regarding whether to keep Mr. Whitehead, *id.* at 236:2–11. Mr. Krasner himself could not recall speaking with anyone besides Mr. Giampietro about Mr. Whitehead. Doc. No. 34-4 Ex. 3, at 385:5-12.

Mr. Krasner also cites Mr. Whitehead's juvenile sentencing recommendations to corroborate his opinion of Mr. Whitehead's extreme prosecutorial strategy. Doc. No. 34-2, at 13 n.4. However, as the City and Mr. Krasner concede, "Mr. Krasner did not have access to these memoranda when he made the decision to terminate Mr. Whitehead." *Id.* A jury could certainly

---

[3] The City and Mr. Krasner also cite the testimony of Mr. Whitehead's prior supervisor, Brian Zarallo, that Mr. Whitehead's sentencing recommendations tended to be "on the heavier end." Doc. No. 34-2, at 13. Mr. Whitehead refutes this characterization by citing other portions of Mr. Zarallo's testimony, including a statement that Mr. Whitehead "had excellent prosecutorial judgment." Doc. No. 40-1 Resp. ¶ (51)(e). Regardless, Mr. Krasner did not assert that he relied on Mr. Zarallo's opinion in deciding to terminate Mr. Whitehead's employment. Doc. No. 34-4, at 331:21–22.

draw inferences about the validity of Mr. Krasner's claim that he was motivated by Mr. Whitehead's juvenile sentencing philosophy rather than his age from any of the evidence cited by the City and Mr. Krasner. However, Mr. Whitehead has introduced a genuine dispute of fact regarding whether his sentencing approach was the true motivation or a *post hoc* rationalization for a discriminatory termination.

### III.    Mr. Krasner's Comments

Mr. Vega and Mr. Whitehead have called Mr. Krasner's non-discriminatory explanations into question by introducing interview statements regarding his approach to personnel decisions as part of their prima facie case of age discrimination. "[I]f a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 427 (3d Cir. 2013). This evidence includes Mr. Krasner's statements that "people who are going to be made to leave . . . will tend to be my generation, people who started in this business 30 years ago", Doc. No. 34-5, at 121, and that, in contrast to new prosecutors "coming mid-career or straight out of law school", the "old guard . . . needs to go", Doc. No. 34-5, at 128.

The City and Mr. Krasner argue that Mr. Krasner's interview comments are "cherry-picked" "stray remarks" that require full context. Doc. No. 34-2, at 6; Doc. No. 43, at 6. Mr. Krasner testified that he intended the "old guard" comments to refer to Napoleon's soldiers who were entrenched and resistant to change. Doc. No. 34-3 Ex. 3, at 563:6–12. In support of this argument, the City and Mr. Krasner emphasize additional language surrounding Mr. Krasner's "old guard" comments that "distinguishes prosecutors based on philosophy not age." Doc. No. 43, at 10–11 ("As I said, I think there is an old guard, *it certainly isn't [] everyone above a certain*

11

*age, that's not the case [], but [there] is an old guard there*.") (emphasis in original).[4] Even this language, however, could be interpreted by a reasonable jury as invoking age-based stereotypes, particularly when read in conjunction with other comments made by Mr. Krasner. *See, e.g.*, Doc. No. 34-5, at 121 ("The ones who will leave will tend to be my generation, people who started in this business 30 years ago . . . ."). Mr. Krasner may very well be a student of French history, but he and the City are the movants, which means that inferences are drawn in Mr. Vega's and Mr. Whitehead's favor. A reasonable jury could credit Mr. Krasner's interview statements as evidence of discriminatory intent in terminating Mr. Vega's and Mr. Whitehead's employment.[5]

When a court "only has before it dueling narratives" as to the reason for termination of a plaintiff's employment, "a genuine dispute of material fact remains as to pretext." *Johnson v. Verizon Servs. Corp.*, No. 16-1023, 2017 WL 1397240, at \*4 (E.D. Pa. Apr. 18, 2017). The issue of whether Mr. Krasner's proffered reasons for termination of Mr. Vega's and Mr. Whitehead's employment are mere pretext is a genuine dispute of material fact that precludes summary judgment.

