## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARLOS VEGA** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **NO. 19-4039** |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **CITY OF PHILADELPHIA** | : | |
| | : | |
| **Defendant.** | : | |

### PLAINTIFF CARLOS VEGA'S UPDATED PRETRIAL MEMORANDUM

Plaintiff, Carlos Vega, files this Updated Pretrial Memorandum pursuant to Local Rule of Civil Procedure 16.1(c) and the Court's Jury Trial Notice:

### I.   NATURE OF ACTION AND BASIS FOR JURISDICTION

Plaintiff, Carlos Vega, brings this age discrimination action against his former employer, the City of Philadelphia ("City").[1]  On January 5, 2018, the City, through the actions of its newly-elected District Attorney, Mr. Krasner, terminated Mr. Vega's employment because of his age.  The action is brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 et seq. ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. §951 et seq.  ("PHRA").  The Court has jurisdiction over the ADEA claim pursuant to 28 U.S.C. §1331 and 29 U.S.C. §626(c)(1), and supplemental jurisdiction over the PHRA claim pursuant to 28 U.S.C. §1367(a).

---

[1]  The claims of Mr. Vega's co-plaintiff, Joseph Whitehead, Jr., have been settled.  In addition, the parties have stipulated to the dismissal of Mr. Vega's claim against the individual defendant, Lawrence Krasner.

II.   **SUMMARY OF FACTS SUPPORTING PLAINTIFF VEGA'S CLAIMS**

Mr. Vega had a long, successful and distinguished career with the City as a prosecutor at the District Attorney's Office ("DAO").  He was employed by the City from 1982 until January 2018, at which time his age was 61.

From 1987 until his employment was terminated, Mr. Vega was assigned to the DAO's Homicide Unit, where he worked as a homicide prosecutor.  In that role, Mr. Vega did exemplary work on behalf of the public and enjoyed a stellar reputation.  He was respected and admired by his colleagues, supervisors, peers, members of the criminal defense bar, and judges.  In addition, he was chosen by his superiors to handle many of the most complex, difficult and brutal homicide cases, and he served as a mentor to many young prosecutors.  A true credit to the legal profession, Mr. Vega was a dedicated public servant who devoted his career to promoting the administration of criminal justice.  Mr. Vega consistently received outstanding performance appraisals from his supervisors.

In February of 2017, Mr. Krasner, a long-time criminal defense lawyer, announced his candidacy for DA of the City, running under a progressive agenda. When Mr. Krasner won the Democratic primary for DA in May 2017, it was a foregone conclusion that he would be elected DA in November 2017.  Between May 2017 and October 2017, with the election approaching, Mr. Krasner made a series of public statements that reflected his bias towards and stereotypical views of older career prosecutors who had worked in the DAO for decades.  Mr. Krasner's public remarks also revealed his strong preference for and favoritism of young prosecutors.  Mr. Krasner publicly touted the generalization that older prosecutors at the DAO were too

rigid and set in their ways to accept his policies, and that young prosecutors would enthusiastically support his agenda.  In his deposition, Mr. Krasner admitted that he made the public statements attributed to him.[2]

The following are examples of Mr. Krasner's pre-election discriminatory pronouncements:

● In an interview he gave to The Intercept on May 16, 2017, Mr. Krasner asserted that there were "people [in the DAO] who are going to be made to leave because you cannot bring about real change and leave people in place who are going to fight change every step of the way," and that "[t]he ones who will leave will tend to be my generation, people who started in this business 30 years ago[.]"  Mr. Krasner went on to proclaim in the interview that "the office will become a tremendous magnet for new talent, because there are a ton of people who are either coming out of law school or who are mid-career who would love to work in a truly progressive DA's office but haven't been able to find any."  He further stated in the interview that "there are a lot of just malleable, mostly younger attorneys who did what they were told, and always wanted to do the right thing, and with proper training will do the right thing."

● In an interview he gave to Jacobin radio on October 7, 2017, Mr. Krasner once again engaged in typecasting of young and old prosecutors.  He advocated that "there is no question that the old guard in that office [referring to the DAO] is in control and the old guard in that office is not desiring change at all," and that "that crowd needs to go" and "to get out of the way" so that "people who are sophisticated and modern and

---

[2]  Mr. Vega had never exhibited any intent or inclination to impede or object to policies that were implemented by each DA for whom he worked during his long career.  He was a loyal employee who did what was asked of him without complaint or resistance.

understanding of the mistakes that have been made in the last 50 years [can] run the show."

● In an interview he gave to WHYY radio on October 24, 2017, Mr. Krasner predicted that he would have "broad support among a lot of younger ADAs." He also stated that, in contrast to the "younger ADAs," "there are some people in there whose vision for a DA's office is so entrenched that they are unwilling to embrace a new one," and they "will be better served working somewhere else." Later in the interview, Mr. Krasner spoke in more generalities when he emphasized that he "expect[ed] to have very broad support among the vast majority of the young prosecutors who are in there" and that it was "more of a generational issue as I see it."

On November 7, 2017, Mr. Krasner won the election for DA, and on January 2, 2018, he was sworn into office. Thereafter, he wasted little time implementing his publicly announced plan to expel from the DAO older, long-tenured career prosecutors, based on his discriminatory supposition that they were too inflexible and unyielding to abide by his policies. On January 5, 2018, Mr. Krasner, as the City's decisionmaker, directed that 30 of the 300 attorneys at the DAO, including Mr. Vega, be informed that he was demanding their resignations that day, and that they would be dismissed if they did not resign. Of the 30 attorneys on Mr. Krasner's termination list, 20 were within the protected age group (over the age of 40), and 11 (including Mr. Vega) were above the age of 50. Mr. Krasner knew that Mr. Vega had a decades-long career as a prosecutor for the City. The City's HR department did nothing to prevent Mr. Krasner from basing his termination decisions on age.