---

[4] The City and Mr. Krasner also cite a Seventh Circuit case, *Turbergen v. St. Vincent Hosp. & Health Care Cent.*, 517 F.3d 470, 474 (7th Cir. 2008). Doc. No. 34-2, at 6. However, the Seventh Circuit in *Turbergen* stated that "the context in which the comment was made makes it even more unlikely that [the employer] was thinking about Tubergen at all, much less his age" because the "old guard" comment was made about a hospital area in which Tubergen did not work. *Id.* at 474. Mr. Whitehead and Mr. Vega, in contrast, were in fact attorneys in the District Attorney's Office and the City and Mr. Krasner do not dispute that Mr. Krasner made these comments about this office.

[5] Mr. Krasner also argues that his January 5, 2018 terminations included 10 employees under the age of 40, out of a total of 30 terminations, which "nullifies any conceivable inference of age bias based on Mr. Krasner's public statements." Doc. No. 43, at 10. Mr. Vega and Mr. Whitehead counter that between July 2018 and September 2019, Mr. Krasner hired 138 new attorneys, 127 of whom were under the age of 40. These competing statistics also create an issue of "dueling narratives." *Johnson v. Verizon Servs. Corp.*, No. 16-1023, 2017 WL 1397240, at \*4 (E.D. Pa. Apr. 18, 2017).

## CONCLUSION

For the foregoing reasons, the Court denies the City and Mr. Krasner's motion for summary

judgment with respect to the ADEA and PHRA claims.  An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARLOS VEGA and** | : | |
| **JOSEPH WHITEHEAD,** | : | |
| *Plaintiffs* | : | **CIVIL ACTION** |
| v. | : | |
| | : | **No. 19-4039** |
| **CITY OF PHILADELPHIA and** | : | |
| **LAWRENCE KRASNER,** | : | **FILED UNDER SEAL** |
| *Defendants* | : | |

### ORDER

AND NOW, this _____ day of September, 2021, upon consideration of the City of

Philadelphia and Lawrence Krasner's Motion for Summary Judgment (Doc. No. 34) and exhibits,

the City of Philadelphia and Mr. Krasner's Statement of Material Facts (Doc. No. 36), the

responses and replies thereto with exhibits (Doc. Nos. 40, 43), and the Court having conducted

oral argument on January 19, 2021, it is **ORDERED** that:

1. The Motion for Summary Judgment (Doc. No. 34) is **DENIED**.

2. The parties shall inform the Court by September 24, 2021 whether the
   Memorandum should be kept under seal in whole or in part, with a short
   accompanying explanation.

3. The Motion for Leave to File Supplemental Brief in Support of Defendants' Motion
   for Summary Judgment (Doc. No. 54) and the Response in Opposition with Cross-
   Motion (Doc. No. 55) are deemed **MOOT**.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

1

# EXHIBIT B



215-829-9300
833-562-9300
www.a-acourtreporting.com

Transcript of the Testimony of

**LAWRENCE KRASNER**

September 16, 2020

**MICHELLE T. SEIDNER**

*vs*

**CITY OF PHILADELPHIA and LAWRENCE KRASNER**

MICHELLE T. SEIDNER vs
CITY OF PHILADELPHIA and LAWRENCE KRASNER

KRASNER, LAWRENCE

Page 302

1      Q      That is correct, that was Thursday.
2      And when had you tentatively decided to
3  request Mr. Vega's resignation?
4  A      I had a very disappointing experience with
5  Mr. Vega in late 2016 in a very, very gut-wrenching
6  trial.
7      Q      You told us about that.
8  A      Right.  And thinking about who would stay and
9  who might go was really not even an issue until
10  after winning the primary.
11      Q      Mr. Krasner, did you have it in your
12  mind in or around May or June of 2017 that Mr. Vega
13  was going to go?
14  A      I was very seriously considering it.  I mean,
15  and frankly it wasn't anything I had to struggle
16  over.
17      Some of the things he had done in that trial
18  were way beyond the pale, and it wasn't just
19  activity in the courtroom.  It was sexual harassment
20  of someone in that courtroom.  It was layered on by
21  some other things that I might have just forgotten
22  and forgiven, which was how abusive he was towards
23  members of my staff during the preceding five years.
24      But there was just a huge critical mass of
25  things that Mr. Vega did and things that he