Pursuant to Mr. Krasner's directive, Mr. Vega was informed by the City on January 5, 2018 that Mr. Krasner wanted him to resign.  When Mr. Vega refused to tender his resignation, he was instructed by the City to clear out his office and leave the building.  Mr. Vega was given no reason or explanation for Mr. Krasner's decision.  Nor did Mr. Krasner document any reason for his decision.  In addition, Mr. Krasner never looked at Mr. Vega's personnel file, which included the performance appraisals which documented his superior performance, nor did he speak with any of Mr. Vega's supervisors at the DAO regarding Mr. Vega's performance.  If asked, the supervisors would have strongly supported Mr. Vega and told Mr. Krasner that Mr. Vega was a key contributor who should not be let go.[3]

When Mr. Vega was pushed out, the City, through Mr. Krasner, retained many substantially younger prosecutors in the Homicide Unit who lacked Mr. Vega's skills, experience or qualifications.  Many of those young lawyers, mostly in their 30s,  had been mentored or trained by Mr. Vega.  In addition, consistent with his affinity for youth, from July 2018 to September 2019, Mr. Krasner recruited and hired 138 lawyers to work for him in the DAO, 127 of whom were under the age of 40, and 88 of whom were between the ages of 25 and 30.[4]

---

[3] Mr. Krasner did not speak to the Chief or the Assistant Chief of the Homicide Unit, who were Mr. Vega's supervisors at and prior to the time that Mr. Krasner made his decision to demand Mr. Vega's resignation.  Although the Chief and Assistant Chief were not on the termination list, Mr. Krasner did not solicit their opinions of Mr. Vega's work as a prosecutor.

[4] Early in 2018, Mr. Krasner hired a number of older lawyers known to him from his private law practice to work for him in the DAO.  Those lawyers were brought in mainly to fill managerial and policymaking roles, and not as line prosecutors (the role Mr. Vega had).

Mr. Krasner continued to broadcast discriminatory remarks about older prosecutors after he was sworn into office.  In his deposition, he acknowledged making the comments attributed to him.  In an interview he gave to WBUR radio on April 18, 2018, Mr. Krasner trumpeted that "the younger generation" had "grown up with an understanding that mass incarceration is not only a huge problem for a society that claims to be free, but it's also racist," and that for "[s]ome of the older [prosecutors]. . . it's hard to look back on your career and think that you were doing a good thing by stuffing so many people of color in jail."  Mr. Krasner's branding of older, career prosecutors as "racists" was particularly offensive to Mr. Vega given that he is a Latino who was frequently the voice for people of color who were murdered, as well as their surviving family members.

Further proof of Mr. Krasner's age-related animus and favoritism of young prosecutors surfaced in a podcast interview he gave on May 25, 2018, when he professed that after he "got that core group to move on" from the DAO, "we found that among the younger attorneys there was a whole lot of excitement and interest because they have heard of 'mass incarceration.'"  Mr. Krasner further stated in the podcast interview that there was a "[f]ascinating generational dynamic" in place, in that "younger people are a lot more cognizant of the reality of the racist system" than "more senior attorneys, whose training had been done in a certain way."  Mr. Krasner gave another podcast interview in December 2018, where he announced that "[w]e want [the DAO] to be the destination district attorney's office for young, progressive talent, who really want to see a change in the criminal justice system," and that "we need to leave discretion in

the hands of the next generations coming up, because they're going to do a lot with that discretion to make things better, until the old people who write the laws catch up."

Mr. Krasner's public utterances made during his first year in office lend further support to Mr. Vega's claim that Mr. Krasner targeted him for termination because of his age. As the Court determined in denying the City's motion for summary judgment in the related case of Seidner v. City of Philadelphia, et al, Civil Action No. 19-4338 (E.D.Pa.), "the recurring nature of Mr. Krasner's comments across a span of more than a year surrounding the terminations is a point that a jury could reasonably weigh against believing Mr. Krasner's alternate non-discriminatory justifications."  See Memorandum, 9/14/2021 at p. 9 (emphasis in original).

## Reasons Asserted by Mr. Krasner to the PHRC

In June 2018, Mr. Vega filed a complaint of age discrimination with the Pennsylvania Human Relations Commission ("PHRC").  In response to that filing, Mr. Krasner was asked by the PHRC to provide a verified statement "explaining in his . . . own words the specific reasons for his decision" to terminate Mr. Vega's employment. On December 12, 2018, Mr. Krasner provided a verified statement to the PHRC, in which he asserted that "as a practicing civil rights and criminal defense attorney in Philadelphia since 1987, I had been able to conduct what essentially amounted to a thirty-year job interview of [Mr. Vega], during which I had extensive opportunities to observe and assess [his] professional competence, demeanor, and ethics."  Mr. Krasner went on to state in the verified statement that before making his final decision, he "supplemented [his] own observations . . . with those of other people knowledgeable in the court system who had relevant professional interactions with DAO staff or had

information about them."  Not only did Mr. Krasner fail to provide the PHRC with

"specific reasons" for his decision, but the general reasons he offered in the verified

statement are untrue.  In the entire 30-year period mentioned in the verified statement,

Mr. Krasner only had one case against Mr. Vega: the Scott/Muhammed triple homicide

case.  Mr. Krasner therefore had no "extensive opportunities to observe and assess" Mr.

Vega over three decades, or to conduct a "thirty-year job interview."  Furthermore, while

Mr. Krasner failed to identify in the verified statement any individual in the court system

with whom he consulted regarding Mr. Vega before making his final decision, he later

acknowledged in his deposition that he did not discuss Mr. Vega with any of Mr. Vega's

supervisors at the DAO, and that the only individual with whom he could recall having a

discussion about Mr. Vega before he finalized the decision was his long-time friend,

mentor and "trusted advisor," Michael Giampietro, who became Mr. Krasner's senior

advisor at the DAO.  Mr. Giampietro, who had many trials and professional interactions

with Mr. Vega over the years, urged Mr. Krasner to retain Mr. Vega.

**Reasons Subsequently Asserted by Mr. Krasner in his Deposition**

In his deposition, taken nearly two years after he had submitted the PHRC

verified statement, Mr. Krasner reversed course, testifying that he based his decision to

terminate Mr. Vega's employment on what he claimed was Mr. Vega's unethical and

inappropriate conduct in the one case he ever tried against Mr. Vega:

Scott/Muhammed.  This defense was subsequently repeated in Defendants' Motion for

Summary Judgment and again in their initial Pretrial Memorandum.  It was not

mentioned by Mr. Krasner to the PHRC or to Mr. Vega when his employment was terminated.[5]