Page 303

1  supervised during that trial that I just couldn't
2  get over honestly.  There was just no way that I was
3  gonna have someone who would do those things in my
4  office.
5      Q      Did you witness any act that you
6  thought was sexual harassment during the course of
7  that trial?
8  A      Yes.
9      Q      Okay.  And what did you witness?
10  A      So during this lengthy trial there was
11  another attorney representing a different defendant
12  that was Jack McMann representing our client's
13  codefendant.
14      This was, if I recall correctly, a case in
15  which the death penalty was being sought against
16  both of these defendants.  It was an absolutely
17  heartbreaking case involving the murders of three
18  people in a corner grocery, in a bodega.
19      And the trial was extremely emotional.  It
20  went far longer than expected.  During a break
21  Mr. Vega was walking around near his counsel table
22  and we were at the adjoining counsel table.
23  Mr. McMann, I believe, had walked away, and he had
24  this very young woman working with him, probably
25  early 20s, maybe 22, something like that, red hair.

Page 304

1  Mr. McMann had confided in me that she had
2  certain challenges in terms of being on the
3  spectrum.  And that in many ways he thought that
4  made her an excellent paralegal.  Because she was
5  very focused on detail and very hard working.  And
6  she was sitting at that table while I was there.
7      Vega turns to her and starts making all of
8  these comments to the -- that were, A, flirtatious
9  and, B, they were more flirtatious.  The part I
10  remember most vividly is he said, I can't wait to
11  get you in the orgasmic glow.
12      There were people sitting in the gallery.  I
13  was watching this.  This woman was being victimized
14  frankly.  And no doubt even a little more difficult
15  to handle because of her situation, and I thought it
16  was disgusting.
17      Q      Did you report Mr. Vega to any of the
18  his supervisors at the District Attorney's office as
19  a result of that incident?
20  A      You mean like Seth Williams who was infamous
21  for sexually harassing everyone?  No.
22      Q      I didn't ask a specific name.  How
23  about his immediate supervisor, Jennifer Selber or
24  Brian Zarallo?
25  A      No.

Page 305

1      Q      How about Ed Cameron?
2  A      I did not go to people who, Number 1, I knew
3  would not act; Number 2, were not really interested
4  in that.  They were interested in getting a death
5  penalty.
6      My obligation was to do my duty as an
7  attorney, to zealously represent, which is a
8  different obligation that I have now, but it was to
9  zealously represent a defendant, and I was not going
10  to do anything to inflame the DA's office at a point
11  when they were trying to execute my client.
12      So, no, I did not do that.  Was I disgusted
13  by it?  Yes.  Did I say something to McMann?  Yes, I
14  said something to McMann.
15      Q      Did you report Mr. Vega's conduct to
16  the trial judge?
17  A      No.  He was not on the bench and I did not do
18  that.
19      Q      Have you ever filed a Complaint
20  against Mr. Vega with the Pennsylvania Disciplinary
21  Board?
22  A      Number 1, no; Number 2, I like basically
23  every other attorney in the criminal system, with a
24  few exceptions, have never filed a Disciplinary
25  Complaint against another attorney, nor have I gone

**SIDKOFF, PINCUS & GREEN, P.C.**
**By: Robert A. Davitch, Esquire**
**Identification No.  23827**
**1101 Market Street**
**2700 Aramark Tower**
**Philadelphia, PA   19107**
**(215) 574-0600**                                         **Attorneys for Plaintiff**

| | |
|---|---|
| **CARLOS VEGA** : | **CIVIL ACTION** |
| **and** : | |
| **JOSEPH WHITEHEAD, JR.** : | **NO. 19-4039** |
| : | |
| **Plaintiffs,** : | **JURY TRIAL DEMANDED** |
| **v.** : | |
| : | |
| : | |
| **CITY OF PHILADELPHIA** : | |
| **and** : | |
| **LAWRENCE S. KRASNER** : | |
| **Defendants.** : | |

### CERTIFICATE OF SERVICE

I, Robert A. Davitch, hereby certify that the attached Motion and Memorandum of Law

has been served via electronic service of the Court, and is available for viewing and

downloading on the Court's ECF system, upon the following counsel of record:

Lisa Swiatek, Esq.
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA  19102

David Smith, Esq.
Anne Kane, Esq.
Samantha Banks, Esq.
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103-7286

_/s/ Robert A. Davitch_
ROBERT A. DAVITCH
Attorney for Plaintiffs

Dated: July 1,2022