By way of background, Scott/Muhammed was a gruesome case involving the cold-blooded murders of three family members in a convenience store ("bodega") that they owned.  The murders were perpetrated in the presence of two young girls who were the victims' relatives.  Muhammed was represented by Mr. Krasner (along with Anthony Voci, Esq.) and Scott by Jack McMahon, Esq.  Mr. Vega was the lead prosecutor.  In his deposition, Mr. Krasner acknowledged that the Scott/Muhammed case was "excruciating", "horrifying", and "was considered by many to be the most likely death verdict in Pennsylvania that year [2016]."  A jury trial was conducted before the Honorable Glen Bronson (the "Trial Judge") in late 2016.  At the conclusion of the liability phase of the trial, the jury convicted Muhammed and Scott of three counts of first-degree murder, as a result of which they faced either life imprisonment or the death penalty.  At the end of the penalty phase of the trial, the trial judge sentenced both defendants to life imprisonment.  The convictions and sentences were affirmed by the Trial Judge and the Superior Court of Pennsylvania.  Mr. Vega was not sanctioned or reprimanded by the Trial Judge for anything he did or failed to do during the trial, and all claims of prosecutorial misconduct were rejected by the Trial Judge and the Superior

---

[5] Defendants stated the following in their first Pretrial Memorandum:

> Mr. Krasner's negative opinions regarding Mr. Vega's ethics and trustworthiness were established during the Scott/Muhammed case, and formed the basis for his decision to terminate Mr. Vega.

See Def. Pret. Mem., 11/23/2020 at p. 4 (Doc. No. 41).

Court.  Mr. Krasner's claim, asserted for the first time in his deposition, that Mr. Vega's conduct in the Scott/Muhammed case provided a valid and legitimate reason for terminating Mr. Vega's employment, is a pretext for age discrimination.[6]

As an initial matter, Mr. Krasner testified that Mr. Vega behaved in a petty and abusive manner during pretrial discovery in the Scott/Muhammed case, making it difficult for the defense to obtain copies of discovery materials.  In fact, Mr. Vega produced nine boxes of documents to Mr. Krasner, and although Mr. Krasner received all of the documents well in advance of the trial, he only used one or two of the documents at trial.  Furthermore, any delay in production was not the fault of Mr. Vega.  The documents had to be copied at the DAO, which could not relinquish control of the originals.  The Homicide Unit had only one copy machine, and all attorneys and staff members assigned to the unit had to share it.  Because the documents were of varying size and texture, and many were double-sided, many of them could not be fed into the copy machine for rapid copying but had to be placed on top of the glass for individual copying.  Times had to be arranged for the copying based upon the availability of Mr. Krasner's employees, who did the copying at the DAO in stages over a period of time, under the supervision of DAO paralegals.  Mr. Krasner's staff could not monopolize the copier because so many other people had to use it. Mr. Vega had a very limited role, and the copying project was completed in time for all of the documents to be produced

---

[6] The change in Mr. Krasner's story from his 2018 PHRC verified statement to his 2020 deposition testimony can enable the jury to find pretext. See Sorba v. Pa. Drilling Co., 821 F.2d 200, 205 (3d Cir. 1987); Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 284 (3d Cir. 2001).  In addition, a trier of fact can find pretext where the core facts put forward by the employer as its legitimate nondiscriminatory reason are shown to be untrue.  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006).

to the defense team sufficiently in advance of the trial so that there was no harm or prejudice.  Furthermore, Mr. Krasner never complained to the Trial Judge about a delay in the copying or production.

Mr. Krasner testified in his deposition that during the Scott/Muhammed trial, he witnessed Mr. Vega sexually harass Mr. McMahon's paralegal in the courtroom.  Mr. Krasner emphasized that this played a major role in his decision to terminate Mr. Vega's employment.  According to Mr. Krasner, he saw and heard Mr. Vega say to the paralegal during a break in the trial, "I can't wait to get you in the orgasmic glow."  This is a fabrication.  Mr. Vega did not say this or anything like it to the paralegal, and he did nothing that was improper, abusive, or sexual when he interacted with the paralegal. The jury could reasonably find that Mr. Krasner concocted the claim of sexual harassment, long after he had discharged Mr. Vega, as a pretext to conceal his true motive to expel Mr. Vega because of his age.[7]

Mr. Krasner went on to testify in his deposition that on December 13, 2016, during the Scott/Muhammed trial, Mr. Vega engaged in inappropriate ex parte communications with two defense witnesses (the "Witnesses") before they took the stand, where he encouraged the Witnesses to change their stories so that they would identify Muhammed as the perpetrator of a robbery at another bodega;[8] that after

---

[7] Mr. Krasner did not report Mr. Vega's alleged sexual harassment of the paralegal to the Disciplinary Board, the Trial Judge, or any of Mr. Vega's supervisors.  Also, he failed to mention anything about sexual harassment in his verified statement to the PHRC.

[8]  One defense theory was that the robber of the other store also committed the murders, and that when the Witnesses had identified the robber of the other store to the police years before, on the night of the robbery, their identifications did not match a description of Muhammed.

meeting with the Witnesses at the courthouse on December 13, 2016, Mr. Vega

asserted that the Witnesses would testify that they were now able to identify

Muhammed as the robber of the other store; that in making this assertion, Mr. Vega

reneged on an agreement he had made that he would not present identification

testimony from the Witnesses; and that after meeting with the Witnesses on December

13, 2016, Mr. Vega misrepresented to the Trial Judge that he had met with them in the

presence of a detective.

Mr. Krasner's testimony will be discredited.  On December 13, 2016, before the

Witnesses were called to testify for the defense, Mr. Vega had the same right to meet

with them in the courthouse as did the defense team.  Although the Witnesses had

stated years before the murder trial that they were unable to identify Muhammed as the

robber of the other store, they told Mr. Vega when he talked to them in court on

December 13, 2016, much to Mr. Vega's surprise, that they were now able to identify

Muhammed as the robber of the other store, based on internet research they had

recently done.  Given this unexpected change in circumstances, and to prevent unfair

surprise, Mr. Vega promptly informed the Trial Judge and defense counsel that the

Witnesses could identify Muhammed as the robber of the other store.  This disclosure

by Mr. Vega allowed the Trial Judge to consider the arguments of counsel and to make

a ruling on the scope of the Witnesses' testimony before they were called to the stand.[9]

After hearing the arguments of counsel, the Trial Judge ruled that the limited probative

---

[9] Mr. Vega never attempted to influence the testimony of the Witnesses, to convince
them to change their story, or – as Mr. Krasner has falsely asserted – to encourage
them leave the courthouse if they were precluded from identifying Muhammed as the
robber of the other store.

value of the Witnesses' testimony that they were able to identify Muhammed as the

robber of the other store, based upon their recent internet searches conducted years

after the other robbery was committed, was outweighed by the prejudice it would cause

to the defense.  The Witnesses were therefore precluded by the Trial Judge from

identifying Muhammed as the robber of the other store when they testified for the

defense at the murder trial, as a result of which the defense suffered no harm or

prejudice.  On the other hand, on direct examination of the Witnesses at the murder

trial, Mr. Krasner and Mr. McMahon were allowed to elicit from the Witnesses testimony

that was advantageous to the defense: that their identification of the robber of the other

store in statements they had given to the police on the night of the robbery did not

match a description of Muhammed.  Still, the jury convicted Muhammed of the

murders.[10]

As to whether or not Mr. Vega reneged on an agreement not to have the

witnesses identify Muhammed at the murder trial, the Trial Judge found there was a

"misunderstanding," noting that nothing had been confirmed in writing.

Mr. Krasner also testified in his deposition that Mr. Vega failed to turn over, in a

timely manner, crucial evidence relevant to the mitigation (penalty) phase of the

Scott/Muhammed trial, by which time it was too late for Mr. Krasner to use the evidence.

This is untrue.  The record reflects that when Mr. Krasner informed the Trial Judge right

---

[10] Prior to the Witnesses' testimony on December 13, 2016, defense counsel accused
Mr. Vega of falsely informing the Trial Judge that he had a detective with him when he
had spoken to one of the Witnesses that day.  Mr. Vega and his co-counsel, Mr.
Handrich, clarified for the Trial Judge that Mr. Vega was referring to discussions he had
had with the Witness years before the trial, and that on December 13, 2016, Mr. Vega
had met with the Witnesses with no detective present.

before the penalty phase of the trial began that he had recently learned that Muhammed

had been raped as a young child, Mr. Vega agreed to stipulate to that fact.  Mr. Vega

also agreed to stipulate to other facts that were helpful to Muhammed's mitigation

defense, and the stipulations were read to the jury.  At the end of the penalty phase, the

jury did not vote to sentence Muhammed to death, as a result of which a mandatory

sentence of life imprisonment was imposed.  Muhammed therefore suffered no

disadvantage as a result of the timing of the prosecution's disclosure of evidence

related to mitigation.  On the other hand, the defense was aided in the penalty phase by

Mr. Vega's stipulations.

## III.   <u>SUMMARY OF PLAINTIFF VEGA'S MONETARY DAMAGES</u>

Mr. Vega's economic losses have been calculated by his damages expert to be

approximately **$623,096**.  This figure includes lost wages from January 2018 through

November 2021; loss of the value of benefits under the City's DROP program; and loss

of the value of employer-provided health benefits.

As background, in February of 2016, Mr. Vega applied for enrollment in the City's

DROP program.  In doing so, he agreed unconditionally to voluntarily retire from his

employment with the City in November 2021 (four years after November 2017), in

exchange for receiving a lump sum payment at the time of his retirement in the amount

of approximately $485,000.  When a City employee enters the DROP program, their

pension is frozen and their monthly pension benefits are paid into a DROP account so

that a lump sum, including accrued interest, is paid at the time of the agreed upon

retirement date. In Mr. Vega's case, he agreed that his monthly benefits would be

deposited into an interest-bearing account from November 2017 until the time of his

retirement in November 2021, at which time he would receive the lump sum payment with interest.  It was also understood that Mr. Vega would continue working for the City and receiving his regular salary until November 2021.

When his employment was terminated by the City in January 2018, Mr. Vega was earning an annual salary of $143,000.  Notwithstanding reasonable efforts he made to mitigate his economic losses by attempting to find comparable or substantially equivalent employment as a prosecutor for the last few years of his career, Mr. Vega was not offered a job, and he was unemployed and earned no employment-related income from January 2018 through November 2021 (and none thereafter).  Mr. Vega's damages expert has determined, based upon Mr. Vega's historical earnings from the City, that from January 2018 through November 2021 (his expected retirement date from the City), he suffered a loss of income (back pay) in the amount of **$548,977**.  This is the total amount he probably would have earned from the City during that 46-month period had his employment not been terminated.

When Mr. Vega was forced out of his job with the City in January 2018, a total of $16,626 had accumulated in his DROP account.  Mr. Vega was paid that amount in February 2018 because as a DROP participant, he was compelled to retire from the City at that time.  In lieu of receiving a lump sum DROP payment of approximately $485,000 in November 2021, Mr. Vega received monthly pension benefits of $9,394 from the City from February 2018 to November 2021, with those payments totaling $420,851. Because the monthly pension benefits did not include interest, when the payment of $16,626 and the pension benefits of $420,851 that Mr. Vega received are subtracted from the lump sum DROP payment of $485,000 that he would have received had he

15

been allowed to retire from the City in November 2021, there is an additional economic loss (back pay) of **$47,523**.

Had Mr. Vega's employment not been terminated by the City in January 2018, he would have been eligible to receive health insurance benefits from the City for five years commencing in November 2021 (his expected retirement date). As a result of the termination of his employment in January 2018, and to protect his and his family's health benefits, Mr. Vega had to take this five-year benefit as of February 2018. Due to his forced early retirement, these health benefits will be exhausted in January 2023, rather than in November 2026. This has resulted in an additional loss to Mr. Vega of 3.8 years' worth of health benefits (front pay) which according to his expert has a value of **$26,596**.

Because Mr. Vega is claiming that the City's violations of the ADEA were willful, he seeks liquidated damages under the ADEA in an amount equal to his total back pay award.

Mr. Vega seeks compensatory damages under the PHRA, in an amount to be determined by the trier of fact, for pain and suffering, mental anguish, emotional distress, anxiety, loss of self-esteem and self-confidence, embarrassment, humiliation, and harm to his reputation resulting from the termination of his employment with the City.

Mr. Vega also seeks an award of attorney's fees and costs pursuant to the ADEA and the PHRA.

IV.     **PLAINTIFF VEGA'S WITNESS LIST**

| Name | Present or last known address | Subject(s) |
|---|---|---|
| Carlos Vega, Esq. | 2216 S. Bancroft St., Philadelphia, PA 19145 | Liability and damages |
| Brian Zarallo, Esq. | Pennsylvania Office of Attorney General 1000 Madison Avenue Suite 310 Norristown, PA 19403 | Liability |
| Jennifer Selber, Esq. | Pennsylvania Office of Attorney General 16th Floor Strawberry Square Harrisburg, PA 17120 | Liability |
| Edward F. McCann, Jr., Esq. | Montgomery County District Attorney's Office Norristown, PA 19403 | Liability |
| Ann Ponterio, Esq. | 8412 Shawnee Street Philadelphia, PA 19118 | Liability |
| Charles F. Gallagher, III, Esq. | 610 Hendren Street Philadelphia, PA 19128 | Liability |
| John P. Delaney, Jr., Esq. | Archdiocese of Philadelphia 222 N. 17th Street Philadelphia, PA 19103 | Liability |
| Andrew C. Verzilli (expert) | 411 North Broad Street Lansdale, PA 19446 | Damages |
| Victoria Power | 1037 S. Church Street Mt. Laurel, NJ 08054 | Liability |
| Olivia Ann Caccoma | 3750 Main Street Apartment 401 Philadelphia, PA 19127 | Liability |

| Name | Present or last known address | Subject(s) |
|---|---|---|
| Kirk Handrich, Esq. | U.S. Department of Justice 145 N. Street NE Washington, DC | Liability |

Plaintiff may read into evidence (or play the video) of parts of the deposition of Lawrence Krasner taken on September 16, 2020, pursuant to Fed.R.Civ.P. 32.  Plaintiff may also read into evidence parts of the deposition of Rachel Mitchell taken on August 28, 2020, pursuant to Rule 32.  In addition, or alternatively, Plaintiff reserves the right to call Mr. Krasner and Ms. Mitchell as live witnesses at trial.

Plaintiff reserves the right to call any witness identified by the City who does not appear on Plaintiff's witness list.  Plaintiff also reserves the right to call rebuttal witnesses.

## V.    PLAINTIFF VEGA'S SCHEDULE OF EXHIBITS

| No. | Description | Date | Bates |
|---|---|---|---|
| P-1 | Article published in the Intercept: "Meet Philadelphia's Progressive Candidate for DA: An Interview with Larry Krasner" | 5/16/2017 | LEVIN161-170; MITCHELL-9 |
| P-2 | Transcription of excerpts of interviews given by Lawrence Krasner to Jacobin radio and WHYY radio | 10/7/2017 10/24/2017 | MITCHELL-11 |
| P-3 | Link to audio recording of interview given by Lawrence Krasner to Jacobin radio | 10/7/2017 | |
| P-4 | Link to audio recording of interview given by Lawrence Krasner to WHYY radio | 10/24/2017 | |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-5 | Link to audio recording of interview given by Lawrence Krasner to WURD radio | 10/24/2017 | |
| P-6 | Article published by WBUR "Here & Now": "Philadelphia DA Wants to Dismantle Mass Incarceration from the Inside Out | 4/18/2018 | WHITEHEAD 011-020; PK-000090-00099 |
| P-7 | Link to audio recording of interview given by Lawrence Krasner to WBUR radio | 4/18/2018 | |
| P-8 | Link to video/audio recording of roundtable discussion in which Lawrence Krasner participated | 5/4/2018 | |
| P-9 | Link to podcast of interview given by Lawrence Krasner to The Voice of San Diego | 5/25/2018 | |
| P-10 | Transcript of podcast interview of Lawrence Krasner published by Center for Court Intervention: "Prosecutor Power No. 6: Larry Krasner, the Antagonist" | 12/2018 | MITCHELL-10 |
| P-11 | Clips from audio recordings of interviews given by Lawrence Krasner to Jacobin radio, WHYY, WURD, WBUR and The Voice of San Diego | 10/7/2017 10/24/2017 10/24/2017 4/18/2018 5/25/2018 | PV-000131 (disc and e-mail with clips have been produced) |
| P-12 | Memo from Arun Prabhakaran to Rachel Mitchell re: Separations | 1/5/2018 | CITY 0413-0414 |
| P-13 | Chart reflecting names, dates of birth, race, and separation dates of employees separated from DAO | 1/12/2018 | CITY 0415-0416 |
| P-14 | List of employee separations | 1/12/2018 | CITY 621 |
| P-15 | List of retirees | 1/12/2018 | CITY 623 |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-16 | Chart produced by Defendant City in response to Court Order dated 3/2/2020 re: Attorneys appointed to DAO between 7/2018 and 9/2019, verified by Rachel Mitchell | 3/17/2020 | PK-00075-00079; MITCHELL-4 |
| P-17 | Charts produced by Defendant City in response to Court Order dated 3/2/2020 reflecting demographic information of attorneys, including dates of birth and dates of hire, verified by Rachel Mitchell. | 3/17/2020 | PK-00073-00074 and 00079; MITCHELL-4 |
| P-18 | City of Philadelphia Report of Appointment of Lawrence Krasner | 1/8/2018 | CITY 006 |
| P-19 | City of Philadelphia Salary Change Order for Lawrence Krasner | 12/31/2018 | CITY 010 |
| P-20 | Performance Appraisal of Vega | 7/8/1993 | CITY 0130 |
| P-21 | Performance Appraisal of Vega | 6/24/1994 | CITY 0129 |
| P-22 | Performance Appraisal of Vega | 7/31/1997 | CITY 0126-0127 |
| P-23 | Performance Appraisal of Vega | 10/1/1998 | CITY 0119-0125 |
| P-24 | Performance Appraisal of Vega | 3/31/2000 | CITY 0113-0118 |
| P-25 | Performance Appraisal of Vega | 6/17/2002 | CITY 0109-0112 |
| P-26 | Performance Appraisal of Vega | 6/2/2003 | CITY 0107-0108 |
| P-27 | Performance Appraisal of Vega | 6/28/2004 | CITY 0608-0610 |
| P-28 | Performance Appraisal of Vega | 6/30/2005 | CITY 0606-0607 |
| P-29 | Performance Appraisal of Vega | 6/1/2006 | CITY 0604-0605 |
| P-30 | Performance Appraisal of Vega | 6/8/2007 | CITY 0602-0603 |
| P-31 | Performance Appraisal of Vega | 6/16/2008 | CITY 0599-0601 |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-32 | Performance Appraisal of Vega | 6/1/2009 | CITY 0596-0598 |
| P-33 | Performance Appraisal of Vega | 6/24/2012 | CITY 0593-0595 |
| P-34 | Performance Appraisal of Vega | 6/14/2013 | CITY 0103-0104 |
| P-35 | Performance Appraisal of Vega | 6/5/2014 | CITY 0099-0102 |
| P-36 | Performance Appraisal of Vega | 5/26/2015 | CITY 0096-0098 |
| P-37 | Performance Appraisal of Vega | 5/26/2016 | CITY 0093-0095 |
| P-38 | Performance Appraisal of Vega | 5/17/2017 | CITY 0090-0092 |
| P-39 | Letters from DA Lynne Abraham to Vega re: Merit increases | 12/19/1997 6/6/2000 11/5/2007 9/15/2008 | CITY 0072, 0070, 0068, 0066 |
| P-40 | Vega's DROP Application with attached printout | 2/1/2016 2/5/2016 | PV-000002-000003 |
| P-41 | Letter from City Board of Pensions and Retirement to Vega re: DROP with attached spreadsheet | 2/9/2016 | P-000004-000005 |
| P-42 | Letter from Rachel Mitchell to Vega: Separation information | 1/9/2018 | PV-000007-000008 |
| P-43 | E-mail from Stephen Martin to Vega re: Pension Application | 1/12/2018 | PV-000009 |
| P-44 | E-mail exchange between Stephen Martin, Vega and Michele Ford | 1/12/2018 | PV-000010-000011 |
| P-45 | Letter from Michele Ford to Vega | 1/12/2018 | PV-000012 |
| P-46 | Statement of Earnings and Deductions of Vega | 1/19/2018 | PV-000013 |
| P-47 | City Employment Record of Vega | 1/12/2018 | CITY 0417-0419 |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-48 | City Employee Service History Record of Vega | 1/12/2018 | CITY 0064 |
| P-49 | Report of Separation of Vega | 1/12/2018 | CITY 0046 |
| P-50 | Terminal Leave Audit Worksheet for Separating Employee for Vega with attachment | 1/12/2018 | CITY 0047-0048 |
| P-51 | DROP Distribution Selection Form for Vega with attached printout | 1/9/2018 2/11/2018 | CITY 0399-0400 |
| P-52 | Computation of Pension Payable, Municipal Retiree Election Application, Computational Worksheet, and Final Compensation and Pension Contribution Review re: Vega | 1/29/2018 to 2/1/2018 | CITY 0401-0404 |
| P-53 | Benefit Application of Vega with attached Employee Service History Record | 1/19/2018 | CITY 0405-0406 |
| P-54 | Survivor Option Election Form of Vega | 1/19/2018 | CITY 0407-0408 |
| P-55 | Printouts re: Pension and DROP Payment History of Vega | 12/19/2019 | CITY 0410-0412 |
| P-56 | Resumes of Vega | Undated | PV-000089-000090 |
| P-57 | E-mail exchange between Vega, Melissa Piccoli and Brooke Johnson re: open opportunities with resume of Vega | 1/10/2018 1/11/2018 | PV-000091-000094 |
| P-58 | Letters from Vega to Pennsylvania Attorney General Josh Shapiro | 2/21/2018 1/8/2019 12/4/2019 7/17/2020 | PV-000095, 000099, 000103, 000142 |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-59 | Letters from Vega to Montgomery County District Attorney | 7/1/2018 1/10/2019 12/4/2019 7/17/2020 | PV-000096 000100, 000104, 000143 |
| P-60 | Letters from Vega to Chester County District Attorney | 7/1/2018, 1/10/2019, 12/4/2019, 7/17/2020 | PV-000097, 000101, 000105, 000144 |
| P-61 | Letters form Vega to Delaware County District Attorney | 7/1/2018, 1/10/2019, 12/4/2019, 7/17/2020 | PV-000098, 000102, 000106, 000145 |
| P-62 | Letters from Vega to Bucks County District Attorney | 12/4/2019 7/17/2020 | PV-000107, 000141 |
| P-63 | Letter from John Delaney to Vega | 1/29/2018 | PV-000132-000133 |
| P-64 | Declaration of John P. Delaney, Jr. | 10/21/2020 | PV-000227-000233 |
| P-65 | Declaration of Ann Ponterio | 9/1/2020 | PV-000167-000171 |
| P-66 | Declaration of Victoria Power | 9/30/2020 | PV-000172-000173 |
| P-67 | Verified Statement of DA Lawrence Krasner | 12/12/2018 | CITY 0170-0172 |
| P-68 | Transcript of trial of <u>Commonwealth v. Muhammed and Scott</u> | 12/13/2016 | |
| P-69 | Transcript of trial of <u>Commonwealth v Muhammed and Scott</u> | 12/22/2016 | |
| P-70 | Transcript of trial of <u>Commonwealth v Muhammed and Scott</u> | 12/23/2016 | |
| P-71 | Opinion of Superior Court of Pennsylvania in <u>Commonwealth v Muhammed</u>, 2019 WL 2432100 (2019), with attached Opinion of Honorable Glenn Bronson | 6/11/2019 (Superior Court Opinion) 6/12/2017 | PV-000193-000221 |

| No. | Description | Date | Bates |
|---|---|---|---|
| | | (Opinion of Judge Bronson) | |
| P-72 | Opinion of Superior Court of Pennsylvania in <u>Commonwealth v Muhammed and Scott</u>, 212 A.3d 1094, 2019 PA Super 185 (2019) | 6/11/2019 | PV-000174-000192 |
| P-73 | Order of Supreme Court of Pennsylvania in <u>Commonwealth v Scott</u>, 222 A.3d 383 (2019) | 12/24/2019 | PV-000222 |
| P-74 | Defendant City's Response to Interrogatories of Plaintiff Vega | 1/23/2020 | PM-00021-00028 |
| P-75 | Defendant City's Response to Plaintiff Vega's Request for Production of Documents | 1/3/2020 | PM-00029-00044 |
| P-76 | Lawrence Krasner's Response to Interrogatories of Plaintiff Vega | 1/3/2020 | PK-00021-00029 |
| P-77 | Lawrence Krasner's Response to Plaintiff's Vega's Request for Production of Documents | 1/3/2020 | PK-00030-00039 |
| P-78 | Expert report of Andrew Verzilli attached Tables 1 and 2 and List of Documents Reviewed | 9/17/2020 | |
| P-79 | Supplemental expert report of Andrew Verzilli with Table 1A | 12/16/2021 | |
| P-80 | Curriculum Vitae of Andrew Verzilli | Undated | |
| P-81 | Transcript of deposition of Lawrence Krasner (Volume I) | 9/16/2020 | |
| P-82 | Transcript of deposition of Lawrence Krasner (volume II) with exhibits | 9/16/2020 | ` |

| No. | Description | Date | Bates |
|---|---|---|---|
| P-83 | Transcript of deposition of Michael Giampietro | 9/8/2020 | |
| P-84 | Transcript of deposition of Rachel Mitchell with exhibits | 8/28/2020 | |
| P-85 | Video of deposition of Lawrence Krasner | 9/16/2020 | |
| P-86 | Updated economic loss calculation of Andrew Verzilli | 10/25/2022 | |

Plaintiff reserves the right to use or offer into evidence:

(a)     Any exhibits identified by the City;

(b)     Documents not identified herein for purposes of impeachment or rebuttal; and

(c)     Demonstrative exhibits.

## VI.   STATEMENT OF OBJECTIONS TO DEFENDANT'S PROPOSED EXHIBITS BASED UPON REASONS OTHER THAN RELEVANCY

Plaintiff asserts the following objections to exhibits identified by Defendant in its Exhibit List, based upon reasons other than relevancy.  Pursuant to the Court's Scheduling Orders, Policies and Procedures, all relevancy objections are reserved until trial.  Plaintiff will, however, in an abundance of caution, list objections based on Federal Rule of Evidence 403, in the event the Court should determine that any of the objected-to exhibits, which Plaintiff believes are irrelevant, have any relevance. Accordingly, by asserting an objection pursuant to F.R.E. 403, Plaintiff does not concede that the exhibit is relevant.

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| D2 | Answer | | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time<br><br>Conclusions of law |
| D8 | Defendants' Response to Plaintiff Vega's Interrogatories | | Hearsay<br><br>Plaintiff may use the Response to prove admissions or for impeachment purposes but it is improper for a party to offer into evidence their own discovery responses as part of their case<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D9 | Defendants' Responses to Plaintiff Vega's Interrogatories | | Hearsay<br><br>Plaintiff may use the document to prove admissions or for impeachment purposes but it is improper for a party to offer into evidence their own discovery responses as part of their case<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| | | | jury, undue delay, wasting time |
| D10 | Defendants' Responses to Plaintiff Vega's Request for Production of Documents | | Hearsay

Plaintiff may use the Responses to prove admissions or for impeachment purposes but it is improper for a party to offer into evidence their own discovery responses as part of their case

F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D11 | Defendants' Response to Plaintiff Vega's Second Interrogatories | | Hearsay

Plaintiff may use the Response to prove admissions or for impeachment purposes but it is improper for a party to offer into evidence their own discovery responses as part of their case

F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D12 | Defendants' Production and Amended Production Pursuant to the Pilot Program Initial Discovery | | Hearsay

Plaintiff may use the document to prove |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| | Protocols for Employment Cases Alleging Adverse Action | | admissions or for impeachment purposes but it is improper for a party to offer into evidence their own discovery responses as part of their case<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D13 | Defendants' First Production Pursuant to Court's February 20, 2020 Orders Show Homicide Staff in 2018 | | Hearsay<br><br>Authenticity<br><br>Document not verified |
| D15 | Vega: Respondents' Answer to PHRC Complaint, Position Statement, and Krasner Verified Statement | CITY 0153-0172 | Plaintiff does **not** object to the admission of the Krasner Verified Statement<br><br>As to the other documents:<br><br>Hearsay<br><br>Plaintiff may use the documents to prove admissions or for impeachment purposes but it is improper for a party to offer into evidence their own PHRC submissions as part of their case<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| | | | jury, undue delay, wasting time |
| D16 | Policy Manual | CITY 0192-376 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| D21 | Draft letter and spreadsheets identifying separated employees (redacted) | CITY 0423-447 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time<br><br>Document is redacted and in draft form |
| D22 | Spreadsheet summarizing attorney positions and salaries | CITY 0448-462 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D23 | Spreadsheet summarizing attorney positions and salaries | CITY 0463-521 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D24 | Email from A. Prabhakaran to J. Rush dated 12/14/17 | CITY 0568-569 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| | | | issues, misleading the jury, undue delay, wasting time |
| D25 | Email from A. Prabhakaran to J. Dodd and K. Rosenthal dated 12/4/17 | CITY 0570-571 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D26 | Email from J. Dodd to K. Rosenthal dated 12/15/17 | CITY 0572-574 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D27 | Email from J. Dodd to K. Rosenthal dated 12/15/17 | CITY 0575-577 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D28 | Vega Internal Files | CITY 0578-700 | **Plaintiff objects to Bates nos. 635-637, 641-643, 656-664 and 700 only.  Plaintiff does not object to any other document in this exhibit**<br><br>Plaintiff's objections to the above documents are based on the following grounds:<br><br>Hearsay |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| | | | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D29 | Emails between Krasner and A. Prabhakaran (redacted) | CITY_LK_0001-2 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time<br><br>The document is illegible and redacted |
| D30 | Text messages with Krasner | CITY_LK_0006 | The Court ruled in granting Plaintiff's Motion in Limine that these text messages are inadmissible<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D38 | Vega Rebuttal to Defendants' Answer to Whitehead's PHRC Complaint with exhibits dated 4/5/2019 | PV000034-86 | This is Plaintiff Vega's PHRC Rebuttal, not Whitehead's<br><br>Plaintiff does **not** object to the documents attached to the letter<br><br>As to the letter, which was prepared by Plaintiff Vega's counsel: |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
|  |  |  | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D42 | Announcement from A. Prabhakaran issued in January 2018 | PV-000237-238 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D43 | Anderson resentencing materials | Whitehead-1 and 2 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time<br><br>Plaintiff Whitehead's case has settled |
| D44 | Commonwealth v. Muhammed and Commonwealth v. Scott trial transcripts | Vega-1; McMahon-2 and 3 | Plaintiff objects to the transcript of the trial from 11/28/2016 pursuant to F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D45 | Defendant Lawrence Krasner's Responses to Plaintiff's Interrogatories (Set One) | P Krasner-1 | Hearsay<br><br>Plaintiff may use the Responses to prove |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| | | | admissions or for purposes of impeachment but it is improper for a party (or agent of a party) to offer into evidence their own discovery responses.<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D47 | Philadelphia District Attorney's Office Anti-Harassment Policy 2018 | City 0116-123 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D48 | List of 2016 Holidays and Anti-Harassment Policy | City 0334-338 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D49 | Michael Giampietro deposition transcript | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D50, D50A | Lawrence Krasner deposition transcripts and videotape of deposition | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| D51 | Jack McMahon deposition transcript | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D52 | Rachel Mitchell deposition transcript | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D53 | Arun Prabhakaran deposition transcript | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D54<br>D54A | Carlos Vega deposition transcript and videotape of deposition | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D55 | Anthony Voci deposition transcript | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D56 | Joseph Whitehead deposition transcript | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D57 | Jennifer Selber deposition transcript | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D58 | Brian Zarallo deposition transcript | | Hearsay<br><br>Non-compliance with Fed.R.Civ.P. 32 |
| D59 | R. Mitchell declaration with exhibits | | Hearsay |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
|  |  |  | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time<br><br>Other than for purposes of cross-examination or impeachment, the declaration has no independent evidentiary value |
| D60 | C. Lightsey declaration with exhibits |  | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time<br><br>Other than for purposes of cross-examination or impeachment, the declaration has no independent evidentiary value.<br><br>Plaintiff Whitehead's case has settled |
| D61 | January 13, 2018 Article: "DA Krasner Promise Change, His First Full Week Showed He Meant It" |  | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time<br><br>The Court's ruling on Plaintiff's Motion in |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| | | | Limine precludes the admission of this article or evidence pertaining to it |
| D62 | Krasner Campaign Platform as of May 16, 2017, created using the Wayback Machine | | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D63 | Krasner Campaign Platform as of October 13, 2017, created using the Wayback Machine | | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D64 | Krasner Campaign Platform as of December 12, 2017, created using the Wayback Machine | | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D65 | February 29, 2016 Inquirer Article | | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| | | | jury, undue delay, wasting time |
| D66 | March 2, 2015 Rolling Stone Article (with update) | | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D67 | August 12, 2016 Inquirer Article | | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D68 | August 23, 2016 Inquirer Article | | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |
| D69 | August 29, 2016 Rolling Stone Article | | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |

| Exhibit No. | Description | Bates | Objection(s) |
|---|---|---|---|
| D70 | Complaint in <u>Vega v. King</u>, Philadelphia Court of Common Pleas Case No. 210500305 | | F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time |

## VII.   OBJECTIONS TO OTHER EVIDENCE INCLUDING LAY WITNESS OPINION TESTIMONY THAT MAY BE PRESENTED BY DEFENDANT AT TRIAL

1.      For the reasons set forth in Plaintiff's Motion in Limine (Doc. 77), Plaintiff objects to the introduction of evidence pertaining to his participation, involvement or conduct as a prosecutor in any specific case other than <u>Scott/Muhammed</u>, as a reason for the termination of his employment.

2.      For the reasons set forth in Plaintiff's Motion in Limine (Doc. 79), Plaintiff objects to the introduction of evidence related to statements made by him or Mr. Krasner during or in connection with their campaigns relating to the 2021 Democratic primary election for Philadelphia District Attorney.

3.      For the reasons set forth in Plaintiff's Motion in Limine (Doc. 79), Plaintiff objects to the introduction of evidence pertaining to the lawsuit Plaintiff filed in May 2021 in State Court in Philadelphia, captioned <u>Vega v. King</u>.

4.      For the reasons set forth in the Court's Order granting Plaintiff's Motion in Limine (Doc. 99), Plaintiff objects to testimony, including lay opinion testimony, from Jack McMahon.

5.      Based on the Court's ruling which granted Plaintiff's Motion in Limine with regard to the testimony of Jack McMahon (Doc. 99), Plaintiff objects to testimony, including lay opinion testimony, from Anthony Voci.

VIII.   **DEPOSITION TESTIMONY WHICH MAY BE READ (OR PLAYED) BY PLAINTIFF PURSUANT TO FED.R.CIV.P. 32**

Plaintiff may read (or play the video of) the following parts of the deposition of

Lawrence Krasner taken on September 16, 2020:

| From Page/Line | To Page/Line | Corresponding Exhibit to be Moved into Evidence |
|---|---|---|
| 198:6 | 198:10 | |
| 199:19 | 200:1 | |
| 312:23 | 313:7 | |
| 544:17 | 546:24 | P-1; Mitchell-9 |
| 551:1 | 554:24 | P-10; Mitchell-10 |
| 561:16 | 562:23 | P-2; Mitchell 11 |
| 567:22 | 569:9 | P-6; Whitehead 011-020 |

Plaintiff may read the following parts of the deposition of Rachel Mitchell taken on

August 28, 2020:

| From Page/Line | To Page/Line | Corresponding Exhibit to be Moved into Evidence |
|---|---|---|
| 50:8 | 50:10 | |
| 51:16 | 52:23 | |
| 54:7 | 54:21 | |
| 56:24 | 58:6 | |
| 68:11 | 68:15 | |
| 74:8 | 74:11 | |

| From Page/Line | To Page/Line | Corresponding Exhibit to be Moved into Evidence |
|---|---|---|
| 89:2 | 89:17 | |
| 90:21 | 92:14 | |
| 94:8 | 94:15 | |
| 162:14 | 163:5 | |
| 168:11 | 169:21 | |
| 171:19 | 172:14 | |
| 181:15 | 183:16 | P-16 and P-17; Mitchell-4 |
| 195:25 | 196:12 | |
| 199:19 | 201:3 | |

As noted above, in lieu of (or in addition to) reading parts of the depositions of Mr. Krasner and Ms. Mitchell, Plaintiff reserves the right to call them as witnesses at trial.

## IX.   ESTIMATE OF TRIAL TIME

5 to 7 days.


**SIDKOFF, PINCUS & GREEN, P.C.**

/s/ Robert A. Davitch
Robert A. Davitch, Esq.
Samantha F. Green, Esq.
1101 Market Street, Suite 2700
Philadelphia, PA 19107
(215) 574-0600 – Office
(215) 574-0310 – Fax
rad@sidkoffpincusgreen.com

Attorneys for Plaintiff, Carlos Vega

Date:  October 31, 2022

**SIDNEY L. GOLD & ASSOCIATES, P.C.**

/s/ Sidney L. Gold
Sidney L. Gold, Esq.
Traci M. Greenberg, Esq.
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999 – Office
SGold@DiscrimLaw.net

Attorneys for Plaintiff, Carlos Vega

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARLOS VEGA** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **NO. 19-4039** |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **CITY OF PHILADELPHIA** | : | |
| **Defendant.** | : | |

**CERTIFICATE OF SERVICE**

I, Robert A. Davitch, hereby certify that *Plaintiff Carlos Vega's Updated Pretrial Memorandum* has been served via electronic service of the Court, and is available for viewing and downloading on the Court's ECF system.


*/s/ Robert A. Davitch*
ROBERT A. DAVITCH
Attorney for Plaintiff Carlos Vega

Date:  October 31, 2022